1  Eric D. Houser (SBN 130079)
2  Steven S. Son (SBN 265921)
   HOUSER & ALLISON
   A Professional Corporation
3  3780 Kilroy Airport Way, Suite 130
   Long Beach, CA 90806
4  Telephone: (562) 256-1675
   Facsimile: (949) 679-1112
5  E-mail: sson@houser-law.com

6  Attorneys for Defendants,
   Deutsche Bank National Trust Company, as trustee under Pooling and Servicing
7  Agreement Dated as of May 1, 2007 Securitized Asset Backed Receivables LLC
   Trust 2007-BR4 and Western Progressive, LLC
8
                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10

11 | HELEN GALOPE, an individual,        | Case No. 12-cv-00323-CJC-RNB
   |                                     |
12 |            Plaintiff,               | Hon. Cormac J. Carney
   |                                     |
13 |       v.                            |
   |                                     |
14 | DEUTSCHE BANK NATIONAL              | **DEFENDANTS' NOTICE OF
   | TRUST COMPANY, AS TRUSTEE           | MOTION AND MOTION FOR
15 | UNDER POOLING AND SERVICING         | SUMMARY JUDGMENT;
   | AGREEMENT DATED AS OF MAY           | MEMORANDUM OF POINTS AND
16 | 1, 2007 SECURITIZED ASSET           | AUTHORITIES; DECLARATIONS
   | BACKED RECEIVABLES LLC              | OF KAREN L. STACY,
17 | TRUST 2007-BR4; WESTERN             | STEPHANIE M. SPURLOCK, AND
   | PROGRESSIVE, LLC; and DOES 1        | STEVEN S. SON WITH
   | through 10, inclusive,              | SUPPORTING EXHIBITS**
18 |                                     |
   |            Defendants.              | **[[Proposed] Separate Statement of
19 |                                     | Uncontroverted Facts and
   |                                     | Conclusions of Law and [Proposed]
20 |                                     | Judgment Lodged Concurrently
   |                                     | Herewith]**
21 |                                     |
   |                                     | **[Fed. R. Civ. P. 56 & L.R. 56]**
22 |                                     |
   |                                     | Date: July 16, 2012
23 |                                     | Time: 1:30 p.m.
   |                                     | Courtroom: 9B
24 |                                     |
   |                                     | Action Filed: March 1, 2012
25 |                                     | Trial Date: None Assigned

26 ///
   ///
27

28 **DEFENDANTS' NOTICE OF MOTION FOR SUMMARY JUDGMENT**

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on July 16, 2012, at 1:30 p.m., in Courtroom 9B of the above-entitled Court, located at 411 West Fourth Street, Room 1052, Santa Ana, California 92701-4516, defendants Deutsche Bank National Trust Company, as trustee under Pooling and Servicing Agreement Dated as of May 1, 2007 Securitized Asset Backed Receivables LLC Trust 2007-BR4 ("Deutsche Bank as Trustee") and Western Progressive, LLC ("WPT") (collectively "defendants"), by and through their attorneys of record herein, Houser & Allison, A Professional Corporation, will move this honorable Court for the entry of summary judgment in their favor and against plaintiffs Helen Galope ("Ms. Galope") and the class ("plaintiffs").

///

///

///

**DEFENDANTS' NOTICE OF MOTION FOR SUMMARY JUDGMENT**

1

This Motion is made pursuant to Federal Rule of Civil Procedure 56 on the grounds that there are no genuine issues of material fact and defendants are entitled to summary judgment as a matter of law.  This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the [Proposed] Separate Statement of Uncontroverted Facts and Conclusions of Law lodged concurrently herewith, the Declarations of Karen L. Stacy, Stephanie M. Spurlock, and Steven S. Son and the Exhibits thereto, all pleadings and papers on file herein, all matters of which this Court must or may take judicial notice, and upon such other or further evidence and argument as the Court may deem just and proper.

Dated: June 25, 2012

**HOUSER & ALLISON**
A Professional Corporation

/s/ Steven S. Son
Steven S. Son
Attorneys for Defendants,
Deutsche Bank National Trust Company, as trustee under Pooling and Servicing Agreement Dated as of May 1, 2007 Securitized Asset Backed Receivables LLC Trust 2007-BR4 and Western Progressive, LLC

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF FACTS.................................................................... 2

    A.  HomEq Offers Ms. Galope A Loan Modification After She
        Defaults On Her Mortgage Loan.............................................................. 2

    B.  After Ms. Galope Defaults On Her Reduced Payments, She Files
        For Bankruptcy And An Adversary Action When Non-Judicial
        Foreclosure Is Initiated............................................................................. 3

    C.  Ms. Galope Again Files For Bankruptcy After Foreclosure Is
        Reinitiated But Her Bankruptcy Case Is Dismissed ............................... 3

    D.  Ms. Galope Moves To Vacate The Dismissal Of Her Chapter 13
        Bankruptcy Case Just Before The Trustee's Sale ................................... 4

    E.  Ms. Galope Files Her Third Bankruptcy Petition In Two Years
        But This Case Is Likewise Dismissed And The September 1, 2011
        Trustee's Sale Is Rescinded..................................................................... 4

