## ORIGINAL

1  Lenore L. Albert, Esq.   SBN 210876
2  LAW OFFICES OF LENORE ALBERT
3  7755 Center Avenue, Suite #1100
   Huntington Beach, CA 92647
4  Telephone (714) 372-2264
   Facsimile (419) 831-3376
5  Email: lenorealbert@msn.com
6  Attorney for Plaintiff, HELEN GALOPE,
7  *on behalf of herself and all others similarly situated*

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  HELEN GALOPE, an individual, on behalf    CASE NO. SACV 12 00323-CJC (RNBx)
12  of herself and all others similarly situated,

13                          Plaintiffs,         Assigned to the Hon: Cormac J. Carney

14  vs.

15  DEUTSCHE BANK NATIONAL TRUST       **THIRD AMENDED CLASS ACTION**
16  COMPANY, AS TRUSTEE UNDER          **COMPLAINT**
    POOLING AND SERVICING
17  AGREEMENT DATED AS OF MAY 1,       **[Jury demand for Legal Claims]**
18  2007 SECURITIZED ASSET BACKED
19  RECEIVABLES LLC TRUST 2007-BR4;
    WESTERN PROGRESSIVE, LLC;
20  BARCLAYS BANK PLC, BARCLAYS
21  CAPITAL REAL ESTATE INC. d/b/a
    HOMEQ SERVICING; OCWEN LOAN
22  SERVICING, LLC, and DOES 4 through
23  10, inclusive,
                            Defendants.

24        PLAINTIFF, HELEN GALOPE, on behalf of herself and those similarly situated

25  bring this national class action against defendants for conducting its business practice in

26  an unlawful, unfair and fraudulent manner as alleged herein.

27                          **I.    VENUE**

28                                   1

              **THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al        CASE NO. SACV 12 00323-CJC (RNBx)*

1.     The Court has subject matter jurisdiction over this action under 28 USC § 1332 wherein this is a class action over $5,000,000.00 where at least one plaintiff is diverse from one defendant.  Alternatively, federal question jurisdiction exists under 28 USC §1331 based on the 11 USC §362 violation.

2.     The Court has personal jurisdiction over the defendants in this action by the fact that the Defendants are conducting business in the state of California.

3.     Venue is proper in this Court pursuant to 28 USC § 1392 because the action involves real property located in the Central District of California; and pursuant to 28 USC § 1391(b) because a substantial part of the events or omissions on which the claims are based occurred in this District.

## II. **PARTIES**

4.     At all times mentioned herein, Plaintiff HELEN GALOPE was the title owner by way of a grant deed to the property duly recorded in the Los Angeles County Recorder's Office, Book 391, pg 40-42 more commonly known as 19117 DELANO STREET, TARZANA, CALIFORNIA 91335 (hereinafter referred to as "The Premises") which was her principal residence (APN 2128-022-022).

5.     Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee under pooling and servicing agreement dated as of May 1, 2007 securitized asset backed receivables LLC trust 2007-BR4, has its principal place of business in Santa Ana, California and is registered to do business in the State of California and claimed to be the title owner of The Premises, by virtue of a trustee's deed from defendant Western Progressive, LLC at the time this action was originally commenced.

6.     Defendant, WESTERN PROGRESSIVE, LLC, Trustee ("WESTERN"), has its principal place of business in Kennesaw, Georgia, and regularly conducts business in the State of California, and is authorized to conduct business in the State of California.

2

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al        CASE NO. SACV 12 00323-CJC (RNBx)*

7.      Defendant, BARCLAYS BANK PLC has its principal place of business in New York, and regularly conducts business in the State of California.

8.      Defendant, BARCLAYS CAPITAL REAL ESTATE, INC. has its principal place of business in New York and regularly conducts business in the State of California. Barclays Capital Real Estate, Inc., at all times relevant to this complaint, did business as HomEq Servicing.

9.      Defendant, OCWEN LOAN SERVICING, LLC has its principal place of business in Florida and regularly conducts business in the State of California.

10.     Plaintiffs do not know the true names and capacities of the defendants DOES 4 through 10, inclusive, and, as such, names said defendants by such fictitious names. Plaintiffs will amend the complaint to state the true name and capacity of the DOE defendant(s) when such information is ascertained.

11.     Plaintiffs are informed and believe, and allege thereon, that each defendant is responsible in some manner for the occurrences alleged in their complaint, and that plaintiffs' damages were proximately caused by the defendants at all times mentioned in the complaint.

12.     Plaintiff is further informed and believes and alleges thereon that each defendant was the agent, servant, representative, and/or employee of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives, and/or employees, and with the permission and consent of their co-defendants.

13.     Additionally, plaintiff is informed and believes and alleges thereon that each defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other defendant and that each corporate defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*        *CASE NO. SACV 12 00323-CJC (RNBx)*

14.     Any applicable statutes of limitations have been tolled by the Defendants continuing, knowing, and active concealment of the facts alleged herein.  Despite exercising reasonable diligence, Plaintiffs could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein.

### III. FACTUAL ALLEGATIONS

15.     Two years after plaintiff acquired the Premises, she signed a secured loan agreement and promissory note whereby New Century Mortgage Corporation, the loan seller, sold plaintiff a LIBOR interest only adjustable rate mortgage in the sum of $522,000.00 secured by Ms. Galope's Subject Property on or about December 15, 2006.

16.     Plaintiff's loan was placed in a mortgage backed securitized trust captioned the "SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-BR4" ("MBS trust").

17.     Defendant, DBNTC was the trustee in charge of administering the MBS trust.

18.     Defendant, Barclays Capital Real Estate Inc. d/b/a HomEq was the designated servicer on this loan which defendant Ocwen took over in 2009-2010.

19.     Defendant, Barclays Bank PLC was the administrator of the sponsor, wholly owned the depositor as a subsidiary, and was the Interest Rate Swap and Cap Provider of the MBS trust.

20.     The terms of Ms. Galope's loan were abusive and predatory in that the loan was an interest only adjustable rate mortgage ("IO ARM") based on the LIBOR index rate where eventually the principal would be amortized at an interest ranging from 8.775% to 15.75% while borrower continued to dutifully make the payments under the terms as expressed in the Note.

21.     Ms. Galope's payments were based on the LIBOR rate.

4

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. SACV 12 00323-CJC (RNBx)*

22.        There were 5,072 loans placed in the MBS trust and a substantial portion of them were based on the LIBOR rate like Ms. Galope's loan.

23.        Ms. Galope's loan was structured wherein she was paying interest only on the first 5 years of her loan.

24.        However, the interest rate would adjust every six (6) months based on the published LIBOR rate plus other fixed percentage points added to the LIBOR rate as laid out in the Note.

25.        LIBOR is an acronym for London Interbank Offered Rate and is,

   a. **"intended to be a barometer to measure strain in money markets, that it often is a gauge of the market's expectation of future central bank interest rates, and that approximately $350 trillion of notional swaps and $10 trillion of loan are indexed to LIBOR."**

26.        Unbeknownst to plaintiff, Barclays PLC and Barclays Capital Real Estate Inc. d/b/a HomEq Servicing was manipulating the LIBOR rate from 2005 through 2009.

27.        The Barclays Defendants and Deutsche Bank defendants are some of the largest international financial institutions in the world.

28.        They are two (2) of sixteen (16) financial institutions that daily report their interest rates that are then pooled together where in the middle eight (8) rates are then averaged for Barclays then to create the LIBOR rate.

29.        The LIBOR rate is reported daily in the Wall Street Journal and there is also the 1 month, 3 month, 6 month and 12 month LIBOR rate.

30.        Ms. Galope's home loan was based on the 6 month LIBOR rate.

31.        The average home loan in the United States is a loan expected to be paid back over a thirty year (30) term.

32.        Ms. Galope's home loan was originally supposed to be paid back over a 30 year term.

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*        *CASE NO. SACV 12 00323-CJC (RNBx)*

33.     Over the course of a loan, a consumer, like Ms. Galope is expected to pay principal plus interest based on the principal loan amount which is supposed to be based on the current market value of the home.