III.    ARGUMENT ...................................................................................... 5

    A.  Legal Standard For Summary Judgment.................................................. 5

    B.  Defendants Are Entitled To Summary Judgment On Ms. Galope's
        Wrongful Foreclosure Claim Because It Is Moot And Ms. Galope
        Has No Damages...................................................................................... 5

    C.  Defendants Are Entitled To Summary Judgment On Ms. Galope's
        Claims For Unlawful, Unfair, And/Or Fraudulent Acts ......................... 7
    a.   Ms. Galope Waived All Her Claims Related To The Loan Modification

And Is Estopped From Suing Defendants ....................................................... 7

    b.   There Is No Unlawful, Unfair, Or Fraudulent Conduct............................. 9

---

**DEFENDANTS' NOTICE OF MOTION FOR SUMMARY JUDGMENT**

i

c.   All Of The Alleged Oral Promises By HomEq Are Barred Because The Written Modification Agreement Is A Fully Integrated Document ............................................................................... 12

d.   Ms. Galope Has No Evidence To Satisfy Any Of The Five Elements Required For A Fraud Claim ........................................ 13

e.   Ms. Galope's Request For Restitution Is Moot And She Is Not Entitled To A Return Of The Modified Payments ....................... 15

f.   Ms. Galope Has No Evidence Of Any Aiding Or Abetting .................. 16

IV.        CONCLUSION ................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) ........................... 5

*Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1460-61 (1st Dist. 2008) ................. 15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ........................... 5

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal.4th 163, 180 (1999) ........................... 9

*Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048
   (9th Cir. 2000) ........................... 10

*City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) ........................... 6

*City of Hope Nat. Medical Center v. Genentech Inc.*,
   43 Cal.4th 375, 395 (2008) ........................... 7

*FPI Development, Inc. v. Nakashima*, 231 Cal.App.3d 367,
   388 (3d Dist. 1991) ........................... 12

*Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir. 1982) ........................... 16

*Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*,
   270 Fed.Appx. 570, 572 (9th Cir. 2008) ........................... 16

*Kraus v. Trinity Mgmt. Servs.*, 23 Cal.4th 116, 126-27 (2000) ........................... 15

*Masterson v. Sine*, 68 Cal.2d 222, 225 (1968) ........................... 12

*McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) ........................... 10

*Metoyer v. Chassman*, 504 F.3d 919, 935-37 (9th Cir. 2007) ........................... 12

*Munger v. Moore*, 11 Cal.App.3d 1, 7-8, fn. 6 (1st Dist. 1970) ........................... 6

*Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) ........................... 14

*People v. Casa Blanca Convalescent Homes, Inc.*,
   159 Cal.App.3d 509, 530 (4th Dist. 1984) ........................... 10

*Perlas v. GMAC Mortg., LLC*, 187 Cal.App.4th 429,
   436 (1st Dist. 2010) ............................................................ 11

*Pollyana Homes, Inc. v. Berney*, 56 Cal.2d 676, 679-80 (1961) ........................... 12

*Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.App.4th 638,
   643-644 (4th Dist. 2008) ........................................................ 9

*Salehi v. Surfside III Condominium Owners' Assn.*,
   200 Cal.App.4th 1146, 1159-60 (2d Dist. 2011).................................... 7

*Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*,
   227 Cal.App.3d 318, 334 (3d Dist. 1991) ........................................ 11

*Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141, 1158 (E.D. Cal. 2010).............. 10

*Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 173 (2003) .................................. 14

*Southern Calif. Gas Co. v. City of Santa Ana*,
   336 F.3d 885, 888 (9th Cir. 2003) ................................................. 5

*Symbersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137, 1152 (9th Cir. 2008)............................................... 10

*Tozzi v. Lincoln Nat. Life Ins. Co.*, 103 F.2d 46, 52 (9th Cir. 1939) ...................... 8

*West v. Secretary of Dept. of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000).............. 6

**Statutes**

*California Business & Professions Code § 17200*................................... 9

Fed. R. Civ. P. 9 ................................................................. 14

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3      On March 1, 2012, Ms. Galope filed the instant wrongful foreclosure

4 lawsuit.  After an amended complaint was filed, the Court *sua sponte* ordered Ms.

5 Galope to show cause "why this case should not be dismissed for failure to allege

6 any cognizable claim" because "Ms. Galope's claims are inadequately pled and/or

7 based on theories of liability that are not viable."[1]  In response, Ms. Galope filed a

8 putative class action complaint even though the indisputable evidence shows that

9 she has not sustained any actual injury.

10     The crux of Ms. Galope's operative complaint is twofold: (1) the property

11 sold at foreclosure sale in violation of the automatic stay and (2) HomEq, the loan

12 servicer, committed unlawful acts with respect to the loan modification.[2]

13 However, the evidence shows that Ms. Galope is not entitled to any relief and that

14 her allegations lack merit.  The wrongful foreclosure claim is moot because the

15 September 1, 2011 foreclosure sale has been rescinded.  Ms. Galope also has no

16 damages because there is no equity in the property.  The property sold because

17 Ms. Galope's bankruptcy was dismissed and the automatic stay vacated on

18 August 17, 2011.  While the bankruptcy case was reinstated on August 30, 2011,

19 just before the sale, Ms. Galope did not give defendant WPT, the foreclosure

20 trustee, notice of this reinstatement before the sale.  The bankruptcy court again

21 dismissed the Chapter 13 case on December 16, 2011.