34.     The market interest rates of LIBOR which represents the cost of loaning money and market value of long term investments such as real property are complementary rates that should fluctuate in unison over time based on independent market factors. If it costs more dollars to borrow money (the LIBOR rate) then the price to buy the property should also go up (market value).

35.     Barclays, along with the assistance of DBNTC and other nondefendants manipulated the LIBOR rate.

36.     Traditionally, certain agreements have been "conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use" because of "their pernicious effect on competition and lack of any redeeming virtue." *Northern Pacific Ry. v. U.S.*, 356 US 1, 5 (1958).

37.     Such agreements are considered illegal, per se. *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150 (1940).

38.     With the manipulation of the LIBOR rate, today's rates could have been yesterday's rates or happened much quicker without lag, as there is no way of proving that the interest rate would not have plummeted or escalated during the financial crisis or just preceding it.

39.     Barclays has entered into several agreements with various government agencies admitting that Barclays and other financial institutions and their agents/employees were manipulating the LIBOR rate, fixing the rate higher or lower at various times from 2005 through 2009.

6

**THIRD AMENDED CLASS ACTION COMPLAINT**

40.     According to Appendix A to the Non-Prosecution Agreement, dated June 26, 2010 between the United States Department of Justice Criminal Division, Fraud Section, and Barclay's Bank PLC, at the same time plaintiff, Ms. Galope's initial loan rate was being figured, a message was sent to manipulate the LIBOR rate as follows:

**a.     "For Monday we are very long 3m cash here in NY and would like the setting to be set as low as possible...thanks" (December 14, 2006, Trader in New York to Submitter)."**

41.     Six Month LIBOR in November of 2006 was 5.3495 percent and it was 5.3651 percent December of 2006.

42.     Plaintiff's note based on LIBOR required plaintiff to pay 8.5 percent interest.

43.     There was no margin that would account for the difference in the rate in the note. The note just plainly stated that the interest only period would be 8.5 percent interest rate over the next several years.

44.     Over the next several years while Barclays was manipulating the LIBOR rate, the manipulated LIBOR rate actually decreased.

45.     So while plaintiff was stuck paying 8.5% fixed interest on her interest only LIBOR rate loan, Barclays was making a positive cash flow.

46.     The six month LIBOR rate currently sits at 0.733 percent as of May of 2012.

47.     The LIBOR submitters regularly considered the swaps traders' requests when determining and making Barclays' US Dollar LIBOR submissions.

48.     Not knowing that Barclays had manipulated the market rate, Ms. Galope paid $34,354.17 in interest on her loan based on LIBOR in 2007.

49.     Ms. Galope paid another $20,229.88 in interest on her loan based on LIBOR in 2008.

7

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al        CASE NO. SACV 12 00323-CJC (RNBx)*

50.     Ms. Galope even paid $9,430.92 in interest on her loan based on LIBOR in 2009.

51.     During each of these years, Barclays Bank PLC and Barclays Capital Real Estate Inc d/b/a HomEq were manipulating the LIBOR rate.

52.     However, at no time did Ms. Galope get the benefit of the bargain of the LIBOR rate manipulation.

53.     Ms. Galope was hospitalized in 2008 wherein she nominally fell behind on her interest mortgage payments.

54.     To cure the default, plaintiff obtained a loan modification on April 7. 2008 from Barclays Capital Real Estate Inc d/b/a HomEq where $7,634.26 was then capitalized to the principal amount owed on her loan which also coincided shortly after the last item was publicly reported to the SEC with regard to the MBS trust.

55.     Under the new terms, she would make Interest Only payments for an additional five (5) years based on LIBOR until April 1, 2013 which plaintiff is also informed was fixed.

56.     Ms. Galope's new interest only period required her to pay 5.5% interest only on her loan.

57.     But, while plaintiff was paying 5.5% fixed interest on her interest only modified LIBOR rate loan, Barclays artificially lowered the actual LIBOR rate again making a positive cash flow to Barclays.

58.     The six Month LIBOR in March of 2008 had decreased to 2.6789.

59.     Plaintiff is informed and believes and alleges thereon that the rate upon modification was also fixed and manipulated.

60.     Again, Ms. Galope did not get the benefit of the bargain of the lowered LIBOR rate although her loan was based on the LIBOR rate.

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

61.     She immediately signed the agreement as presented on the belief that her loan was modified to more favorable terms and continued to make all of her payments in 2008.

62.     On April 7, 2008 Taheera Franklin, an employee of Barclays Capital Real Estate Inc d/b/a HomEq, represented to plaintiff on the phone that:

a.     HomEq would add $7,634.26 she owed to her principal balance in order to cure her arrearages,

b.     HomEq modified the interest only adjustable rate mortgage to a fixed 5% interest rate modification,

c.     Her monthly payment would be reduced from $3,817.13 to $2,465.61, and

d.     Her lender was giving her more favorable terms by way of this modification.

63.     Taheera Franklin then faxed a document dated April 7, 2008 titled "Modification Agreement" to plaintiff on or about April 10, 2008.

64.     Attachment A recited that the $7,634.26 was being added to the principal of the loan; that the existing payment of $3,817.13 was being reduced to $2,465.61 plus impound of $561.41 making her new payment $3,027.02 and that the remaining term on her new loan was 345 months at an interest rate of 5.5%. A true and correct copy of the cover letter, modification and Attachment A plaintiff received by fax are attached hereto as Exhibit A.

65.     Taheera Franklin instructed plaintiff to sign it and fax it back.

66.     Plaintiff believed the document contained the terms as represented by Taheera Franklin on the telephone so she signed the document and faxed it back to Taheera Franklin as instructed.

9

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

67.     Plaintiff's reliance was reasonable on the grounds that Attachment A had the same monthly payment figures as discussed on the phone and the first page of the document clearly stated:

> This Modification Agreement ("Agreement") is made and entered into as of this 7th day of April, 2008 by and between HomEq Servicing.

68.     The modification agreement also had a letter attached that matched Attachment A and represented:

> In accordance with the Agreement, your new monthly payment will be due 05/01/2008, in the amount of $3,027.02.  This payment includes $2,465.61 for the new principal and interest payment and $561.41 for the estimated impound/escrow payment." (Exhibit A)

69.     Plaintiff complied with all conditions contained in the document, signed and started making the modified payments under the belief she received the modification as represented by defendant's representative on the telephone.

70.     Defendant HomEq accepted and cashed plaintiff's payments of $3,027.02.

71.     Later, Ms. Galope noticed that the description of her modified terms stopped at March 1, 2013.  Paragraph 1(d) at the bottom of page one of the agreement did not pick up again at page 2.  It simply read:

> **1.NOTE MODIFICATIONS:**
> ...
> **"d. The period in which Borrower's monthly principal and interest payment will consist of interest only is extended until 04/01/2013 (the "Interest Only Period").  Upon expiration of the Interest Only Period, Borrower's monthly principal and interest payment will be increased to an"**

73.     *At that point it just stopped in mid-sentence.*  When she flipped the modification agreement to begin reading the top of the next page, the modification agreement continued with:

> **3. RELEASE:**

10

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. SACV 12 00323-CJC (RNBx)*

> **Borrower releases HomEq, its subsidiaries, affiliates, agents, officers and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the origination and/or servicing of the Loan, and/or events which resulted in Borrower entering into this Agreement.**

74.     Plaintiff was shocked and concerned that her modification payments may change on April 1, 2013 contrary to what she was promised in her phone conversations with Taheera Franklin.

75.     The fax was misleading in that it stopped at "1.d" and then the next page started at "3" making it appear that a page was missing from the fax transmission that contained the missing terms of 1.d and 2 as originally represented by Taheera Franklin over the telephone.

76.     However, this was in fact, the entire document which was faxed by defendant without warning that *the fax transmission actually contained 2 legal size papers sandwiched between 2 letter size pages* in such a way that the least sophisticated consumer would not immediately realize that material terms were missing from the consumer's version of the contract.

77.     Letter size paper is the customary size paper used for faxes.

78.     Defendant placed material terms of the loan on the bottom three inches of the legal size document that were cut off through the fax transmission when it was printed out on letter size paper.