22     Ms. Galope waived her right to sue defendants with respect to her

23 unlawful, unfair, or fraudulent acts claims because of the loan modification she

24 received in April 2008.  Further, the alleged oral promises cannot be considered

25

_____

26 [1] See Minute Order, Docket No. 24.
[2] Ms. Galope has filed two Second Amended Class Action Complaints.  The first pleading lacked any exhibits.  The
second pleading contains one exhibit.  Defendants' Motion for Summary Judgment is in response to the later-filed
27 Second Amended Class Action Complaint, which includes the one exhibit. *See* Docket Nos. 34 & 35.

28

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1

1   pursuant to the integration clause in the Modification Agreement, notwithstanding

2   that the evidence shows that Ms. Galope received the fixed rate loan modification

3   she was promised.    Ms. Galope has insufficient evidence to support her

4   allegations that defendants committed unlawful acts.  In a span of just two-and-a-

5   half years, Ms. Galope has filed three bankruptcies and two affirmative lawsuits

6   to stop the foreclosure even though her default on the loan since April 2009 is not

7   in question.[3]  Now that the subject sale has been rescinded, foreclosure can be

8   reinitiated as Ms. Galope is over three years past-due on her modified payments.

9   **II.    STATEMENT OF FACTS**

10         **A.    HomEq Offers Ms. Galope A Loan Modification After She**

11               **Defaults On Her Mortgage Loan**

12         On December 16, 2006, Ms. Galope borrowed $522,000.00 from lender

13   New Century Mortgage Corporation.  (Decl. of Stacy, Para. 3, Exh. 1).   The

14   monthly mortgage payment was $3,817.13.  (Decl. of Stacy, Para. 3, Exh. 1).  The

15   loan was secured by a Deed of Trust recorded against the subject real property on

16   December 28, 2006.  (Decl. of Stacy, Para. 4, Exh. 2).   In April 2007, HomEq

17   began to service the loan.  (Decl. of Stacy, Para. 5).

18         By April 2008, Ms. Galope was $15,951.62 in the arrears on the loan.

19   (Decl. of Stacy, Para. 6).  In April 2008, HomEq offered Ms. Galope a loan

20   modification, and she accepted.   This agreement was memorialized in writing

21   ("Modification Agreement").   (Decl. of Stacy, Para. 7, Exh. 3).   Under the

22   Modification Agreement, the total monthly mortgage payment was reduced by

23   roughly $800.00 to $3,027.02 per month, including escrow, and the interest rate

24   was fixed at 5.5% to maturity.  The Modification Agreement also provides that

25

26   [3] In addition to the instant action, Ms. Galope has filed three bankruptcies and one adversary action in the United
     States Bankruptcy Court, Central District of California, under Case Nos. 1:10-bk-10107-MT, 1:10-ap-01082-MT,
27   1:11-bk-18339-MT, & 1:12-bk-10462-MT.

28         **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
                                   2

the monthly payment will increase beginning May 1, 2013 to ensure the entire debt is paid at maturity. (Decl. of Stacy, Para. 7, Exh. 3, Attachment A). The Modification Agreement includes a release and integration clause. (Decl. of Stacy, Para. 7, Exh. 3, Paras. 3 & 5).

### B. After Ms. Galope Defaults On Her Reduced Payments, She Files For Bankruptcy And An Adversary Action When Non-Judicial Foreclosure Is Initiated

On April 8, 2009, Ms. Galope made her last modified payment. This only brought the loan contractually current through March 1, 2009 because Ms. Galope had only made three out of the four required payments from January 1, 2009 through April 8, 2009. (Decl. of Stacy, Para. 8, Exh. 4). Given the continued default, non-judicial foreclosure was initiated on July 31, 2009. (Decl. of Stacy, Para. 10, Exh. 5). From April 2008 through July 2009, Ms. Galope did not contact HomEq to specifically complain that she was only given an incomplete copy of the Modification Agreement. (Decl. of Stacy, Para. 9).

On January 5, 2010, Ms. Galope filed for Chapter 7 bankruptcy. (Decl. of Son, Para. 2, Exh. 7). On February 25, 2010, Ms. Galope also filed a bankruptcy adversary action against Deutsche Bank and HomEq. (Decl. of Son, Para. 3, Exh. 8). This adversary action was dismissed on April 14, 2010. (Decl. of Son, Para. 4, Exh. 9). On April 28, 2010, Ms. Galope received her discharge in the Chapter 7 bankruptcy. (Decl. of Son, Para. 5, Exh. 10). The foreclosure initiated on July 31, 2009 was rescinded on May 11, 2010. (Decl. of Stacy, Para. 11, Exh. 6).

### C. Ms. Galope Again Files For Bankruptcy After Foreclosure Is Reinitiated But Her Bankruptcy Case Is Dismissed

Given that Ms. Galope had not made a modified payment since April 2009, non-judicial foreclosure was reinitiated on March 8, 2011. (Decl. of Spurlock,

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

3

1    Para. 4, Exh. 11; Decl. of Stacy, Para. 8, Exh. 4). In response, Ms. Galope filed

2    for Chapter 13 bankruptcy on July 11, 2011. (Decl. of Son, Para. 6, Exh. 14).