79.     But it lulled plaintiff and those similarly situated into believing a page of the fax was missing, thereby inducing the borrowers into believing they were receiving more favorable terms so they continued to pay on the modified note without seeking other sources for refinancing.

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

80.     Defendant fraudulently misled plaintiff into believing HomEq merely failed to fax over the missing page containing the rest of the terms of her loan modification.

81.     When plaintiff telephoned HomEq, she was directed to and communicated with Taheera Franklin.

82.     Taheera Franklin never disclosed or explained to plaintiff that the 2 pages in the middle of the document were legal size documents that contained additional writing that would be omitted if plaintiff had printed out the document on letter size paper.

83.     Knowing what Ms. Galope was required to pay back per month after April 1, 2013 on her loan was material to the agreement.

84.     Taheera Franklin continued to orally represent to plaintiff that the more favorable terms as discussed previously were part of the document but failed to fax or mail over the entire verbiage of the agreement that was contained on the two legal size pieces of paper.

85.     Plaintiff followed up with several more phone calls and the same answer was given, nothing more and nothing less.

86.     Then one day she was told by Taheera Franklin that the rates could go up or down, but nothing more.

87.     Ms. Galope, still not comprehending the scam, continued making her payments but became concerned and hired an attorney Mr. Laverty for $5,600.00 in an attempt to resolve this issue. However, these scams were not known in 2009 or discoverable.

88.     Defendant responded by causing a Notice of Default to be recorded on the Premises on July 31, 2009.

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

89.     Plaintiff then sought bankruptcy protection in the hopes to work out this dispute on or about January 15, 2010.

90.     By this time defendant Barclays Capital Real Estate Inc. d/b/a HomEq Servicing had employed defendant Ocwen Loan Servicing, LLC to service plaintiff's loan.

91.     The notice of default was rescinded and another notice of default was thereafter recorded on March 8, 2011 by defendant Western Progressive, LLC on behalf of beneficiary Deutsche Bank National Trust Company, as trustee under pooling and servicing agreement dated as of May 1, 2007 securitized asset-backed receivables LLC Trust 2007-BR4 Mortgage Passthrough Certificates, Series 2007-BR4 (aka "DBNTC").

92.     Defendant Ocwen requested Defendant Western Progressive, LLC on behalf of DBNTC to record the Notice of Default.

93.     So, Plaintiff sought bankruptcy protection in July 2011 under Chapter 13.

94.     Defendant Ocwen requested Courtesy Notice of all filed documents electronically shortly after Ms. Galope filed for bankruptcy protection.

95.     Western Progressive, LLC was working on the explicit instruction of defendant Ocwen during this time period.

96.     Although the Premises was protected from foreclosure sale by an automatic stay, and defendant Ocwen knew that the stay was in place, defendant Ocwen instructed defendant WESTERN PROGRESSIVE, LLC to transfer the property out of plaintiff's name on September 1, 2011 and recorded a trustee's deed upon sale in favor of defendant DBNTC on September 8, 2011 at the Los Angeles County Recorder's Office divesting plaintiff of her property interest to the Premises.

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

97.     Plaintiff immediately informed defendants OCWEN, WESTERN PROGRESSIVE, LLC and DBNTC that there was an automatic stay pursuant to 11 USC §362 forbidding the transfer of her property on September 1, 2011.

98.     Plaintiff also demanded the defendants rescind the transfer and to restore title to the property back in plaintiff's name.

99.     But defendants OCWEN, WESTERN PROGRESSIVE, LLC and defendant DBNTC failed and refused to rescind the TDUS up to and including the date that this action was commenced.

100.    During this time, plaintiff had no knowledge that her interest rate payments were being fixed by a manipulated LIBOR rate between Submitters and Swap Traders and Barclays.

101.    On June 27, 2012 a press release from the U.S. Dept. of Justice announced "Barclays Bank PLC Admits Misconduct Related to Submissions for the London Interbank Offered Rate and the Euro Interbank Offered Rate and Agrees to Pay $160 Million Penalty."

102.    LIBOR is an acronym for the London Interbank Offered Rate.

103.    At the same time, the Commodity Futures Trading Commission in the Matter of Barclays PLC, Barclays Bank PLC and Barclays Capital Inc., CFTC Docket No. 12-25 issued an Order Instituting Proceedings Pursuant to Section 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions.

104.    The MBS trust in this case stopped reporting on March 28, 2008 just one week before defendant presented plaintiff with the loan modification at issue in this complaint.

105.    Plaintiff is informed and believes and alleges thereon that reporting stopped because defendants became the sole investors of the MBS trust and/or the

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*        *CASE NO. SACV 12 00323-CJC (RNBx)*

Swap and Cap interest were executed and/or paid to Barclays as provided in the prospectus and related filings with the SEC.

106.     Barclays Bank PLC was the administrator of the Sponsor to the trust; Barclays Bank PLC wholly owned the depositor of the MBS trust; and the Swap and Cap Provider of the MBS trust.

107.     In effect, Barclays was able to bet against the homeowners that borrowed funds wherein their loans were placed in this MBS trust and those loans were wholly dependent on a manipulated and fixed LIBOR rate.

108.     A substantial number of the borrowers in the trust had LIBOR loans.

109.     Plaintiffs and those similarly situated members of the public are still paying their monthly mortgage payments based on a manipulated and fixed LIBOR rate, in this case plaintiff's loan was modified based on manipulated LIBOR rate published in April 2008 and that loan commitment continues through to April 1, 2013.

110.     As a result, defendants' conduct has harmed those with loans based on the LIBOR market rate, those whose loans were placed in a trust that contained a substantial number of LIBOR type loans in the pool, those loans where Barclay's was the Swap Trader and/or Servicer based on the fact that they had the power and control to manipulate the payments required under the loan's terms.

## IV. CLASS ALLEGATIONS

111.     Class Definition: Plaintiff brings this suit as a class action pursuant to Business & Professions Code section 17203 on behalf of herself and all other similarly situated persons as a member of a Class defined as follows:

> Class A:  All persons who reside in the United States and whose real property was held by DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee under pooling and servicing agreement dated as of May 1, 2007 securitized asset

15

**THIRD AMENDED CLASS ACTION COMPLAINT**

backed receivables LLC trust 2007-BR4 and sold at foreclosure while an automatic stay under 11 USC §362 was in effect within the past 4 years.

Class B:  All persons who reside in the United States and whose real property was held by DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee under pooling and servicing agreement dated as of May 1, 2007 securitized asset backed receivables LLC trust 2007-BR4 and who entered into a modification agreement of their loan within the past 4 years that was faxed to the borrower and appeared to have a missing page like the one plaintiff received in this case.

Class C:  All persons who reside in the United States and whose loan was placed in the Securitized Asset Backed Receivables LLC trust 2007-BR4.

Class D:  All persons who reside in the United States and whose loan was placed in the Securitized Asset Backed Receivables LLC trust 2007-BR4 and their loan was based on LIBOR.

112.     Excluded from the Class are the Court, defendants, and their affiliates, subsidiaries, current or former employees, officers, directors, agents, representatives, and their family members.

113.     Numerosity:  The persons who comprise the Plaintiff Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court.  Class members are so numerous and are dispersed throughout the United States that joinder of all Class members is impracticable. The initial principal aggregated under this trust agreement was $849,044,000.00.  Class members can be identified, *inter alia*, through records maintained by the Defendants.

114.     Common Questions of Fact and Law:  Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the Plaintiff Class and will apply uniformly to every member of the Plaintiff Class;

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

a.  Whether Defendant violated Cal Bus & Prof Code §17500;

b.  Whether Defendant's practice was "unfair" within the meaning of the UCL;

c.  Whether Defendant's statements were likely to mislead within the meaning of the UCL and the FAL; and

d.  Whether Class members lost money or property as a result of Defendant's violations of section 17200 or 17500.

115.    The representative Plaintiff(s) will fairly and adequately represent and protect the interest of the Plaintiff Class, and have retained counsel who is competent and experienced in Class Action and foreclosure claims.  There are no material conflicts between the claims of the representative plaintiff and the members of the plaintiff class that would make class certification inappropriate.  Counsel for the plaintiff class will vigorously assert the claims of all members of the plaintiff class.