3    However, this Chapter 13 bankruptcy was dismissed and the automatic stay

4    vacated on August 17, 2011 because Ms. Galope failed to file the required

5    documents. (Decl. of Son, Para. 7, Exh. 15).

**D.    Ms. Galope Moves To Vacate The Dismissal Of Her Chapter 13**
**Bankruptcy Case Just Before The Trustee's Sale**

8        On September 1, 2011, the property sold at trustee's sale. (Decl. of

9    Spurlock, Para. 5, Exh. 12). However, on August 30, 2011, just before the

10   trustee's sale, the bankruptcy court reinstated Ms. Galope's Chapter 13 case after

11   she moved to vacate the dismissal. (Decl. of Son, Para. 8, Exh. 16). Ms. Galope

12   did not give any notice to WPT, the foreclosure trustee, that her bankruptcy case

13   had been reinstated. (Decl. of Spurlock, Para. 6). The Chapter 13 bankruptcy

14   was ultimately again dismissed on December 16, 2011. (Decl. of Son, Para. 9,

15   Exh. 17).

**E.    Ms. Galope Files Her Third Bankruptcy Petition In Two Years**
**But This Case Is Likewise Dismissed And The September 1, 2011**
**Trustee's Sale Is Rescinded**

19       Ms. Galope again filed for Chapter 7 on January 17, 2012, her third

20   bankruptcy petition in a span of two years. (Decl. of Son, Para. 10, Exh. 18).

21   However, Ms. Galope's attempt to convert this Chapter 7 to a Chapter 13 was

22   denied and this bankruptcy case was dismissed on March 13, 2012. (Decl. of

23   Son, Para. 11, Exh. 19). On March 27, 2012, the rescission of the September 1,

24   2011 trustee's sale was recorded. (Decl. of Spurlock, Para. 7, Exh. 13).

25   ///

26   ///

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
4

## III.   ARGUMENT

### A.   Legal Standard For Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The pleadings frame the issues for purposes of summary judgment. *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).  As discussed in turn below, there is no genuine dispute as to any material fact regarding Ms. Galope's five stated claims.  Defendants are entitled to summary judgment as a matter of law because Ms. Galope has insufficient evidence to support all of the required elements for her claims.

### B.   Defendants Are Entitled To Summary Judgment On Ms. Galope's Wrongful Foreclosure Claim Because It Is Moot And Ms. Galope Has No Damages

Ms. Galope's wrongful foreclosure claim is moot because the subject trustee's sale has been rescinded.  Further, Ms. Galope has no damages because there was no equity in the property at the time of the sale.  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).  "[T]he question is not whether the precise relief sought at the time the

application for an injunction was filed is still available.  The question is whether there can be any effective relief." *West v. Secretary of Dept. of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000).  Unless the prevailing party can obtain effective relief, any opinion as to the legality of the challenged action would be merely advisory. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).  The measure of damages when the power of sale is invoked under a deed of trust is the "fair market value at the time of sale less outstanding encumbrances and/or taxes due at such time." *Munger v. Moore*, 11 Cal.App.3d 1, 7-8, fn. 6 (1st Dist. 1970).

Here, Ms. Galope's wrongful foreclosure claim is moot because the September 1, 2011 trustee's sale has been rescinded.  (Decl. of Spurlock, Para. 7, Exh. 13).  As such, the foreclosure commenced on March 8, 2011 is no longer at issue and any opinion on the same would be merely advisory.  Defendants are entitled to summary judgment on Ms. Galope's wrongful foreclosure claim because Ms. Galope cannot obtain any relief on this claim as a matter of law.

Further, Ms. Galope has no damages because there was no equity in the property at the time of the sale.  In the January 5, 2010 bankruptcy filing, Ms. Galope declares under the penalty of perjury that the fair market value of the property is $373,000.00 and the outstanding debt is $537,951.00.  (Decl. of Son, Para. 2, Exh. 7, Pgs. 11 & 27 of 53).  In the January 17, 2012 bankruptcy filing, Ms. Galope declares under the penalty of perjury that the fair market value of the property is $350,000.00 and the outstanding debt is $522,000.00.  (Decl. of Son, Para. 10, Exh. 18, Pgs. 12, 19, & 24 of 45).  In sum, at the time of the trustee's sale, the fair market value of the property was between $350,000.00 and $373,000.00 whereas the outstanding debt was between $522,000.00 and $537,951.00.  Accordingly, the property was under water by $150,000.00 or more

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

6

1   and Ms. Galope has no damages for her wrongful foreclosure claim because there

2   was no equity in the property at the time of the sale.

3         The record shows that the September 1, 2011 trustee's sale went forward as

4   Ms. Galope's bankruptcy had been dismissed and the automatic stay vacated on

5   August 17, 2011. (Decl. of Son, Para. 7, Exh. 15).  While Ms. Galope reinstated

6   the Chapter 13 bankruptcy case on August 30, 2011, just before the trustee's sale,

7   the bankruptcy court ultimately dismissed this case once more.  (Decl. of Son,

8   Paras. 8-9, Exhs. 16-17).   Ms. Galope did not give defendant WPT, the

9   foreclosure trustee, any notice that the bankruptcy case was reinstated prior to the

10  subject sale. (Decl. of Spurlock, Para. 6).  Ms. Galope's attempt to make the

11  trustee's sale some sort of nefarious situation is contradicted by the record.