116.    Defendants have acted or refused to act on grounds generally applicable to the class.

117.    A class action is superior to other methods for the fast and efficient adjudication of this controversy and to avoid the risk of disparate and inconsistent rulings in different courts.  A class action regarding the issues in this case does not create any problems of manageability.

118.    The putative class action meets the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3).

119.    The nature of notice to the proposed class required and/or contemplated is the best practicable method possible and the contemplated defendant's list, when disclosed, would most likely be notice through media outlets, mailing, the internet and other general notices are contemplated to ensure notice.

## V. CLAIMS

17

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

## FIRST CAUSE OF ACTION
### Violation of the Sherman Antitrust Act §1 (Price Fixing)
### (Against Barclays Bank PLC and Barclays Capital Real Estate, Inc. d/b/a HomEq Servicing and DBNTC)

120.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 119 of this Complaint as though set forth in full herein.

121.     Plaintiff brings this claim on behalf of herself and members of the Class in Class C and D.

122.     DBNTC's parent, Deutsche Bank, participated in submitting index borrowing rates that became part of the fixed LIBOR rate.

123.     Plaintiff's right of action in this complaint is based in part on matters complained of in the Matter of: Barclays PLC, Barclays Bank PLC and Barclays Capital Inc., CFTC Docket No. 12-25 and the June 27, 2012 Order Instituting Proceedings Pursuant to Sections 6(c) and 69d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions before the Commodity Futures Trading Commission; and the Non-Prosecution Agreement dated June 26, 2012 between the United States Department of Justice, Criminal Division, Fraud Section, and Barclays Bank PLC.

124.     The statute of limitations on plaintiff's right of action was tolled by the pendency of that proceeding to the date of the filing this complaint.

125.     Plaintiff had no knowledge of the violations of the antitrust laws alleged in this complaint, or of any facts that might have led to their discovery.  Plaintiff first became aware of the  unlawful conduct with relation to the LIBOR rate manipulation on or about June 27, 2012 after the above government matters surfaced after this complaint was filed.  Plaintiff could not have uncovered the violations at an earlier date by the exercise of due diligence, because the violations have been fraudulently concealed by

### THIRD AMENDED CLASS ACTION COMPLAINT

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

defendants through various means and methods designed to avoid detection of the violation.

126.    Defendants have combined, contracted, and conspired with each other and with other nondefendant co-conspirators to eliminate competition between themselves and to suppress or eliminate the competition of others by various means, including without limitation, prix fixing. This agreement between defendants violates §§ 1 and 2 of the Sherman Antitrust Act (15 USC §§1-2)

127.    <u>Count 1</u>: Defendants have combined, contracted, and conspired with each other and with other nondefendant co-conspirators to fix, raise, and stabilize the LIBOR rate from 2006 through 2009 in violation of section 1 of the Sherman Antitrust Act. (15 USC §§1-2)

128.    <u>Count 2</u>: Defendants have combined, contracted, and conspired with each other and with other nondefendant co-conspirators to fix, raise, and stabilize the prices at which they would sell LIBOR, Interest Only Adjustable Rate Mortgages in violation of section 1 of the Sherman Antitrust Act. (15 USC §§1-2)

129.    A combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing LIBOR and/or the price of a commodity in interstate or foreign commerce is illegal per se. *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150, 223 (1940).

130.    Barclay's policy/practice of manipulating the LIBOR market rate from 2006 through to 2009 violated the Sherman Antitrust Act §1, in that Barclay's and DBNTC have combined, contracted, and conspired with each other and other nondefendant co-conspirators to fix, raise and lower the LIBOR market rate at which Barclays would then contract with others to sell mortgage loans based on LIBOR including plaintiff's loan in this case, and also had the ability to unjustly enrich itself

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*      *CASE NO. SACV 12 00323-CJC (RNBx)*

and also bet for or against the default of the same loan pool as the SWAP and CAP provider.

131.     As a direct and proximate result of the violations charged above, plaintiff has been injured in her business or property in that she has been forced to pay interest on her long term investment of 30 years for the purchase of her home based on the LIBOR rate fixed by defendants and their co-conspirators which was substantially higher than what she would have paid in the absence of the violations.

132.     As a further direct and proximate result of the violations charged above, plaintiff has been injured in her business or property in that she has lost and/or is losing her property due to the effect a manipulated index interest rate of LIBOR has on reducing the value of plaintiff's property.

133.     All of the offenses charged above against defendants were in furtherance of an attempt by defendants to monopolize, and defendants' actual monopolization of the market of the LIBOR interest rate used in the economy and specifically for consumer home loans in this case, throughout the states in the United States, in violation of section 2 of the Sherman Antitrust Act (15 USC §2).

134.     Plaintiff does not know the full extent of her damages, but believes that damages have been substantial.

Wherefore plaintiff demands judgment against defendants as set forth below.

**SECOND CAUSE OF ACTION**
**UCL §17200 VIOLATION**
**(Against Barclays Bank PLC and Barclays Capital Real Estate, Inc. d/b/a HomEq Servicing and DBNTC)**

135.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 134 of this Complaint as though set forth in full herein.

136.     Plaintiff brings this claim on behalf of herself and members of the Class in Class C and D.

20

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

137.        Business & Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business & Professions Code" and reaches past and one-time acts.

138.        Beginning at an exact date unknown to plaintiff but at least in the past 5 years, (in the case of plaintiff since December 15, 2006 and then again on April 7, 2008), Barclays Bank PLC and Barclays Capital Real Estate Inc. d/b/a HomEq Servicing (collectively "Barclays") has committed acts of unfair competition, as defined by Business & Professions Code §17200, by engaging in the following practices:

a.   Barclay's policy/practice of manipulating the LIBOR market rate from December 2006 through to 2009 violated Sections 6(c), 6(d) and 9(a)(2) of the Commodity Exchange Act, 7 USC §§ 9, 13b and 12(a)(2), in that Barclay's delivered, or caused to be delivered for transmission through the mails or interstate commerce, by any means of communication whatsoever including the publication of the LIBOR rate in the Wall Street Journal, a false or misleading or inaccurate report concerning the LIBOR rate which was supposed to be based on central banking market conditions that affected or tended to affect the price of many commodities in interstate commerce, including Plaintiff and other's interest only monthly mortgage payments based on the LIBOR index, and/or knowing, or acting in reckless disregard of the fact that such reporting of the LIBOR rate from 2006 through 2009 was false, misleading or inaccurate, and consequently, constituted an unlawful business act or practice *within* the meaning of Business & Professions Code §17200.

b.   Barclay's policy/practice of manipulating the LIBOR market rate from December 2006 through to 2009 violated the Federal anti-trust laws and the

21

**THIRD AMENDED CLASS ACTION COMPLAINT**

California Cartwright Act, in that Barclay's fixed the LIBOR market rate by colluding with other insider Swap Traders and outside Swap Traders instead of independently submitting a LIBOR market rate based on central banking market conditions that affected or tended to affect interstate commerce, including Plaintiff and other's interest only monthly mortgage payments based on the LIBOR index from 2006 through 2009, and consequently, constituted an unlawful business act or practice *within* the meaning of Business & Professions Code §17200. *Quilimane v Stewart Title Guaranty Co.*, 19 Cal.4th 26 (1998)

    c. DBNTC's parent, Deutsche Bank, participated in submitting index borrowing rates that became part of the fixed LIBOR rate.

    d. Defendants have combined, contracted, and conspired with each other and with other nondefendant co-conspirators to eliminate competition between themselves and to suppress or eliminate the competition of others by various means, including without limitation, prix fixing. This agreement between defendants violates §§ 1 and 2 of the Sherman Antitrust Act (15 USC §§1-2)

    e. Barclay's policy/practice of manipulating the LIBOR market rate from December 2006 through to 2009 violated the Sherman Antitrust Act §1, in that Barclay's and DBNTC have combined, contracted, and conspired with each other and other nondefendant co-conspirators to fix, raise and lower the LIBOR market rate at which Barclays would then contract with others to sell mortgage loans based on LIBOR including plaintiff's loan in this case, and also had the ability to bet for or against the default of the same loan pool as the SWAP and CAP provider, and consequently, constituted an unlawful business act or practice *within* the meaning of Business & Professions Code §17200. (15 USC §1)

    f. As a direct and proximate result of the violations charged above, plaintiff has been injured in her property in this she has been forced to pay interest based