12  **C.    Defendants Are Entitled To Summary Judgment On Ms.**

13  **Galope's Claims For Unlawful, Unfair, And/Or Fraudulent Acts**

14  **a.    Ms. Galope Waived All Her Claims Related To The Loan**

15  **Modification And Is Estopped From Suing Defendants**

16        The Modification Agreement contains express release language which bars

17  Ms. Galope's claims of unlawful, unfair, and/or fraudulent acts arising out of or

18  related to the subject loan modification.  Further, Ms. Galope is estopped from

19  suing defendants on her UCL claims.  The interpretation of the preclusive effect

20  of a release in a contract is a legal question for the court if there is no conflicting

21  competent extrinsic evidence as to the parties' intent.  *City of Hope Nat. Medical*

22  *Center v. Genentech Inc.*, 43 Cal.4th 375, 395 (2008); see also *Salehi v. Surfside*

23  *III Condominium Owners' Assn.*, 200 Cal.App.4th 1146, 1159-60 (2d Dist. 2011).

24  Under California's law of quasi-estoppel, a person may not act in a manner

25  inconsistent with her prior position to the injury of another if that person gained

26

27

28  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

7

1   some advantage for herself to the disadvantage of the other. *Tozzi v. Lincoln Nat.*
2   *Life Ins. Co.*, 103 F.2d 46, 52 (9th Cir. 1939).

3       In this case, Ms. Galope is contractually barred from suing defendants
4   concerning the loan modification because the release provision in the
5   Modification Agreement provides as follows:

6       "Borrower releases HomEq, its subsidiaries, affiliates, agents,
7       officers and employees, from any and all claims, damages or liabilities
        of any kind existing on the date of this Agreement, which are in any
8       way connected with the origination and/or servicing of the Loan,
9       and/or events which resulted in Borrower entering into this
        Agreement. Borrower waives any rights which Borrower may have
10      under federal or state statute or common law principle which may
        provide that a general release does not extend to claims which are not
11      know to exist at the time of execution, including without limitation (if
12      applicable), California Civil Code Sec. 1542." (Decl. of Stacy, Para.
        7, Exh. 3, Para. 3).
13

14      HomEq serviced the subject mortgage loan for defendant Deutsche Bank as
15   Trustee. (Decl. of Stacy, Para. 1). Defendant WPT, the foreclosure trustee,
16   initiated foreclosure as an agent for HomEq. As such, the release provision in the
17   Modification Agreement precludes Ms. Galope's action against defendants. The
18   release language covers any and all claims, damages, or liabilities *of any kind*,
19   whether known at the time of execution of or not, related to the loan modification.
20   The meaning of the release language is plain and unambiguous, and Ms. Galope
21   concedes she was placed on notice of the release provision and signed the waiver
22   in return for a modification of the loan. As briefed below, Ms. Galope was given
23   the loan modification she was promised. Ms. Galope has waived all claims
24   related to any unlawful, unfair, and/or fraudulent acts related to the loan
25   modification.

26      Further, estoppel by contract, i.e. quasi-estoppel, bars all of Ms. Galope's
27
28   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
                                  8

1  UCL claims.  When Ms. Galope was given the loan modification in April 2008,
2  she was $15,951.62 in the arrears.  (Decl. of Stacy, Paras. 6-7).  The modification
3  effectively cured the default on the loan and allowed Ms. Galope to make reduced
4  mortgage payments, thereby preventing defendant Deutsche Bank as Trustee
5  from taking title via foreclosure.   In return for the modification, Ms. Galope
6  waived all of her claims concerning the modification.  (Decl. of Stacy, Para. 7,
7  Exh. 3, Para. 3).  Ms. Galope is barred from now asserting her UCL claims, which
8  is clearly inconsistent with her prior release, to the detriment of defendants
9  because Ms. Galope benefitted from modification and because foreclosure was
10  not initiated in April 2008.  All of Ms. Galope's UCL claims are barred under
11  quasi-estoppel.

12  **b.     There Is No Unlawful, Unfair, Or Fraudulent Conduct**

13  The four separate but derivative claims for unlawful, unfair, and/or
14  fraudulent acts under *California Business & Professions Code* §§ 17200, *et seq.*,
15  also known as California's Unfair Competition Law ("UCL"), have no merit.
16  The UCL prohibits unfair competition including "any unlawful, unfair or
17  fraudulent business act or practice." *Cal. Bus. & Prof. Code* § 17200.  Given the
18  statute is written in the disjunctive, each of the three prongs is a separate and
19  distinct theory of liability.   *Cel-Tech Communications, Inc. v. Los Angeles*
20  *Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).  The UCL does not proscribe
21  specific activities, but broadly prohibits any (1) unlawful, (2) unfair, or (3)
22  fraudulent business act or practice. *Puentes v. Wells Fargo Home Mortg., Inc.*,
23  160 Cal.App.4th 638, 643-644 (4th Dist. 2008).

24  "As to the unlawful prong, the UCL incorporates other laws and treats
25  violations of those laws as unlawful business practices independently actionable
26  under state law." *Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141, 1158 (E.D.