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*    *CASE NO. SACV 12 00323-CJC (RNBx)*

on the LIBOR rate fixed by defendants and their co-conspirators substantially higher than those she would have paid in the absence of the violations.

g.   The harm to plaintiff and to members of the general public outweighs the utility of defendant Barclay's policy/practice of manipulating the LIBOR market rate, and consequently,  constitutes an unfair business act or practice within the meaning of Business & Professions Code §17200. *Cel-Tech Communications v Los Angeles Cellular Telephone Company*, 20 Cal4th 163 (1999).

h.   Defendant Barclay's policy/practice of manipulating the LIBOR rate is likely to mislead the general public, and consequently, constitutes a fraudulent business act or practice within the meaning of  Business & Professions Code §17200.

i.   DBNTC's acts of untrue and misleading advertising, as more fully set forth in paragraphs 170 through 182, are incorporated herein by this reference and are, by definition, a violation of Business & Professions Code §17200. (e.g. the LIBOR rate was independently determined based on market factors but was manipulated for the Submitters and Swap Trader's own pecuniary interest).

139.     The unlawful, unfair, and fraudulent business practices of manipulating the market rate of LIBOR present a continuing threat to members of the public in that it gives the false perception to the public that the affected loans were based on independent market factors and plaintiffs and members of the public are still paying based on a manipulated and fixed LIBOR rate, in this case plaintiff's loan was modified based on manipulated LIBOR rate published in April 2008 and that loan commitment continues through to April 1, 2013.

140.     Plaintiff and other members of the general public have no other adequate remedy at law in that real property is deemed unique and plaintiffs lost their opportunity

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

to obtain financing elsewhere in 2006-2007 when the real estate market was still healthy and thriving and their homes still had equity in them.

141.     As a result of the aforementioned acts, plaintiff and Class members have lost money or property and suffered injury in fact.  Defendant received and continues to hold the property belonging to the plaintiff and members of the Class, as well as an undeserved public image of all of the defendants that they cared about modifying loans in order to avoid foreclosure.

142.     Finally, stopping this practice furthers the public interest.  Ms. Galope is therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

Wherefore plaintiff demands judgment against defendants as set forth below.

**THIRD CAUSE OF ACTION**
**UCL §17200 VIOLATION**
**(Against Ocwen, DBNTC and Western Progressive, LLC)**

143.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 142 of this Complaint as though set forth in full herein.

144.     Plaintiff brings this claim on behalf of herself and members of the Class in Class A.

145.     Business & Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business & Professions Code" and reaches past and one-time acts.

146.     At all times mentioned herein, defendant Western Progressive, LLC was acting as defendant DBNTC'S agent, servant, representative, and/or employee of DBNTC, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives and/or employees, and with the permission,

24

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al        CASE NO. SACV 12 00323-CJC (RNBx)*

authorization and consent of DBNTC or DBNTC ratified, acquiesced or adopted Western Progressive, LLC's actions.

147.     Defendant Ocwen, directed, instructed or advised Western Progressive, LLC to sell Ms. Galope's home despite Ocwen receiving notice that Ms. Galope's home was protected from foreclosure sale by way of an automatic stay in bankruptcy.

148.     Each defendant knew or had reason to know of these facts, and as such are jointly and severally liable.

149.     Beginning at an exact date unknown to plaintiff but at least in the past 4 years, (in the case of plaintiff since September 1, 2011), DBNTC , Ocwen and Western Progressive, LLC has committed acts of unfair competition, as defined by Business & Professions Code §17200, by engaging in the following practices:

a.     DBNTC, Ocwen and Western Progressive's policy/practice of selling property at foreclosure during an automatic bankruptcy stay violated 11 USC §362. Plaintiff was facing a foreclosure auction date of July 14, 2011 so she sought bankruptcy protection under Chapter 13 on July 11, 2011 which invoked 11 USC §362, the automatic stay rule, prohibiting the foreclosure sale of the Premises.  Although, DBNTC and Western Progressive, LLC received all notices from the US Bankruptcy court regarding the bankruptcy stay which was accepted and received by their duly authorized agent Ocwen and its attorney Les Zieve two days before the sale occurred; Western Progressive, LLC unlawfully transferred the Premises at foreclosure auction on September 1, 2011 to defendant DBNTC in violation of 11 USC §362. Plaintiff notified defendants of the stay violation and demanded rescission on September 7, 2011 but defendants ignored plaintiff's request and recorded a Trustee's Deed Upon Sale and as of the date plaintiff filed suit, Defendants continued to wrongfully retain plaintiff's property by refusing to rescind the sale, and consequently, constitutes an unlawful business act or

25

**THIRD AMENDED CLASS ACTION COMPLAINT**

practice *within* the meaning of Business & Professions Code §17200. *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499 (1997)

    b.  The harm to plaintiff and to members of the general public outweighs the utility of defendant's policy/practice, and consequently, defendant Ocwen, DBNTC and Western Progressive, LLC's practice of foreclosing in violation of 11 USC §362, the US Bankruptcy Court's automatic stay, constitutes an unfair business act or practice within the meaning of Business & Professions Code §17200.

    c.  Defendant Ocwen, DBNTC and Western Progressive, LLC's policy/practice of foreclosing in violation of 11 USC §362, the US Bankruptcy Court's automatic stay, is likely to mislead the general public, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

150.    The unlawful, unfair, and fraudulent business practices of transferring property in violation of 11 USC §362, as described above, present a continuing threat to members of the public in that plaintiffs and members of the public are lulled into a false sense of security that it gives a false reassurance to a reasonable person in foreclosure that defendants will not transfer the foreclosed property while the automatic stay is in effect in their US Bankruptcy case.

151.    Plaintiff and other members of the general public have no other adequate remedy at law in that real property is deemed unique.

152.    As a result of the aforementioned acts, plaintiff and Class members lost money or property and suffered injury in fact. Ocwen, DBNTC and Western Progressive, LLC deprived plaintiff of title to her property and diminished her present property interest in the Premises on September 1, 2011 when defendants transferred her property and continued to hold said interest up to the date of filing this action. Such

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*    *CASE NO. SACV 12 00323-CJC (RNBx)*

actions and failure to act also caused further credit damage upon the act of the transfer and clouding of title to the property.

153.     Defendants conduct was intentional, willful, fraudulent, despicable and/or malicious warranting punitive damages.

154.     Defendant Ocwen, DBNTC and Western Progressive, LLC's unfair business practices entitles plaintiff and the plaintiff class to seek preliminary and permanent injunctive relief, as well as costs, damages, punitive damages per 11 USC §362, and reasonable attorney fees.

155.     Finally, stopping this practice furthers the public interest.  Ms. Galope is therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

Wherefore plaintiff demands judgment against defendants as set forth below.

### FOURTH CAUSE OF ACTION
### UCL §17200 VIOLATION
### (Against DBNTC and Barclays Capital Real Estate Inc. d/b/a HomEq)

156.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 155 as though set forth in full herein.

157.     Plaintiff brings this claim on her behalf and all Class members of Class B.

158.     At all times mentioned herein, Taheera Franklin was acting as Barclays Capital Real Estate Inc. d/b/a HomEq's employee, authorized agent or representative and acting within her scope of said employment or agency.

159.     At all times mentioned herein, HomEq was acting as defendant DBNTC'S agent, servant, representative, and/or employee of DBNTC, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives and/or employees, and with the permission, authorization and consent of DBNTC or DBNTC ratified, acquiesced or adopted HomEq's actions.

27

**THIRD AMENDED CLASS ACTION COMPLAINT**

160.     Business & Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business & Professions Code" and reaches past and one-time acts.