27

28  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1   Cal. 2010) (citing *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048

2   (9th Cir. 2000)).   "An unfair business practice is one that either 'offends an

3   established public policy' or is 'immoral, unethical, oppressive, unscrupulous or

4   substantially injurious to consumers.' "  *McDonald v. Coldwell Banker*, 543 F.3d

5   498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes,*

6   *Inc.*, 159 Cal.App.3d 509, 530 (4th Dist. 1984)).   "Finally, fraudulent acts are

7   ones where members of the public are likely to be deceived."  *Symbersound*

8   *Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008).

9       Here, the evidence shows there is no unlawful, unfair, or fraudulent act.

10  The property sold on September 1, 2011 because Ms. Galope's Chapter 13

11  bankruptcy was dismissed and the automatic stay vacated on August 17, 2011.

12  (Decl. of Son, Para. 7, Exh. 15).   Although Ms. Galope reinstated the bankruptcy

13  case on August 30, 2011, just before the sale, defendant WPT, the foreclosure

14  trustee, was not placed on notice of this reinstatement before the sale.  (Decl. of

15  Spurlock, Para. 6).  Ms. Galope has insufficient evidence to show that defendant

16  WPT moved forward with the sale despite knowledge of the reinstatement, as

17  alleged in the operative complaint.

18      The indisputable evidence also shows that Ms. Galope got the loan

19  modification she was promised over the phone.  In April 2008, HomEq fixed the

20  interest rate at 5.5% for the following 345 months through maturity.  (Decl. of

21  Stacy, Para. 7, Exh. 3, Attachment A).   The Modification Agreement provides

22  that Ms. Galope's monthly payments will increase beginning May 1, 2013 to

23  ensure the loan is paid in full at the time of maturity, not because there is an

24  increase in the interest rate. (Decl. of Stacy, Para. 7, Exh. 3, Paras. 1(b) & 1(d)).

25  In sum, Ms. Galope got exactly what she was promised.  The modified loan has a

26  fixed 5.5% interest rate, thus is more favorable than Ms. Galope's original loan

27

28  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1   which had an adjustable interest rate between 8.775% and 15.775%. (Decl. of
2   Stacy, Para. 3, Exh. 1, Para. 4(D)). Ms. Galope has no evidence to establish the
3   modified loan had a variable interest rate as she claims. (*See* Second Amended
4   Class Action Complaint, Paras. 36-37).

5       Further, the fact that loan was modified was to Ms. Galope's benefit
6   because it effectively cured the outstanding default at the time. If the loan was
7   not modified in April 2008, the outstanding arrearages would be even higher at
8   the present time because the modified payments are roughly $800.00 less than the
9   monthly payments under the original terms of the loan. (Decl. of Stacy, Paras. 3
10  & 4, Exhs. 1 & 3).  Given that Ms. Galope was never entitled to a loan
11  modification, as defendants were entitled to pursue their own economic interests,
12  the modification was clearly to Ms. Galope's benefit. *Perlas v. GMAC Mortg.,*
13  *LLC*, 187 Cal.App.4th 429, 436 (1st Dist. 2010); see also *Sierra-Bay Fed. Land*
14  *Bank Ass'n v. Superior Court*, 227 Cal.App.3d 318, 334 (3d Dist. 1991).

15      Ms. Galope's allegations that she only received an "incomplete" copy of
16  the Modification Agreement from HomEq have no merit. The evidence shows
17  that Ms. Galope did not contact HomEq from April 2008 through July 2009 to
18  specifically complain that her fax-received copy of the Modification Agreement
19  was incomplete. (Decl. of Stacy, Para. 9). Further, logic dictates that a **complete**
20  version of the Modification Agreement, with all signatures, **could not exist** *if* Ms.
21  Galope was only provided an **incomplete** copy to sign. If Ms. Galope was only
22  provided an incomplete copy to sign and return to HomEq, only an incomplete
23  copy with the signatures would be available.   However, defendants have
24  presented into evidence a copy of the complete Modification Agreement, with all
25  signatures, that contains the full text of Paragraphs 1(d) and 2. (Decl. of Stacy,

26
27
28

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
11

1  Para. 7, Exh. 3).   Ms. Galope has insufficient evidence to support her baseless

2  allegations in this regard.

3       **c.**    **All Of The Alleged Oral Promises By HomEq Are Barred**

4            **Because The Written Modification Agreement Is A Fully**

5            **Integrated Document**

6       Notwithstanding that Ms. Galope's UCL claims lack merit as discussed

7  above, the Modification Agreement is a fully integrated document that precludes

8  all of the alleged oral promises made by HomEq concerning the subject loan

9  modification.   When the parties to a written contract have agreed to it as an

10  "integration" – a complete and final embodiment of the terms of an agreement –

11  parol evidence cannot be used to add or to vary its terms.   *Pollyana Homes, Inc.*

12  *v. Berney*, 56 Cal.2d 676, 679-80 (1961).   "The crucial issue in determining

13  whether there has been an integration is whether the parties intended their writing

14  to serve as the exclusive embodiment of their agreement."   *Masterson v. Sine*, 68

15  Cal.2d 222, 225 (1968).   Although the court may consider evidence of

16  surrounding circumstances, a collateral oral agreement must be one that would

17  have been made as a separate contract because it cannot embrace the same subject

18  in the written contract but require different results.   *Metoyer v. Chassman*, 504

19  F.3d 919, 935-37 (9th Cir. 2007).   This rule is "grounded on the notion that a

20  writing constitutes a jural *act*, conduct which alters the voluntary legal relations

21  of the parties."   *FPI Development, Inc. v. Nakashima*, 231 Cal.App.3d 367, 388

22  (3d Dist. 1991).