161.     Beginning at an exact date unknown to plaintiff but at least since April 7, 2008, DBNTC has committed acts of unfair competition, as defined by Business & Professions Code §17200, by engaging in the following practices:

a.  DBNTC's policy/practice of faxing over loan documents where the loan terms are located on the bottom of two legal size documents that are sandwiched between two letter size documents, without warning that the fax contained legal size paper documents, so that all terms on the bottom of the two legal size documents would not be printed out as part of the fax onto letter size paper and then representing that the  terms were more favorable than under the original note, misled plaintiff into believing that terms more favorable than her original note were contained in the missing page when in fact there was no missing page so the actual terms were not disclosed to plaintiff, constitutes an unfair or fraudulent business act or practice within the meaning of Business & Professions Code §17200.

b.  DBNTC's policy/practice of fraudulently faxing over loan documents where the loan terms are located on the bottom of two legal size documents that are sandwiched between two letter size documents, without warning that the fax contained legal size paper documents, so that all terms on the bottom of the two legal size documents would not be printed out as part of the fax received onto letter size paper and then representing that the  terms were more favorable than under the original note is likely to mislead the general public, and consequently,

28

**THIRD AMENDED CLASS ACTION COMPLAINT**

constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

    c.  The harm to plaintiff and to members of the general public outweighs the utility of defendant's policy/practice, and consequently, DBNTC's practice of faxing over legal size paper loan documents to borrowers constitutes an unfair business act or practice within the meaning of Business & Professions Code §17200.

    d.  DBNTC's acts of untrue and misleading advertising, as more fully set forth in the next cause of action below, are incorporated herein by this reference and are, by definition, a violation of Business & Professions Code section 17200.

    e.  DBNTC's policy/practice of orally promising more favorable terms then faxing over the document and making it appear a page is missing, but the agreement as represented in the initial phone call exists, is likely to mislead the general public, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

162.    The unlawful, unfair, and fraudulent business practices and false and misleading representations of DBNTC, as described above, present a continuing threat to members of the public in that it gives a false reassurance to a reasonable person that there are more favorable terms under the modified note so the borrower stops searching for more favorable terms from other financial institutions or exploring other alternatives at the time the document is faxed over and signed.

163.    Furthermore, the modified terms do not change until long after the modification is signed so a payment change would not be discovered until years afterwards, in plaintiff's case – not until April 1, 2013.

164.    Plaintiff and other members of the general public have no other adequate remedy at law in that defendant and its agents are not deemed debt collectors under the

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*    *CASE NO. SACV 12 00323-CJC (RNBx)*

FDCPA so as to evade laws designed to protect consumers from these abusive, unfair and misleading business practices.

165.     As a result of the aforementioned acts, plaintiff and Class members have lost money or property and suffered injury in fact.  Plaintiff entered into the modification in reliance on DBNTC's deceptive representations concerning the lowered interest rate and fixed payments for the remainder of the loan period.

166.     Defendants conduct was intentional, willful, fraudulent, despicable and/or malicious warranting punitive damages.

167.     Defendant DBNTC's unfair business practices entitles plaintiff and the plaintiff class to seek injunctive relief, as well as costs, damages, punitive damages, and reasonable attorney fees.

168.     Finally, stopping this practice furthers the public interest.  Ms. Galope is therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

Wherefore plaintiff demands judgment against defendants as set forth below.

## FIFTH CAUSE OF ACTION
## FAL Violation of §17500
### (Against DBNTC, Barclays Bank PLC and Barclays Capital Real Estate Inc. d/b/a HomEq)

169.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 169 as though set forth in full herein.

170.     Plaintiff brings this claim on her own behalf and on behalf of each member of Class B, C and D described above.

171.     California's Bus & Prof Code §17500 statute provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public

30

**THIRD AMENDED CLASS ACTION COMPLAINT**

to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine." *Id.*

172.   Beginning at an exact date unknown to plaintiff but at least since April 7, 2008, HomEq and DBNTC has committed acts of untrue and misleading advertising, as defined by Bus & Prof Code §17500, by engaging in the following acts and practices with the intent to induce members into signing new modification agreements which members falsely believed were terms more favorable than their original loan terms.

173.   Plaintiff would have sought refinancing elsewhere and would not have entered into the modification if she knew the payments were not laid out as to what she was expected to pay for the remainder of her loan after April 1, 2013.

31

**THIRD AMENDED CLASS ACTION COMPLAINT**

174.   The letter and agreement attached as Exhibit A which stated that it was a modification of plaintiff's note was an advertisement as that term is defined by Bus & Prof Code §17500.

175.   The acts of untrue and misleading advertising by HomEq and DBNTC described in this complaint present a continuing threat to members of the public in that these missing page faxes lead consumers to believe that they are getting a loan modification on more favorable terms only to find out years later that is not true.

176.   As a result, plaintiff and those similarly situated are entitled to restitution pursuant to Cal Bus & Prof Code §17535 as necessary "to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful."

177.   As a further result, plaintiff and those similarly situated are entitled to $2,500.00 for each violation, costs and attorney fees, and injunctive relief as deemed just.

178.   **Second**, beginning at an exact date unknown to plaintiff but at least since December 16, 2006, defendants Barclays Bank PLC and Barclays Capital Real Estate, Inc. has committed acts of untrue and misleading advertising, as defined by Bus & Prof Code §17500, by engaging in the following acts and practices, in that said defendants published LIBOR rates that were not based on the central banking market but on rates manipulated by the defendants.

179.   Plaintiff would not have signed a loan where the interest rate could be fixed  and manipulated.

180.   The publication of the LIBOR market rate in the Wall Street Journal and elsewhere was an advertisement as that term is defined by Bus & Prof Code §17500.

181.   The acts of untrue and misleading advertising by Barclay's described in this complaint present a continuing threat to members of the public in that it gives the false perception to the public that plaintiff's and Class' loan obligations were based on market

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

factors when in fact plaintiff and the Class have been paying and continue to pay their monthly mortgage payments based on a manipulated and fixed market rate by the same entity that ensured their loans were initially funded, was the servicer of their loan and were also the Swap interest and Cap interest rate provider.

182.   As a result, plaintiff and those similarly situated are entitled to restitution pursuant to Cal Bus & Prof Code §17535 as necessary "to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful."

183.   As a further result, plaintiff and those similarly situated are entitled to $2,500.00 for each violation, costs and attorney fees, and injunctive relief as deemed just.

184.       Finally, stopping this practice furthers the public interest.  Ms. Galope is therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

Wherefore plaintiff demands judgment against defendants as set forth below.

## SIXTH CAUSE OF ACTION
### Aiding and Abetting Violation of §17200
### (Against and Barclays PLC and Barclays Capital Real Estate Inc. d/b/a HomEq Does 4 through 10)

185.       Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 184 as though set forth in full herein.

186.       Plaintiff brings this claim on her own behalf and on behalf of each member of the Class B, C and D described above.

187.       Defendants Barclays Bank PLC and Barclays Capital Real Estate, Inc. knew and were aware of HomEq and DBNTC's unlawful, unfair or deceptive business practices and untrue and misleading advertising alleged above by virtue of selecting those borrowers for HomEq and DBNTC to target in this "missing" fax page scheme.

33

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. SACV 12 00323-CJC (RNBx)*

188.    Defendants Barclays Bank PLC and Barclays Capital Real Estate, Inc. aided and abetted/induced these violations by DBNTC in that they selected those borrowers for DBNTC to target.

Wherefore, plaintiff prays for relief as set forth hereinafter.

## SEVENTH CAUSE OF ACTION
## FOR WRONGFUL FORECLOSURE

### (Against Defendants Ocwen, DBNTC and Western Progressive, LLC)

189.    Plaintiff hereby incorporates all allegations in paragraphs 1 through 188 of this Complaint as though fully set forth at length herein.

190.    Defendants Ocwen, DBNTC and Western Progressive, LLC authorized, directed, instructed, advised and/or conducted an illegal, fraudulent or oppressive foreclosure sale on September 1, 2011 as more fully alleged above.

191.    Plaintiff sought bankruptcy protection on or about July 11, 2011 and an automatic stay was issued.

192.    Defendant WESTERN PROGRESSIVE, LLC nevertheless proceeded by holding a nonjudicial foreclosure sale pursuant to the power of sale clause under the Deed of Trust on the Premises on September 1, 2011 and fraudulently transferred the Premises to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2007 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-BR4 by delivering a Trustees Deed Upon Sale to them.