23  ///

24  ///

25  ///

26

27

28  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
                           12

1    Here, the April 2008 Modification Agreement in pertinent part provides

2 verbatim as follows:

3    "This Agreement constitutes the entire Agreement between the parties
     regarding the subject matter hereof.  Except as otherwise provided
4    herein, this Agreement supersedes all prior and contemporaneous
     agreements, understandings, negotiations and discussions, whether
5    written or oral, of the parties hereto, relating to the Note and Security
     Instrument." (Decl. of Stacy, Para. 7, Exh. 3, Para. 5).
6

7

8    The foregoing integration clause in the Modification Agreement precludes

9 all of the alleged oral promises by HomEq concerning the subject loan

10 modification.  The plain and clear language of the integration clause provides that

11 the writing is intended by the parties as the final expression of their agreement

12 regarding the terms of the loan modification, thus Ms. Galope cannot introduce

13 parol evidence to contradict the express terms therein.   The integration clause

14 supersedes all prior and contemporaneous discussions regarding the loan

15 modification, whether written or oral, relating to Ms. Galope's obligation to pay

16 back her mortgage loan.  HomEq's alleged oral promises would not have been

17 reduced into a separate contract separate from the Modification Agreement

18 because the subject matter is the same.  It is accordingly proper for the Court to

19 wholly disregard Ms. Galope's allegations regarding the alleged oral promises

20 made by HomEq.

21       **d.     Ms. Galope Has No Evidence To Satisfy Any Of The Five**

22            **Elements Required For A Fraud Claim**

23    To the extent Ms. Galope's four stated UCL claims are premised on fraud,

24 these claims fail because Ms. Galope has no evidence to support any of the

25 required elements.   The elements of a fraud claim in California are (1) a

26 misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable

27

28    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1 reliance, and (5) damages. *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 173

2 (2003). The plaintiff must state with particularity the circumstances surrounding

3 the fraud. Fed. R. Civ. P. 9(b). "The particularity requirement of Rule 9(b) is

4 designed to give defendants notice of the particular misconduct which is alleged

5 to constitute the fraud charged." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.

6 1993).

7      As discussed above, there is no misrepresentation in this case because the

8 evidence shows Ms. Galope received the fixed rate loan modification that she was

9 promised. The monthly payment amount increases beginning May 1, 2013 to

10 ensure the total debt is paid in full at maturity, not because of an increase in the

11 interest rate. (Decl. of Stacy, Para. 7, Exh. 3). Ms. Galope concedes she was

12 placed on notice that the payment would increase after the April 1, 2013 payment

13 because the interest only period ends at this time. (*See* Second Amended Class

14 Action Complaint, Exh. A, Paras. 1(b) & 1(d)). The evidence likewise shows that

15 Ms. Galope did not contact HomEq from April 2008 through July 2009, when the

16 first foreclosure was initiated, to specifically complain that she only received an

17 incomplete copy of the Modification Agreement. (Decl. of Stacy, Para. 9).

18 Finally, the evidence shows that Ms. Galope did not advise defendant WPT that

19 her bankruptcy case had been reinstated on August 30, 2011 prior to the

20 September 1, 2011 trustee's sale. (Decl. of Spurlock, Para. 6). Given the

21 evidence shows there was no misrepresentation, the knowledge of falsity and

22 justifiable reliance requirements cannot be established as a matter of law. The

23 foregoing is the extent of Ms. Galope's UCL claims based on fraud as she has not

24 alleged with the required specificity other purported fraudulent acts.

25      Further, Ms. Galope has no evidence of damages. The September 1, 2011

26 trustee's sale has been rescinded. (Decl. of Spurlock, Para. 7, Exh. 13). As

27

28

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
14

1   briefed above, there was no equity in the property at the time of the trustee's sale.

2   The loan modification was to Ms. Galope's benefit because it effectively cured

3   the $15,951.62 in arrearages on the subject loan, and reduced the interest rate to a

4   fixed 5.5% in contrast to the adjustable rate between 8.775% and 15.775% under

5   the original terms of the loan.  (Decl. of Stacy, Para. 3, Exh. 1, Para. 4(D); Decl.

6   of Stacy, Para. 7, Exh. 3, Attachment A).   The loan modification did not

7   "preclude" Ms. Galope from obtaining refinancing elsewhere as she claims.  (*See*

8   Second Amended Class Action Complaint, Para. 85).    After the loan was

9   modified, Ms. Galope was free to seek refinancing but chose not to do so.