193.    Defendant's conduct of transferring her property on September 1, 2011 while she was protected from such transfers pursuant to 11 USC §362; and then refusing to rescind the transfer up to the time of filing this complaint was illegal, fraudulent or oppressive which resulted in the wrongful foreclosure of plaintiff's Premises.

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. SACV 12 00323-CJC (RNBx)*

194.    As a result of defendant's conduct, plaintiff sustained damages, credit damage, was unable to procure financing elsewhere, and has also caused plaintiff to incur costs and attorney fees in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## FOR BREACH OF GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

195.    Plaintiff hereby incorporates all allegations in paragraphs 1 through 194 of this Complaint as though fully set forth at length herein.

196.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class A, B, C and D described above.

197.    In every contract or agreement, including those at issue here, there is an implied promise of good faith and fair dealing.

198.    Defendant Western Progressive owed a duty of good faith and fair dealing to plaintiff and the Class to act independently as a legal trustee and to only execute a trustee's deed upon sale when it was legally allowed to do so.

199.    Implied in this relationship was a duty to act in good faith and fair dealing when executing it's duty as a legal trustee.

200.    Defendant Western Progressive breached that duty on September 1, 2011 by executing a trustee's deed upon sale in violation of the 11 USC §263 automatic stay and thereafter refusing to rescind that sale for nine months.

201.    Defendant Ocwen owed a duty of good faith and fair dealing to plaintiff and the Class to act lawfully and direct, instruct, or advise Western Progressive, LLC that the US Bankruptcy court issued a stay forbidding the sale of plaintiff's property at foreclosure and to abide by that order prior to the sale taking place on September 1, 2011.

202.    Defendant Ocwen breached that duty on August 30, 2011 failing to act lawfully and direct, instruct, or advise Western Progressive, LLC that the US

35

## THIRD AMENDED CLASS ACTION COMPLAINT

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al      CASE NO. SACV 12 00323-CJC (RNBx)*

Bankruptcy court issued a stay forbidding the sale of plaintiff's property at foreclosure and to abide by that order prior to the sale taking place on September 1, 2011 and thereafter refusing to rescind that sale for nine months.

203.     Defendant Barclay's and DBNTS owed a duty to plaintiff in dealing with her fairly with regard to the terms of her loan obligations.

204.     This applies so here where this was a contract of adhesion wherein Galope had no bargaining power as to the terms and conditions of both her Note and the modification agreement filled with boilerplate language.

205.     The loan was ostensibly offered at the market rate of LIBOR to Galope.

206.     The modification was ostensibly offered so that Galope could avoid foreclosure and obtain a sustainable payment plan.

207.     Barclays' however manipulated the LIBOR rate on both the original loan (Note) and the modification thereof.

208.     As such, Barclays breached the implied covenant of good faith and fair dealing.

209.     Second, Barclays d/b/a HomEq and DBNTC breached the implied covenant of good faith and fair dealing when it faxed over a legal size loan document without warning that the terms were not contained on standard letter size paper. Implicit in the overall scheme of inducing Galope to make payments not knowing the material repayment terms during which time HomEq exercised its discretion in bad faith, as to whether or not to mail the full terms to Galope or disclose that the document was legal size and the terms were cut off from the bottom of the page.

210.     By reason of the foregoing, defendant is obligated to pay damages to Galope and the Class in an amount to be proven at trial.

Wherefore plaintiff demands judgment against defendants as set forth below.

## NINTH CAUSE OF ACTION

36

## THIRD AMENDED CLASS ACTION COMPLAINT

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

## FOR FRAUD
## (Against Defendants Barclays Bank PLC and Barclays Capital Real Estate Inc.)

211.    Plaintiff hereby incorporates all allegations in paragraphs 1 through 211 of this Complaint as though fully set forth at length herein.

212.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class B, C and D described above.

213.    Plaintiff's Subject Property was refinanced on or about December 16, 2006 by defendants with an IO ARM based on the LIBOR market rate.

214.    On numerous occasions defendants and their co-conspirators, co-defendants and nondefendants participated in telephone conversions, emails, messaging during which they provided Barclays with information about setting the LIBOR rate for a fixed period of time between 2006 and 2009.

215.    Defendants agreed to and did submit the LIBOR rate at artificial levels from 2006 through 2009.

216.    For example, two days prior to the funding of the loan, a message went out to a Barclay's submitter as identified in the USDOJ Appendix of admitted facts stating:

   a. **"For Monday we are very long 3m cash here in NY and would like the setting to be set as low as possible...thanks" (December 14, 2006, Trader in New York to Submitter)."**

217.    Plaintiff's loan rate was set based on the manipulated LIBOR Rates that were contained in the preceding six months.

218.    However, defendant publicly published its LIBOR rate in the Wall Street Journal and in other publications as one being based on central banking market factors.

219.    Barclay's knew of the republication of the LIBOR market rate and the assumptions as to how it was calculation throughout various national media, and

37

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al        CASE NO. SACV 12 00323-CJC (RNBx)*

consented, authorized, adopted or acquiesced in the representations made during the republications.

220.     As a result of these representations, plaintiff was led to believe that her home loan monthly mortgage payments were based on a LIBOR market interest rate based on market factors outside of Barclay's control and not by Barclay's manipulation.

221.     Plaintiff reasonably relied on these representations as published.

222.     At the time Barclay's made these press releases and heard the continuing republication of its press releases, Barclay's knew or should have known that they were not truthful or deceitful in some respect.

    a.  Defendants unlawfully, willfully, and knowingly would and did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false of fraudulent pretenses, representations and promises, namely a scheme to have loan sellers provide contracts to consumers at artificially determined rates and then deprive the consumers of their property right to control their assets by causing them to make economic decisions based on false and misleading information.

    b.  Defendants unlawfully, willfully, and knowingly would and did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false of fraudulent pretenses, representations and promises, namely a scheme to provide the LIBOR rate at artificially determined rates and then deprive the consumers of their property right to control their assets by causing them to make economic decisions based on false and misleading information.

223.     Plaintiff lost the opportunity to refinance her mortgage elsewhere when the real estate market was still thriving and she still had equity in her property.

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*    *CASE NO. SACV 12 00323-CJC (RNBx)*

224.     As a proximate result of defendant's conduct, plaintiff has been financially injured in that she has made over $60,000.00 in interest payments based on manipulate market LIBOR and not a true interest rate index independent of the entities to whom she was obliged to make her monthly mortgage payments to.

225.     These acts of deceit and misrepresentations were made in furtherance of defendant's goals of taking Galope's home from her.

226.     The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s) of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

Wherefore, plaintiff prays for relief as set forth hereinafter.

## VI. PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray for judgment** against defendants, and each of them, as follows:

A. Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants be preliminarily and permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein.

B. Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants are ordered to restore to the general public all funds or property acquired by means of any act or practice declared by this Court to be unlawful

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al        CASE NO. SACV 12 00323-CJC (RNBx)*

or fraudulent or to constitute unfair competition under Business & Professions Code §17200 et seq., or untrue or misleading advertising under §17500 et seq.

**C.** Actual, Special and General Damages as proven at trial;

**D.** Statutory damages and civil penalties;

**E.** Treble Damages for Antitrust violations;

**F.** Costs of this action, including the fees and costs of experts;

**G.** Attorneys' fees;

**H.** Exemplary and Punitive Damages; and

**I.** Such other and further relief as this Court finds necessary and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial as to part that is not equitable in nature.