10              **e.      Ms. Galope's Request For Restitution Is Moot And She Is**

11                   **Not Entitled To A Return Of The Modified Payments**

12          Ms. Galope's contention that she is "entitled" to restitution under her UCL

13   claims is moot because the September 1, 2011 trustee's sale has been rescinded

14   and title restored in her name.  (Decl. of Spurlock, Para. 7, Exh. 13).   To the

15   extent Ms. Galope is seeking the return of the modified payments she made to

16   HomEq from April 2008 through April 2009, Ms. Galope is precluded from

17   relief.  (*See* Second Amended Class Action Complaint, Para. 88).  In California,

18   an order for restitution under the UCL is one "compelling a UCL defendant to

19   return money obtained through an unfair business practice to those persons in

20   interest from whom the property was taken."  *Kraus v. Trinity Mgmt. Servs.*, 23

21   Cal.4th 116, 126-27 (2000).   However, restitution to an alleged victim under the

22   UCL requires "that the offending party must have obtained something to which it

23   was not entitled *and* the victim must have given up something which [she] was

24   entitled to keep."  *Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1460-61 (1st Dist.

25   2008).

26

27

28          **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    In this case, Ms. Galope is not entitled to restitution of the modified
2  payments made to HomEq because she was obligated to make her mortgage
3  payments in order to keep the property. (Decl. of Stacy, Paras. 3, 4, & 7, Exhs. 1-
4  3).   If the mortgage loan was not modified in April 2008, the outstanding
5  arrearages would be even higher at the present time because the modification
6  reduced the amount of the monthly mortgage payments by roughly $800.00.
7  (Decl. of Stacy, Paras. 3 & 4, Exhs. 1 & 3).   The evidence conclusively shows
8  that Ms. Galope is not entitled to any restitution as a matter of law.

9        **f.    Ms. Galope Has No Evidence Of Any Aiding Or Abetting**

10    Ms. Galope alleges that defendants "aided and abetted" by targeting
11  borrowers with the "missing fax page scheme" in support of her UCL claims.
12  (*See* Second Amended Class Action Complaint, Paras. 92-93).   However, Ms.
13  Galope has no evidence to support this erroneous conclusion.   A claim for aiding
14  and abetting requires (1) the existence of an independent primary wrong, (2)
15  actual knowledge by the alleged aider and abettor of the wrong and his or her role
16  in furthering it, and (3) substantial assistance in the wrong. *Harmsen v. Smith*,
17  693 F.2d 932, 943 (9th Cir. 1982).   Substantial assistance requires that the
18  defendant's actions be a "substantial factor" in causing the plaintiff's injury.
19  *Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*, 270
20  Fed.Appx. 570, 572 (9th Cir. 2008). As discussed above, defendants have done
21  no wrong and Ms. Galope has no evidence to show actual knowledge by
22  defendants of the alleged wrongs even if any existed.   Further, Ms. Galope has
23  not sustained any actual injury because the September 1, 2011 trustee's sale has
24  been rescinded, there is no equity in the property, and the loan modification was
25  to Ms. Galope's benefit, not detriment.   The evidence disproves Ms. Galope's
26  unsupported theory of aiding and abetting.

27

28        **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
                                16

## IV.   CONCLUSION

Ms. Galope is a borrower who defaulted on her original loan obligations, and then defaulted once more after she was given a loan modification.  Over the past two-and-a-half years, Ms. Galope has delayed the foreclosure by filing three bankruptcies and two affirmative lawsuits even though her last mortgage payment was made in April 2009.  As briefed above, Ms. Galope has insufficient evidence to support the elements of her claims to obtain any relief.  For the foregoing reasons, defendants respectfully request the Court to grant summary judgment in their favor and against Ms. Galope and the purported class.

Dated: June 25, 2012

**HOUSER & ALLISON**
A Professional Corporation

/s/ Steven S. Son
Steven S. Son
Attorneys for Defendants,
Deutsche Bank National Trust Company, as trustee under Pooling and Servicing Agreement Dated as of May 1, 2007
Securitized Asset Backed Receivables LLC Trust 2007-BR4 and Western Progressive, LLC

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
17

## PROOF OF SERVICE

STATE OF CALIFORNIA      )
                         ) ss
COUNTY OF LOS ANGELES )

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 3780 Kilroy Airport Way, Suite 130, Long Beach, California 90806.

     On June 25, 2012, I served the following document(s):

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KAREN L. STACY, STEPHANIE M. SPURLOCK, AND STEVEN S. SON WITH SUPPORTING EXHIBITS**

     On the following interested parties in this action described as follows:

Lenore L. Albert, Esq.
Law Offices of Lenore Albert
7755 Center Avenue, Suite 1100
Huntington Beach, CA  92647
Tel.:  714-372-2264
Fax:  419-831-3376
Email: lenorealbert@msn.com
*Attorney for Plaintiff, Helen Galope*

[ ]    **VIA FIRST CLASS MAIL:** Pursuant to FRCP 5: By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on the date following ordinary business practices.  I am readily familiar with my firm's business practice and collection and processing of mail with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United States Postal Service at Long Beach, California, with postage thereon fully prepaid that same day in the ordinary course of business.

[X]    **BY ELECTRONIC MAIL:** I transmitted the document(s) listed above electronically either by e-mailor by electronic filing through the CM/ECF System to the e-mail addresses listed above.  I am readily familiar with Microsoft Outlook's e-mail system and the United States District Court's

CM/ECF System, and the transmission was reported as complete without error.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on June 25, 2012, in Long Beach, California.


/s/ Richard Mendizábal
Richard Mendizábal