Dated: July 20, 2012

LAW OFFICES OF LENORE ALBERT

By: s/Lenore L. Albert

LENORE L. ALBERT, ESQ.
Attorney for plaintiff, Helen Galope and all others similarly situated

40

**THIRD AMENDED CLASS ACTION COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. SACV 12 00323-CJC (RNBx)*

1

PROOF OF SERVICE

2

3  STATE OF CALIFORNIA, COUNTY OF ORANGE:
   I declare that I am over the age of 18 years, and not a party to the within action; that I
4  am employed in Orange County, California; my business address is 7755 Center Avenue
5  Suite #1100,Huntington Beach, CA 92647.
   On July 20, 2012, I served a copy of the following document(s) described as:
6

7  **THIRD AMENDED CLASS ACTION COMPLAINT**

   On the interested parties in this action as follows:
8  <u>For Defendant Western Progressive, LLC and</u>
9  <u>Defendant Deutsche Bank National Trust Company:</u>
   Eric D. Hauser, Esq.
10 Steven S. Son, Esq.
11 HOUSER & ALLISON
   3760 Kilroy Airport Way, Suite 260
12 Long Beach, CA 90806
13 Telephone: (949) 679-1111
14 Fax: (949) 679-1112
   Email: sson@houser-law.com
15  **[x] BY CM/ECF** – I caused such document(s) to be transmitted to the office(s) of the
16 addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to
17 FRCP 5(d)(1).
   **[ ] BY EMAIL** – I caused such document(s) to be transmitted to the office(s) of the
18 addressee(s) listed above by electronic mail at the e-mail address(es) set forth herein.
19  **[ ] BY FAX** – I caused such document(s) to be transmitted facsimile from the offices
   located in Westminster, California this business day to the aforementioned recipients.
20     I declare under penalty of perjury under the laws of the State of California and the
21 United States of America that the foregoing is true and correct.

22

23 Dated: July 20, 2012

                                    s/ Lenore Albert
24                                    Lenore Albert

25

26

27

28

**41**

**THIRD AMENDED CLASS ACTION COMPLAINT**

# EXHIBIT A

Prepared by and return to:
HomEq Servicing
Attn: Mod Imaging-CA3507
4837 Watt Avenue
North Highlands, CA 95660

Account Number: 0000326300969

## Modification Agreement

This Modification Agreement ("Agreement") is made and entered into as of this 7th day of April, 2008 by and between HomEq Servicing ("HomEq") and HELEN GALOPE ("Borrower")

Whereas, HomEq is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated as of 12/27/2006, executed by Borrower or Borrower's predecessor-in-interest in the original principal amount of $522,000.00.

WHEREAS, the Note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest and is secured by either a deed of trust or mortgage ("Security Instrument") dated as of 12/27/2006. The Security Instrument encumbers certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument).

WHEREAS, due to adverse economic circumstances, Borrower has requested that HomEq adjust the terms of the Note to permit Borrower to meet Borrower's Loan obligations in a full and in a timely manner.

WHEREAS, the requested adjustment will benefit all parties to the Loan and any junior lien holder by providing the Borrower an opportunity to meet the Loan obligations in a manner intended to help the Borrower avoid default on the Loan and the necessity of foreclosure on the Property.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **NOTE MODIFICATIONS:**
(a) **Outstanding Debt:** Borrower agrees that the unpaid principal balance due on the Note of $522,000.00 shall be adjusted to $537,951.62 ("New Balance"), to reflect the amount of unpaid interest, late charges, fees and costs, advances for unpaid property taxes and/or insurance premiums (if applicable), less any amounts forgiven, as reflected on Attachment 'A'.

Borrower agrees to pay the New Balance to HomEq and has no defenses, claims or offsets with respect thereto. Interest will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

(b) **New Monthly Payments; Payment Adjustments:** Effective with Borrower's monthly payment due 05/01/2008, Borrower's monthly Loan payment will be $2,465.61. This payment amount does not include additional amounts which may also be due for the payment of taxes and insurance premiums. The taxes and insurance payment amount will be due monthly, together with Borrower's scheduled Loan payment. Borrower agrees that a full payment hereunder and with respect to the Loan shall only be deemed to have been made when funds remitted include the required scheduled Loan payment and monthly portion of taxes and insurance premiums. The date on which the New Monthly Payment change is next scheduled to occur is hereby changed to 05/01/2013.

(c) **New Interest Rate:** Effective on 04/01/2008, Borrower's rate of interest will be 5.500%. The date on which the interest rate change is next scheduled to occur is hereby changed to 04/01/2013.

(d) **Interest Only Period:** The period in which Borrower's monthly principal and interest payment will consist of interest only is extended until 04/01/2013 (the "Interest Only Period"). Upon expiration of the Interest Only Period, Borrower's monthly principal and interest payment will be increased to an

Case 1:10-ap-01082-MT   Doc 7-1   Filed 03/25/10   Entered 03/25/10 13:17:49   Desc
part 2 of 3   Page 4 of 26

Account Number:0000326300969

**3.   RELEASE:**

Borrower releases HomEq, its subsidiaries, affiliates, agents, officers and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the origination and/or servicing of the Loan, and/or events which resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation (if applicable), California Civil Code Sec. 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Borrower's Initial _____

Borrower's Initial _____

**4.   NO OTHER CHANGES:**

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations and conditions in the Note and the Security Instrument remain unmodified and in full force and effect without any defense, counterclaim, right or claim of set-off. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein, nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument, whether such rights or remedies arise herein or by operation of law.

**5.   ENTIRE AGREEMENT:**

This Agreement constitutes the entire Agreement between the parties regarding the subject matter hereof. Except as otherwise provided herein, this Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether written or oral, of the parties hereto, relating to the Note and Security Instrument.

**6.   VOLUNTARY EXECUTION:**

Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing below Borrower acknowledges and agrees that Borrower has voluntarily signed this Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Modification Agreement as of the date first above written.

BORROWER

Signature: _____

Name: _____ HELEN A. GAUPE _____

BORROWER

Signature: _____

**ATTACHMENT 'A'**                                                    Loan #   0000326300969

**AMOUNTS PAST DUE - CAPITALIZED**                    **LOAN INFORMATION**

| | | | |
|---|---|---|---|
| Delinquent Interest | $7,634.26 | Borrower Name: | |
| Late Charges | $381.72 | | GALOPE, HELEN |
| NSF Fees | $0.00 | | |
| Negative Escrow Balance | $7,935.64 | | |
| Corporate Advances | $0.00 | Prop Address: | |
| | | | 19117 DELANO ST TARZANA |
| Mortgage Insurance Premium | $0.00 | | AR |
| Modification Fee | $0.00 | | LOS ANGELES, CA 91335 |
| Other Fees | $0.00 | | |
| Other _____ | $0.00 | | |
| | $15,951.62 | Note Date: | 12/27/2006 |
| | | Orig Amt: | $522,000.00 |
| | | MTG/Deed Date: | 12/27/2006 |

**BORROWER CREDITS (-)**

| | |
|---|---|
| Contribution Amt | $0.00 |
| Suspense Bal | $0.00 |
| Other Credit | $0.00 |
| | $0.00 |

**AMOUNTS PAST DUE - FORGIVEN**

| | |
|---|---|
| Unpaid Principal | $0.00 |
| Delinquent Interest | $0.00 |
| Late Charges | $0.00 |
| Foreclosure Fees & Costs | $0.00 |
| Bankruptcy Fees & Costs | $0.00 |
| Negative Escrow Balance | $0.00 |
| Other Corporate Advances | $0.00 |
| Other Fees | $0.00 |
| | $0.00 |

**NET PRINCIPAL CAPITALIZATION (DECREASE)**     $15,951.62

**MODIFICATION TERMS:**

| MODIFIED TERMS: | NEW TERMS: | EXISTING TERMS: |
|---|---|---|
| Principal Balance | $537,951.62 | $522,000.00 |
| | | |
| P&I Payment | $2,465.61 | $3,817.13 |
| Escrow Payment | $561.41 | $0.00 |
| Total Payment | $3,027.02 | $3,817.13 |
| | | |
| Due Date | 05/01/2008 | 03/01/2008 |
| Interest Rate | 5.500% | 8.775% |
| Rate Type | Interest Only | I/O ARM |
| Remaining Term | 345 | 347 |
| | | |
| Maturity Date | 01/01/2037 | 01/01/2037 |
| Interest Only Expiration Date | 05/01/2013 | 02/01/2012 |
| Other _____ | N/A | N/A |

**REPAYMENT PLAN**

| | |
|---|---|
| Begin Date | N/A |
| End Date | N/A |
| P&I Payment | N/A |
| Escrow Payment | N/A |
| Total Payment | N/A |

_____     Date:   04/17/08
Borrower Acknowledgment


_____     Date:   _____
Borrower Acknowledgment