Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Plaintiff, HELEN GALOPE
*On behalf of herself and all others similarly situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN GALOPE, an individual, *on behalf of herself and all others similarly situated*,<br><br>                  Plaintiffs,<br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, et al,<br>               Defendants. | CASE NO. SACV 12 00323-CJC (RNBx)<br><br>Assigned to the Hon: Cormac J. Carney<br><br>**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT; DECLARATION OF WILLIAM MATZ; AND DECLARATION OF HELEN GALOPE**<br><br>[Declaration of Matz and Galope; Request for Judicial Notice; and Statement of Disputed Facts filed concurrently herewith]<br><br>DATE: To be taken under submission<br>TIME: n/a<br>DEPT: 9B |

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*         *SACV12-323-CJC (RNBx)*

TABLE OF CONTENTS

I.      Summary of Argument ..........................................................................................1

II.     Law     ....................................................................................................................2

III.    Legal Argument.....................................................................................................3

        a.  Deutsche Bank Admitted that Some of Its Staff Were Involved in the
            Barclays LIBOR Manipulation Scandal so the Price Fixing Allegation
            Should Remain in the Case......................................................................3

            i.   The Nature of Plaintiff's Injury; that is, This was the type the
                 antitrust laws were intended to forestall .....................................3

            ii.  The Injury is Direct ...................................................................4

            iii. The Nature of the Harm is Not Speculative.................................4

        b.  Deutsche Bank's Participation in Market Manipulation of the LIBOR rate
            index was an Unlawful, Unfair and Fraudulent Business Practice ..........5

        c.  Plaintiff Has Standing to Bring the UCL Claims ....................................9

        d.  The Market Manipulation of the LIBOR rate and Deceptive Manner the
            Contract was Presented Were Misleading Advertisements.....................10

        e.  The Release Violated Public Policy so it is not a Bar to Plaintiff's Claims .............10

        f.  The Creditor or Its Designated Person was Notified of the Bankruptcy
            Stay before the Creditor Transferred the Property Which Resulted in a
            Wrongful Foreclosure ...........................................................................12

        g.  Transferring Property in Violation of 11 USC §362 is an Unlawful
            Business Practice ..................................................................................15

ii

PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

h.  Sandwiching 2 Legal Size Loan Documents between 2 Letter Size Pages in the Same Fax without Warning, Then faxing it to Ms. Galope to Sign was an Unfair and Fraudulent Business Practice ....................................................... 17

i.  The Terms were Not Clear and Conspicuous Because they were Missing ... 18

IV.  Conclusion ........................................................................................ 22

V.  Declaration of Lenore Albert, Esq. ........................................................ 23

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*        *SACV12-323-CJC (RNBx)*

TABLE OF AUTHORITIES

**Cases:**

*Allied Grape Growers v Bronco Wine Co, 203 CalApp3d 432 (1988)* ........................................7

*Anderson v Liberty Lobby, Inc. 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986)*....................2

*Boschma v Home Loan Center, Inc.* 198 CalApp4th 230 (2011) ................................................ 21

*British Airways Board v Boeing Company*, 585 F.2d 936, 951 (9th Cir. 1978)..............................2

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999) .........15

*Chern v Bank of America*, 15 Cal3d 866 (1976)........................................................................10

*City of Santa Barbara v Superior Court* 41 Cal 747 (2007) ...................................................*11*

*D'Amico v Bd of Med Examiners* (1974) 11 Cal 3d 1, 21...........................................................2

*Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499 (1997)..............................................16

*Hick v. Thomas,* 90 Cal. 289 (Cal. 1891) ................................................................................10

*In re Abrams, 127 BR 239 (9th Cir BAP 1991)*.......................................................................*14*

*In re Campion, 294 BR 313 (9th Cir BAP 2003)*......................................................................*13*

*In re  Davis* 177 BR 907, 911-912 (9th Cir BAP 1995) ............................................................15

 *In re Dawson*, 390 F3d 1139, 1149 (9th Cir 2004).................................................................16

*In re Kraus*, 889 F2d 773, 775 (8th Cir 1989)........................................................................16

 *In re Ramirez* 183 BR 583, 589 (9th Cir BAP 1995)..............................................................16

 *In re Wardrobe*, 559 F3d 932, 934 (9th Cir. 2009).................................................................12

*Klein v Earth Elements, Inc.* 59 CalApp4th 965, 969 (1997) ...................................................17

*Kwikset Corp. v Sup. Court,* 51 Cal 4th 310 (2011) Id. at 323...................................................9

*Microsoft Corp. v A-Tech Corp.*, 855 F.Supp. 308, 313 (CD Cal 1994) .......................................8

*Miller v Fenton*, 474 U.S. 104, 114, 106 S.Ct. 445, 451 (1985) ................................................2

*Munger v. Moore* (1970) 11 Cal. App. 3d 1, 7 ........................................................................12

*Northern Pacific Ry v U.S., 356 US 1 (1958)*............................................................................*4*

*Parker v Bain, 68 F.3d 1131, 1138 (9th Cir. 1995)*..................................................................*12*

*Peel v Brooks America Mortg Corp.* 788 F.Supp.2d 1149, 1166 (CD Cal 2011) ........................21

*People v Toomey*, 157 CalApp3d 1 (1985) ................................................................................7

*Price v Wells Fargo* (1989) 213 Cal App 3d 465 ......................................................................3

iv

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                          *SACV12-323-CJC (RNBx)*

*Reese v. Wal-Mart Stores, Inc.,* 73 Cal. App. 4th 1225 (1999) ....................................15

*Resort Car Rental System, Inc v FTC*, 518 F.2d 962, 964 (9th Cir. 1975)..............................10

*Saunders v Sup Ct*, 27 CalApp4th 832 (1994) ............................................19

*Scalf v D.B. Log Homes* (2005) 128 Cal App 4th 510 ...........................................3

*Stationers Corp. v Dun & Bradstreet, Inc.* (1965) 62 Cal 2d 412 ..............................2

*Sternberg v Johnston, 595 F3d 937 (9th Cir 2010)*.........................................15

*Stimson v. Carlson* (1992) <u>11 Cal.App.4th 1201</u>, 1205 [14 Cal.Rptr.2d 670] ............2

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal. 4th 553 (1998) ....................................15

*Summit Tech., Inc. v. High-Line Med. Instruments Co.,* 933 F. Supp. 918 (C.D. Cal. 1966) .....15

*Tunkl v Regents Univ. of Cal*., 60 Cal2d 92 (1963) ............................................. 10, 11

*U.S. v Socony-Vacuum Oil Co. Inc*., 310 US 150 (1940)..........................................3, 4

*Walker v. Countrywide Home Loans, Inc.,* 98 Cal. App. 4th 1158 (2002) ...............................15

*Wallace v Geico General Ins. Co.,* 183 CalApp4th 1390 (2010) ...........................................17

*Washington Mutual Bank v Superior Court*, 75 Cal App4th 773(1999)......................................8

*Wilner v. Sunset Life Ins. Co.,* 78 Cal. App. 4th 952 (2000) ........................................18

*Wilson v. County of San Diego* (2001) 91 Cal.App.4th 974......................................................2

**Statutes:**

Cal. Bus. & Prof. Code § 17200 .................................................15-17

Cal. Bus. & Prof. Code §17500 ...........................................10

Cal. Civ. Code §51 ...............................................................passim

Cal Civ Code §1623 ...........................................................21

Cal Civil Code §1668 .......................................................10-11

Cal. Civ. Code § 2954.4 ...............................................15

Cal. Penal Code § 308 .....................................................passim

Cal. Pub. Res. Code § 4511 .................................................passim

Senate Bill 900............................................................11

**Federal Statutes:**

Commodity Exchange Act Sections 6(c), 6(d) and 9(a)(2).....................................6, 25

12 CFR §226.................................................................18

12 CFR §226.31..............................................................18

v

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

7 USC §9 .................................................................................................. 6, 8

7 USC§13 ................................................................................................. 6, 8

11 USC §342 ................................................................................................. 12

11 USC §362 .............................................................................. 12, 13, 15, 17

15 USC §1 ............................................................................................. passim

15 USC §2 ............................................................................................. passim

15 USC §4 ............................................................................................. passim

**Secondary Authority:**

4 Witkin, Sum. Of Cal. Law (10th ed. 2005) .......................................... 12

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Summary of Argument

This is a partial summary judgment motion. Moving Defendants, WPT, Ocwen and DBNTC has summarized the plaintiffs' complaint by essentially stating that the plaintiffs have filed a frivolous complaint and engaged in a myriad of legal maneuvers designed to delay the "inevitable foreclosure" on their home. Defendant further surmises without any support, that plaintiff "waived her right to sue defendants with respect to her unlawful, unfair, or fraudulent acts claims" because Galope signed a document that contained a release. Defendant implies plaintiff is attempting to ignore her contractual obligations and she, like all borrowers not employed by banks, are abusing the court system by filing for bankruptcy protection or suing for legal redress when they question the lawfulness of the bank's actions. Accordingly, defendant argues that they are entitled to judgment as a matter of law. Defendant has failed however, to set forth, or address the allegations that support plaintiffs' claims and defendant's narrowly tailored declarations fail to defeat plaintiff's assertions that defendants and each of them, have violated laws in attempting to foreclose on plaintiffs' property.

Plaintiffs have filed a 31 page 99 paragraph complaint outlining the various acts engaged in by defendants, and four causes of action arising out of those acts surrounding a LIBOR interest only loan made to Helen Galope and the fraudulent presentation of a modification by HomeEq that failed to inform the borrower all material terms of the modified loan.

On June 27, 2012 the CFTC imposed the largest civil penalty ever against Barclays (d/b/a HomeEq) for unlawfully manipulating the LIBOR market rate during the time Galope was given her loan based on LIBOR and modification thereon. Barclays was fined $454 million dollars for its conduct of market manipulation.

Defendants have not answered the Third Amended Complaint, yet Defendants improvidently request that the court now find judgment in their favor as a matter of law which is improper and contradicted by the evidence submitted.

**1**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

1

## II.  Law

2  Summary judgment is a drastic remedy and therefore should be granted cautiously.  "Neither do

3  we suggest that the trial courts should act other than with caution in granting summary judgment…"

4  *Anderson v Liberty Lobby, Inc*. 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986)

5  The "burden of establishing that there is no genuine issue of material fact lies initially with the

6  moving party and resolution of all doubt should be in favor of the party opposing the motion." *British*

7  *Airways Board v Boeing Company*, 585 F.2d 936, 951 (9th Cir. 1978)

8  "Ultimate facts" may be decided by the court on summary judgment only so long as the

9  underlying facts are undisputed. Where "the issue falls somewhere between a pristine legal standard and

10  a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter

11  of the sound administration of justice, one judicial actor is better positioned than another to decide the

12  issues in question." *Miller v Fenton*, 474 U.S. 104, 114, 106 S.Ct. 445, 451 (1985).

13

14  Although federal procedure and California state procedure do differ, they share in common the

15  following legal concepts when ruling upon a motion for summary judgment.

16  All reasonable inferences from the facts, must be construed *in the light most favorable* to the

17  non-moving party.

18  "The aim of the [summary judgment] procedure is to discover, through the media of affidavits,

19  whether the parties possess evidence requiring the weighing procedures of a trial." *Stationers Corp. v*

20  *Dun & Bradstreet, Inc.* (1965) 62 Cal 2d 412, 417.

21  The court must "strictly construe the moving party's papers and liberally construe those of the

22  opposing party to determine if they raise a triable issue of material fact." (*Stimson v. Carlson* (1992) 11

23  Cal.App.4th 1201, 1205 [14 Cal.Rptr.2d 670].) *Wilson v. County of San Diego* (2001) 91 Cal.App.4th

24  974, 979.

25  "When a defendant can establish his defense with the plaintiff's admissions sufficient to pass the

26  strict construction test imposed on the moving party…, the credibility of the admissions are valued so

27  highly that the controverting affidavits may be disregarded." *D'Amico v Bd of Med Examiners* (1974)

28

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

11 Cal 3d 1, 21-22.  But, this principle, "[p]roperly applied, [] is limited to instances where "credible [discovery] admissions… [are] contradicted *only* by self-serving declarations of a party." *Price v Wells Fargo* (1989) 213 Cal App 3d 465, 482.  *Followed and cited with approval in Scalf v D.B. Log Homes* (2005) 128 Cal App 4th 510. [emphasis added]

### III. Legal Argument

**a)** <u>**Deutsche Bank Admitted that Some of its Staff Were Involved in the Barclays LIBOR Manipulation Scandal so the Price Fixing Allegation Should Remain in the Case**</u>

Defendant contends that there is no proof Deutsche Bank was involved in the LIBOR manipulation scandal, and on those grounds the allegations of price fixing as a violation of the Sherman Antitrust Act should be summarily dismissed.

However, on August 31, 2012 Deutsche Bank issued a letter which admitted that some of its staff was in fact involved in the LIBOR manipulation scandal.

Galope is alleging price fixing by Deutsche Bank, Barclays and others.  Galope's case is one of price fixing based on LIBOR manipulation which has already been admitted to by Barclays and by Deutsche Bank.  Such agreements are considered illegal, per se. *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150 (1940).

It is undisputed that Galope borrowed money on the financing of her home from Barclays and she received an Interest Only LIBOR Adjustable Rate loan that extended out 30 years. Defendant's interpretation of the meaning behind the contract is a disputable fact, and one where defendants failed to put forth any expert evidence on the issue.

1. <u>The Nature of Plaintiff's Injury; that is, This was the type the antitrust laws were intended to forestall</u>

Galope is alleging price fixing by Deutsche Bank, Barclays and others.  Galope's case is one of price fixing based on LIBOR manipulation which has already been admitted to by Barclays and by Deutsche Bank.  Such agreements are considered illegal, per se. *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150 (1940).

**3**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

This is exactly the type of injury the antitrust laws were enacted to forestall.

Agreements to fix prices in interstate commerce are unlawful *per se* under the Sherman Act, and no showing of so-called competitive abuses or evils which the agreements were designed to eliminate or alleviate may be interposed as a defense. *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150, 210, 218 (1940).

2. The Injury is Direct

Defendants contend that Galope was not injured by the price fixing.  In fact, they speculate that it would have only helped Galope because it would have lowered how much she owed because the rate was depressed.  Agreements to fix prices in interstate commerce are unlawful *per se* under the Sherman Act, and no showing of so-called competitive abuses or evils which the agreements were designed to eliminate or alleviate may be interposed as a defense. *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150, 210, 218 (1940).

3. The Nature of the Harm is not Speculative

Such agreements have been "conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use" because of "their pernicious effect on competition and lack of any redeeming virtue." *Northern Pacific Ry. v. U.S.*, 356 US 1, 5 (1958).

Both Ms. Galope and expert witness William Matz have supplied declarations that Ms. Galope and those similarly situated would not borrow money from an entity that could fix the interest rate at which the borrower was required to pay in the future.

Defendants contend that there was no harm because Ms. Galope was paying 8.775% interest on her loan at the time the LIBOR manipulation was occurring through to 2009. Defendant's argument assumes that the 8.775% fixed interest only rate assigned to Ms. Galope's LIBOR Rate loan by Barclays was reasonable.  As explained by the US Supreme Court in *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150 (1940),  "[r]uinous competition, financial disaster, evils of price-cutting, and the like appear throughout our history as ostensible justifications for price-fixing. If the so-called competitive

**4**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

abuses were to be appraised here, the reasonableness of prices would necessarily become an issue in every price-fixing case. In that event, the Sherman Act would soon be emasculated; its philosophy would be supplanted by one which is wholly alien to a system of free competition; it would not be the charter of freedom which its framers intended." *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150, 222(1940).

While the issue is still very new and more discovery into this area is needed, there is enough evidence in comparison to defendant's evidence to defeat a motion for summary judgment at this stage, or at least warrant the issue being denied for the time being until more discovery can be made into this area.

**b) <u>Deutsche Bank's Participation in Market Manipulation of the LIBOR rate index was an Unlawful, Unfair and Fraudulent Business Practice</u>**

Plaintiff incorporates the points and authorities above in this section.

Two days after Barclays furnished the entire agreement to Galope and this Court, on or about **<u>June 27, 2012</u>** Barclays PLC, Barclays Bank PLC and Barclays Capital Inc. settled with the Commodities Futures Trading Commission ("CFTC") and the US Dept. of Justice for manipulating the LIBOR rates from 2005 through 2009 for $453 million dollars. (RJN)

An examination of the Exhibits to defendant's MSJ reveals: Galope received an Interest Only Adjustable Rate Mortgage based on LIBOR on December 15, 2006. The interest rate was based on 6 month LIBOR that changed every 2 years. Galope was being charged 8.8775% as Interest Only. Barclay's was making loans based on an index that it and its co-conspirators knew they were manipulating. (RJN)

As such, Galope's loan and monthly obligations were not based on an independent index.  The depositor's administrator, Barclays, who was also the servicer and Swap trader of her loan was manipulating the price she had to pay on her monthly obligations by fixing the interest rate.

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*               *SACV12-323-CJC (RNBx)*

No one would knowingly enter into a loan in which they knew the lender could manipulate the rate. (Decl of Matz, Decl of Galope)  The fact that the actual rate may have gone down or up is irrelevant; what matters is that the rate was not independently determined.

There were 5,072 loans placed in this trust. LIBOR loans are identified 3,232 times in the Free Writing Prospectus "FWP." (RJN).

The CFTC found that Barclays manipulated the LIBOR and as a result violated Sections 6(c), 6(d) and 9(a)(2) of the Commodity Exchange Act, 7 USC §§ 9, 13b and 12(a)(2).

7 USC §9 prohibits manipulation of the market.

Unlawful manipulation for purposes of this paragraph shall include, but not be limited to, delivering, or causing to be delivered for transmission through the mails or interstate commerce, by any means of communication whatsoever, a false or misleading or inaccurate report concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce, knowing, or acting in reckless disregard of the fact that such report is false, misleading or inaccurate. 7 USC §9(a)(1)

7 USC §13b makes such conduct a felony:

It shall be a felony punishable by a fine of not more than $1,000,000 or imprisonment for not more than 10 years, or both, together with the costs of prosecution, for: (a)…
**2)**Any person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or of any swap, or to corner or attempt to corner any such commodity or knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning crop or market information... 7 USC §13(a)(2).

Barclays repeatedly attempted to manipulate the market and made false, misleading or knowingly inaccurate submissions concerning LIBOR.

"From at least mid-2005 through the fall of 2007, and sporadically thereafter into 2009, Barclays, through the acts of its swaps traders and submitters, attempted to manipulate US Dollar LIBOR.." (RJN Ex 7 pg 7-8)

**6**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

"The swap traders made the requests in person, via email, and through electronic "chats" over an instant messaging system." (RJN Ex 7 pg 8)

The swap traders, included internal swap traders and they requested that the LIBOR be placed higher or lower depending on their position.

Deutsche Bank has admitted that some of its staff was involved in this market manipulation. (RJN Ex 13-16) A defendant need not know that the conduct was unlawful, but the defendant who has knowledge of the conduct and assists by aiding and abetting can be held liable, such as individual corporate officers or majority stockholders. *People v Toomey*, 157 CalApp3d 1 (1985).

There were messages fixing the LIBOR rate during the time period Galope received her loan as demonstrated by the US DOJ's office. (RJN).

This is akin to the case of Allied Grape Growers v Bronco Wine Co, 203 CalApp3d 432 (1988) wherein defendant's practice of downgrading grapes which occurred over a one-month time period was a "practice" even though it was done with respect to a single contract, since the contract was with a cooperative having many members.

Here, Galope's initial interest rate based on the Fixed LIBOR rate only affected Galope's contract. However, there were thousands of other borrowers during this time period in her same MBS Trust that were also having their loans fixed by a manipulated LIBOR market rate. Due to the rates being fixed on a substantial group of borrower's loans in the trust, each borrower in that trust was affected. Even the non LIBOR borrowers were affected to the extent that Barclays could then call in the Swap in 2008-2009 time period.

Defendant urges the court to find that there was no damage as a result of the market manipulation. However, the sanctions are fairly fresh and discovery is still continuing in this area and as such a grant of summary judgment without the ability to fully discover these new facts would be imprudent.

In order to prove a UCL claim is unlawful, plaintiff must allege (1) the law that is being borrowed and (2) some level of specificity or particularity of the facts supporting the violation.

**7**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*         *SACV12-323-CJC (RNBx)*

*Microsoft Corp. v A-Tech Corp.*, 855 F.Supp. 308, 313 (CD Cal 1994).  However, the absence of a private cause of action conferred in a federal law being 'borrowed' as a violation is not a barrier to state a UCL claim. *Washington Mutual Bank  v Superior Court*, 75 Cal App4th 773, 783 (1999).

Here, we have violations of 7 USC §§ 9, 13b and 12(a)(2) by Barclays LIBOR rate manipulation in the market that directly affected Ms. Galope and those similarly situated because their loans were based on the LIBOR rate.

Barclays Bank PLC was the "administrator of the sponsor" for the MBS trust. (RJN Ex 10 pg s-7)

Barclays Bank PLC was the owners of the wholly-owned subsidiary who was the depositor of the MBS trust. (RJN Ex 10 pg s-7)

Barclays Capital Real Estate Inc. d/b/a HomEq Servicing was the Servicer of the MBS trust (RJN Ex 10   pg   s-7).

Deutsche Bank National Trust Company was the trustee of the MBS Trust (RJN Ex 10 pg s-8)

Barclays Bank PLC was the "Swap and Cap Provider" for the MBS Trust (RJN Ex 10 pg s-8).

The manipulation of the LIBOR rates for the Swap traders profit on their positions as outlined in the text messages and emails by the US DOJ are admissions against interest to support plaintiff's claim of unlawful, unfair, and fraudulent conduct with regard to this trust in this lawsuit.

This MBS trust stopped reporting in 2008 during the time period that these manipulations were occurring showing a strong direct tie between the manipulation of plaintiff's monthly interest rate obligations and the profits made by the Swap agreement in place in the MBS trust. (RJN)

Ms. Galope would have walked away from this loan if she had known that the interest rates she would have been forced to pay were based on manipulation and not independent market factors. (Decl of Galope)

The modification agreement, initially was represented by the Defendants to be based on these same LIBOR figures. Then on June 25, 2012, a day before Barclays settled with the CFTC, USDOJ and

**8**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

others, Defendants came into this court asserting the modification agreement was based on a change in the monthly payment not the interest rate.

Discovery needs to be conducted to determine all of the potential injury this market manipulation caused.

There is no explanation of how a monthly payment change could not be quantified past 2013 in compliance with Regulation Z if the interest rate remained constant. Since there is no explanation of what a borrower is supposed to expect over the remaining 14 to 15 years of the life of that LIBOR loan, even if the change was based on the payment, it still failed to comply with Regulation Z of the Truth In Lending Act.

Between the TILA violations of nondisclosure and the CEA violations of market manipulation, other consumers similarly situated to Ms. Galope may not become aware of the fraud until 2013 or later.

   c)   **Plaintiff Has Standing to Bring the UCL Claims:**

Injury in fact to have standing to bring this claim was outlined in *Kwikset Corp. v Sup. Court*, 51 Cal 4th 310 (2011) where the California Supreme Court reaffirmed "economic injury from unfair competition may be shown: A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." Id. at 323.

Here, defendants were price fixing which is a violation of Antitrust law. Ms. Galope acquired less in her loan transaction with Deutsche Bank and Barclays as a result. She was their customer – the borrower on the Barclays loan that was based on the LIBOR rate. The entire market that created the rate for the interest only payments being paid by the borrowers like Galope was manipulated by these defendants.

Consequently, standing and injury in fact exist in this case.

**9**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

**d) The Market Manipulation of the LIBOR rate and Deceptive Manner the Contract Was Presented Were Misleading Advertisements**

The rule is that advertising that can be interpreted in a misleading way should be construed against the advertiser. *Resort Car Rental System, Inc v FTC*, 518  F.2d  962, 964 (9th Cir. 1975).

Advertising includes a bank's misquote of interest rates over the telephone to a potential borrower. It does not have to be put in the public media. *Chern v Bank of America*, 15 Cal3d 866, 870 (1976).

The complaint alleges defendant misquoted the terms of the modified loan over the telephone to plaintiff.  The phone conversations coupled with the attachment to the modification document that was faxed and appeared to have a page missing was misleading.  This conduct was potentially deceptive to the borrowers who were the audience that these representations were aimed at. Statute of frauds is not required to be met on a §17500 claim.

It has also been discovered that Barclays manipulated the LIBOR rate and published it in the Wall Street Journal and was used on the borrower's loans to determine how much they owed.

Consequently, plaintiff can and did allege a claim for violation under section 17500 of the UCL.

**e)  <u>The Release Violated Public Policy so it is not a Bar to Plaintiff's Claims.</u>**

Whether or not a release would waive a certain claim, is an affirmative defense. A motion for summary judgment is based on the pleadings. In this case, there is no answer and as such, a motion for summary judgment based on the affirmative defense of waiver due to a release is premature.

Even if an Answer was on file, this defense is void against public policy and will not be enforceable. *Hick v. Thomas,* 90 Cal. 289 (Cal. 1891), *See also, Tunkl v Regents Univ. of Cal*., 60 Cal2d 92 (1963).

Releases for intentional conduct such as fraud are void and  have been for a very long time as codified in Cal Civ Code §1668.

As the California Supreme Court explained:

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

"The traditional skepticism concerning agreements designed to release liability for future torts, reflected in *Gardner, supra*, 180 Cal.App.3d 713, and many other cases, long has been expressed in Civil Code section 1668 (hereafter cited as section 1668), which (unchanged since its adoption in 1872) provides: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his [or her] **own fraud**, or willful injury to the person or property of another, **or violation of law**, whether willful or negligent, **are against the policy of the law**." *City of Santa Barbara v Superior Court* 41 Cal 747 (2007). *See also, Tunkl v Regents Univ. of Cal*., 60 Cal2d 92 (1963). [emphasis added]

Defendant manipulated the LIBOR rate for financial gain in violation of a myriad of laws making such conduct fraudulent. Defendant also faxed over 2 legal size pages as part of the modification agreement to plaintiff so the bottom of the pages containing material terms about repayment were cut off when the fax transmission was received on letter size paper which was also unfair and fraudulent.

None of these actions can be released by agreement. These are acts of fraud.

Defendants also argue the Adversary Proceeding prohibits this action cannot go forward. However, the Adversary Proceeding was dismissed without prejudice and not due to the merits of any claim. As such, this cannot form a basis for the type of relief defendants now seek in this case.

Moreover, such a result would be inconsistent with the public policy of California.  On July 11, 2012 the Governor signed into law, Senate Bill 900 captioned the California Homeowner's Bill of Rights.

*The people of the State of California do enact as follows:*

SECTION 1. The Legislature finds and declares all of the following:

(a) California is still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California, and the current wave of foreclosures continues apace. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services. In addition, according to the

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. And the foreclosure crisis is not over; there remain more than two million "underwater" mortgages in California.

(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. *Id.*

f) **The Creditor or Its Designated Person was Notified of the Bankruptcy Stay before the Creditor Transferred the Property Which Resulted in a Wrongful Foreclosure**

The elements of a common-law cause of action for damages for wrongful foreclosure are: (1) Trustee or mortgagee caused an illegal, fraudulent or willfully oppressive sale of real property; (2) pursuant to a power of sale contained in a mortgage or deed of trust; and (3) the Trustor or mortgagor sustained damages. (*Munger v. Moore* (1970) 11 Cal. App. 3d 1, 7; see 4 Witkin, Sum. Of Cal. Law (10th ed. 2005) Secured Transactions in Real Property, §168.)

On August 30, 2011 the US Bankruptcy Court notified Ocwen Loan Servicing, LLC that an automatic stay was initiated, prohibiting the transfer of Ms. Galope's property outside of the bankruptcy estate. Nevertheless, Ocwen Loan Servicing, LLC, through its authorized agent, Western Progressive, transferred Ms. Galope's property in violation of 11 USC §362 on September 1, 2011.

Any act taken in violation of an automatic stay in bankruptcy (11 USC §362) is void. *Parker v. Bain*, 68 F.3d 1131, 1138 (9th Cir. 1995). See also, *In re Wardrobe*, 559 F3d 932, 934 (9th Cir. 2009).

Consequently, the transfer of Galope's property on September 1, 2011 was an illegal sale.

Second, the transfer was made by a nonjudicial foreclosure that was initiated pursuant to a power of sale provision in Ms. Galope's deed of trust.

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Third, Ms. Galope sustained damages as a result. She was deprived of title to her property for months; and incurred costs and attorney fees in order to regain title to the property.

To support her claim, plaintiff has Defendant's requesting notice of any such orders from the Court (7/28/11), the Court giving notice of the Order to Defendant (Tues. 8/30/11), and the transfer as memorialized in the Trustee's Deed Upon Sale (Thurs. 9/01/11). To support damages plaintiff has her own declaration, declaration of counsel, the events in this Case, and the Rescission (occurring in March 2012). (RJN) The deed of trust and trustee's deed upon sale speak for itself with regard to the initiation by way of the power of sale clause.

The rule is that the "creditor" or their designated person or subdivision must have notice of the stay prior to the transfer. 11 USC §342(g)(1). Defendants merely provided a narrowly tailored, self-serving declaration stating that Galope did not notify Western Progressive of the stay prior to the transfer.  Western Progressive was not the "creditor" and as such Galope was not under a separate duty to inform Western Progressive of the stay. Ocwen stepped in and requested notification on behalf of the creditor.  It is undisputed that Ocwen received notice of the stay on August 30, 2011 so, defendant's declaration is irrelevant.

"Once a creditor [or their designated representative] knows that the automatic stay exists, the creditor bears the risk of all intentional acts that violate the automatic stay regardless of whether the creditor means to violate the automatic stay." *In re Campion* 294 BR 313, 318 (9th Cir BAP 2003).

Defendant Ocwen Loan Servicing, LLC's attorney, Les Zieve, filed a REQUEST FOR COURTESY NOTICE OF ELECTRONIC FILING on July 28, 2011 in the Galope bankruptcy matter. (RJN Ex 12).

That notice clearly stated:

I further understand this request DOES NOT impose any obligation on the Court, the debtors or any other party in the case to deliver courtesy copies of any orders, pleadings, or other documents entered on the docket by mail, telephone, facsimile, or any other means of electronic transmission.

**13**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Thereafter, the case was dismissed and plaintiff filed a motion to vacate the dismissal on August 23, 2011. Ocwen Loan Servicing, LLC received notice that plaintiff was attempting to vacate the dismissal and reinstate the stay on August 23, 2011 – which was eight days before the transfer occurred.

At that time, defendants were on notice of this motion and did not know whether or not the court would rule that the stay remained in place during the time of the dismissal or not.

Additionally, Ocwen Loan Servicing, LLC received the US Bankruptcy Court's Order vacating the dismissal which was entered on PACER on August 30, 2011 and service was made by the Court. Consequently, the defendants had notice of the stay by ECF on 8/30/11, which was two days before transferring the property in September.

After the transfer occurred, Helen Galope immediately notified the defendants of the illegal transfer but they refused to rescind the sale.  Defendants wrongfully retained the title to the property for months.  On October 14, 2011 Les Zieve filed an objection on behalf of defendant Deutsche Bank National Trust Company to the Chapter 13 plan, as such, defendants knew the stay was in effect, knew they were still in possession of the title to the property that was not supposed to be transferred out of the estate and were objecting to the plan based on lack Plan payments.  Yet, Deutcshe Bank did not ensure that title was restored to plaintiff.

Creditors are deemed to have willfully violated the stay when they were unaware of the stay if they refuse to rescind the sale after being notified of the bankruptcy stay. *In re Abrams*, 127 BR 239, 240-244 (9th Cir BAP 1991).

The defendants did not rescind the sale until this action was commenced and plaintiff filed a TRO application with the Court.  These events, taken in their totality, demonstrate a willful retention of the property in violation of the stay warranting punitive damages.  As such, plaintiff was forced to incur costs and attorney fees in order to remedy the violation, causing her damage.

11 USC §362(k) allows for damages, attorney's fees and punitive damages for taking the property in violation of the stay in addition to rescinding the sale. As such, there is nothing moot about

**14**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

this claim. Damages are mandatory. The statute states that the court "shall" award "actual damages" including costs and attorney fees and "the court may award punitive damages." 11 USC §362(k).

Types of damages include costs and attorney fees in enforcing the automatic stay and remedying the stay violation. Furthermore, emotional damages due to the violation are also appropriately awarded. *Sternberg v Johnston*, 595 F.3d 937, 943 and 946-948 (9th Cir. 2010)

Galope declared she incurred expenses and attorney fees in remedying the stay violation which defendants do not refute. Because Galope has not been compensated for her damages yet, her claim is not "moot." *In re  Davis* 177 BR 907, 911-912 (9th Cir BAP 1995).

**g)  Transferring Property in Violation of 11 USC §362 is an Unlawful Business Practice**

Points and Authorities in section A above, are fully incorporated herein.

It is unlawful to transfer property while there is a bankruptcy stay prohibiting any transfers. 11 USC §362.  Defendants violated 11 USC §362 by transferring plaintiff's property while the automatic stay under 11 USC §362 was in place.

California's unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Cal. Bus. & Prof. Code § 17200.) And under this law, a practice can be prohibited as unfair or deceptive even if not *unlawful*, and vice versa. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999).)

An *unlawful* business practice can be "anything that can properly be called a business practice and that at the same time is forbidden by law." (*Summit Tech., Inc. v. High-Line Med. Instruments Co.,* 933 F. Supp. 918 (C.D. Cal. 1966)

This prong of the unfair competition law allows a plaintiff to enforce a broad array of state and federal statutes, including consumer-protection statutes (*Walker v. Countrywide Home Loans, Inc.,* 98 Cal. App. 4th 1158 (2002) (Cal. Civ. Code § 2954.4); antidiscrimination statutes (*Reese v. Wal-Mart Stores, Inc.,* 73 Cal. App. 4th 1225 (1999), (Unruh Civil Rights Act, Cal. Civ. Code §§ 51-51.4)); criminal statutes (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal. 4th 553 (1998), (Cal. Penal

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

Code § 308); and environmental statutes (*Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499 (1997), (Cal. Pub. Res. Code § 4511).)

As stated above, Defendants very narrowly declare that "WPT" did not receive a notice of the stay from "Ms. Galope" prior to September 1, 2011 when her property was transferred to defendant DBNTC by credit bid. That fact is not material to the outcome because "WPT" was not the creditor or the creditor's designated person, Ocwen was.  Ocwen stepped in for the creditor, requesting Notice. **The Court gave Ocwen notice** with regard to the Automatic Stay on **Tuesday August 30, 2011** which defendant's attorney received through the ECF system. (RJN)   Yet, defendant still took the home on two days later on **Thursday September 1, 2011** by way of a Trustee's Deed Upon Sale. (TDUS date)

Case law is clear that defendants only needed notice of the petition and it does not even have to be formal. *In re Kraus*, 889 F2d 773, 775 (8th Cir 1989) creditor's failure to return property after bankruptcy notice and demand from debtor constituted willful violation of stay.

Furthermore, they were given notice by plaintiff's counsel and a demand to rescind the sale in September 2011. Yet, it took the defendants nine month (9 months) and a lawsuit costing Galope attorney fees and other expenses to get the defendants to rescind the sale after they were aware of the stay that they violated. (TDUS Rescission date)

Violations of existing TRO orders are akin to automatic stays and are actionable claims under the UCL. Defendants claim that the cause is now moot. Case law is contrary. In *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499 (1997), the plaintiffs complaint alleged the defendants violated Cal Business & Professions Code §17200 by cutting down trees in violation of an existing TRO.  The court noted that had the defendants waited just a short time, it could have lawfully cut the trees down. However, since it did not wait, a viable claim for violating Cal Business & Professions Code §17200 was made.

Actual damage are mandatory. *In re Ramirez* 183 BR 583, 589 (9th Cir BAP 1995).

Damages include attorney fees, costs and emotional distress. *In re Dawson*, 390 F3d 1139, 1149 (9th Cir 2004). Here, it is uncontroverted that Ms. Galope was placed in distress over the transfer for

**16**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

nine months – that duration of distress warrants substantial emotional distress damages. (Decl of Galope)

The UCL statute was amended in 1992 to include past, one-time acts as a prohibited business practice. *Klein v Earth Elements, Inc*. 59 CalApp4th 965, 969 (1997) As such, the past one-time conduct such as the September 1, 2011 transfer of plaintiff's property in violation of the stay is actionable conduct.

Defendant also contends that there is no injury. However, the defendant deprived plaintiff of rightful title to the property for months and plaintiff incurred distress, attorney fees and costs in order to get the transfer rescinded. As such, there is injury and plaintiff has standing to sue under Cal Bus & Prof Code §17200.

Third, Defendant cannot moot the claim and pick off the plaintiff by what would amount to an involuntary settlement. *See, Wallace v Geico General Ins. Co.,* 183 CalApp4th 1390 (2010). 11 USC §362 specifically provides that a defendant who transfers property during a bankruptcy stay, must pay for all damages caused, including attorney fees, costs and even punitive damages if warranted.

Punitive damages are warranted here because it took nine months (9 months) to get the sale rescinded. Even if the court were to accept it was a mistake on September 1, 2011 to make the transfer, it was willful and knowing conduct to keep the property until such time the plaintiff procured the funds to file a federal action and retain counsel to obtain judicial relief in that regard – in this case nine months (9 months) later.

**h)** **Sandwiching 2 Legal Size Loan Documents between 2 Letter Size Loan Documents in the Same Fax without Warning then faxing it to Ms. Galope to Sign was A Unfair and Fraudulent Business Practice.**

Plaintiff incorporates the points and authorities above in this section.

A plaintiff's allegations that a defendant used incomplete and misleading illustrations to sell universal life insurance policies may be actionable under the unfair competition law absent any claim

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

that such conduct violated any regulation or statute. (*Wilner v. Sunset Life Ins. Co.,* 78 Cal. App. 4th 952 (2000).)

Like *Wilner*, Defendants conduct of *faxing* a legal size document that contained material terms without warning that the fax needed to be printed on legal size paper in order to see all of the terms was unlawful, unfair and fraudulent.

A genuine issue of material fact exists when looking at the two versions of the modification – the one presented by defendants and the one presented by the plaintiff.

Here, defendants finally turned over their version of the modification. The pages where the terms of repayment were located at the bottom were cut off below the standard page size. The entire package faxed to Ms. Galope included a cover letter on letter size paper, the document placed on legal size paper and then the last page of the document on letter size paper.

Because, there was no warning that any of the papers were legal size and the signature line remained on the second page, there was no reason for Galope to know that the document could not be printed on standard letter size paper. Defendants did not shrink down the document before faxing it to Galope, as it did for this Court in support of the motion. As such the payments terms were cut off because they were contained in the bottom 3 inches of the page.

1.   The Terms Were not Clear and Conspicuous because they were Missing

Regulation Z promulgated by the Federal Reserve Board under the Truth in Lending Act (12 CFR §226 et seq) required defendants to give plaintiff these material terms. Their practice of faxing these documents to borrowers like Galope resulted in a violation of that regulation because they received the documents without the terms.

**Subpart E—Special Rules for Certain Home Mortgage Transactions**

**§ 226.31 General rules.**

(b) *Form of disclosures.* The creditor shall make the disclosures required by this subpart **clearly and conspicuously in writing, in a form that the consumer may keep.** The disclosures required by this subpart may be provided to the consumer in electronic form, subject to compliance with the consumer consent

**18**

PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

and other applicable provisions of the

The terms of the loan after April 2013 were not "clear" or "conspicuous" or in a "form that the consumer may keep" because the defendant took the loan documents that were on legal size paper and sandwiched them in between two letter size documents, and then faxed them to Galope. The terms after April 2013 were completely cut off from the fax in violation of 12 CFR §226.31.

Defendant did not offer any expert testimony to prove that this was not a violation, consequently summary judgment should not be granted. (*Saunders v Sup Ct*, 27 CalApp4th 832 (1994) expert testimony can be used to prove whether a statute is violated).

The payment plan seems to be jumping around and morphing during the process of this action. First, the defendants represented on March 26, 2012 as Document No. 16 in this Case (Galope v DBNTC Case No. 12-cv-00323) "Based on these express terms [of the modified loan], *the interest rate would change on April 1, 2013 pursuant to the provisions of the Adjustable Rate Rider*, an addendum to the original Deed of Trust." (RJN 1 at pg 8).

During the last round of summary judgment motions, Defendant proffered a self-serving narrowly tailored declaration that the interest rate did not change in 2013 but the monthly payment changed at that time. There is no explanation as to how the monthly payment will change or what amount Ms. Galope should expect to pay.

Karen L. Stacy, a Barclay's paralegal, filed a declaration contradicting defendant's earlier representations to this court that the modified loan reverted to the original terms and she provides a shrunken version of the modification that was apparently written on "legal-size" paper wherein the modification states that the "*payments*" would change.

Hopscotching from a change in the interest rate to a change in the monthly payment, makes little difference to the borrower whose main concern is what the monthly obligation will be.

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

The important material fact here is that defendant faxed over a document that they knew did not spell out what the terms of the monthly loan amount would be after 2013.  Moreover, those terms were placed within the last few inches at the bottom of the document that was typed on legal-sized paper so putting the fax on letter size paper like Galope did, omitted the terms altogether.

Barclays knew or had reason to know Galope only received the portions of the documents that could be printed out on a letter size page.

Barclays does not refute that they received only Galope's letter size partially cut off modification document signed by Helen Galope.  Barclays also does not refute that Helen Galope repeatedly attempted to get the rest of the terms from Taheera Franklin, without result. Barclays does not even refute that they faxed over a legal size document without also mailing it or placing a warning that it was a document printed on legal-size paper.

What Barclays did was unfair and fraudulent. A legal size document is  8 ½" by 14" long.  A letter size document is 8 1/2" by 11" long. As a result, there were over three inches of modification terms missing from Ms. Galope's document.

With material missing information from Ms. Galope's document, there was no meeting of the minds as to what Ms. Galope was signing. In fact, she had no idea nor could she know what she was signing – making a defense of fraud in the execution.

Barclays knowingly faxed over the document that was typed on legal-size paper without warning Galope and others that the document was on legal-size paper and that in order to see all of the terms they had to receive the fax and print it out on legal-size paper.

Barclays signature line for Galope and others was within the letter-size portion of the document so as not to warn Galope that there was a bottom portion missing to the document. The worksheet on the back page and the cover letter were both letter size documents so there was no indicia of a document, page-size-differential, between the modification document's first two pages that were sandwiched in between the fax that Galope received.

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

Barclays never returned their signed version of the document to Galope so that she could see the missing terms on the bottom of the page. Galope had no reason to believe that Barclays even had a signature line which would have alerted her to the fact that she should even receive a completed signed document in the mail because that signature line was also within the last three inches of the legal sized document faxed over.

Furthermore, Barclays kept the modification terms hidden for over three years, from the Court and Galope.

Barclays filed for several motions for relief from stay attaching the Note to the Declaration but never the Modified version of the Note although it was their obligation and duty to prove up the amount owed in their motion before the US Bankruptcy court.

Barclays went so far as to refuse sending her another copy of the document by mail when she called to question the missing terms.

In *Peel v Brooks America Mortg Corp*. 788 F.Supp.2d 1149, 1166 (CD Cal 2011) the court found that a lender who put in a teaser rate on a mortgage loan which resulted in a negative amortization stated an unfair business practice.

In *Boschma v Home Loan Center, Inc*. 198 CalApp4th 230, 253 (2011) the court found that presenting a lawful contract in a deceptive manner is a fraudulent business practice under UCL. Here, the evidence supports a showing that the contract was presented to Galope in a deceptive manner. The facts in this case is a mixture of both *Peel* and *Boschma*.

Cal Civ Code §1623 fits in this scenario for fraudulent inducement in the execution of this modification document in order to avoid the Statute of Frauds defense.

It was not until **June 25, 2012** that Barclays furnished their version of the modification of Galope's LIBOR IO ARM loan by filing it in support of their motion.

It appears that there was no missing fax page, the document was complete with all terms, making the document and manner it was provided to the borrower an unlawful, unfair, and fraudulent business practice.

21

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV CONCLUSION**

Wherefore plaintiff respectfully request that this court deny plaintiff's motion for summary judgment.

Dated:  August 13, 2012               Respectfully Submitted,
                                       LAW OFFICES OF LENORE ALBERT


                                       /s/ Lenore Albert_____
                                       LENORE L. ALBERT, ESQ.
                                       Attorney for Plaintiff Helen Galope, *and all others*
                                       *similarly situated*

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                *SACV12-323-CJC (RNBx)*

### DECLARATION OF LENORE ALBERT, ESQ.

I, Lenore Albert, Esq. am the attorney of record for the plaintiffs in the above captioned action and am licensed to practice before all courts in the State of California and before the United States District Court for the Central District of California, the Ninth Circuit, and the Supreme Court of the United States of America.  If called as a witness I would and could competently testify as follows:

1.      I sent a letter in September 2011 notifying the defendants of the sale of Galope's property in violation of the Stay and demanded rescission of the sale.

2.      Defendants did not respond to my request.

3.      I then referred her to bankruptcy attorney Jacob Chang.

4.      There are eleven tables contained in the FWP (Free Writing Prospectus) that contains the identity of each loan transferred to this trust.

5.      When performing a word search for the term "LIBOR" it shows up 3,232 times in the FWP.

6.      Harvey Pitt called the Settlement and revelation of the market manipulation the "Proverbial tip of the iceberg."

7.      Attached hereto and fully incorporated herein as Exhibit A is the deposition of William Matz in support of Helen Galope's Opposition.

8.      Attached hereto and fully incorporated herein as Exhibit B is Helen Galope's Declaration in Opposition to the Motion for Summary Judgment.

9.      Attached to the Request for Judicial Notice are the following documents being relied upon to support the adjudicative facts in plaintiff's favor that were not provided by defendant in their moving papers:

23

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

- Defendant's Notice of Motion and Motion to Dismiss Complaint filed on March 26, 2012 as Document No. 16 in this Case (Galope v DBNTC Case No. 12-cv-00323) page 8 "What plaintiff fails to address in the Complaint is that the original Note and Deed of Trust control all other conditions, and that the maturity date on the modified loan clearly indicates January 2, 2037. [] Based on these express terms, the interest rate would change on April 1, 2013 pursuant to the provisions of the Adjustable Rate Rider, an addendum to the original Deed of Trust" a true and correct copy of which is already in the case file.

- Declaration of Karen Stacy executed on September 15, 2010 and filed on September 16, 2010 in Lee v Equifirst Corp., United States District Court Case No. 3:10-cv-00809 for the Middle District of Tennessee, a true and correct copy of which is attached hereto as Exhibit 1.

- Declaration of Karen Stacy executed on April 11, 2012 and filed on April 11, 2012 in Osborne v Equifirst Corporation, Case No. 3:12-cv-00172 for the Eastern District of Tennessee, a true and correct copy of which is attached hereto as Exhibit 2.

- LinkedIn public profile for Karen Stacy noting her employment as "Senior Paralegal at Barclays Capital" as of June 30, 2012, a true and correct copy of which is attached hereto as Exhibit 3 and is a public document which can be found at linkedin.com.

- The Note of $522,000.00 indebting plaintiff Helen Galope with Allonge made out to Deutsche Bank National Trust Company, as trustee under Pooling and Servicing Agreement dated as of May 1, 2007 Securitized Asset-Backed Receivables LLC Trust 207-BR4 Mortgage Pass-Through Certificates, Series 2007-BR4, a true and correct copy of which is attached to Helen Galope's Declaration filed concurrently herewith.

- News story from Reuters.com dates June 27, 2012 by Alexandra Alper and Kirsten Ridley captioned "Barclays paying $453 million to settle Libor probe" a true and correct copy of which is attached hereto as Exhibit 4.

**24**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

- June 27, 2012 press release from the United States Department of Justice announcing "Barclays Bank PLC Admits Misconduct Related to Submissions for the London Interbank Offered Rate and the Euro Interbank Offered Rate and Agrees to Pay $160 Million Penalty, a true and correct copy of which is attached hereto as Exhibit 5.

- June 26, 2012 Appendix A to the Non-Prosecution Agreement, dated June 26, 2012, between the United States Department of Justice, Criminal Division, Fraud Section, and Barclays Bank PLC, a true and correct copy of which is attached hereto as Exhibit 6.

- June 27, 2012 Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions, before the Commodity Futures Trading Commission in the Matter of: Barclays PLC, Barclays Bank PLC and Barclays Capital Inc., CFTC Docket No. 12-25, a true and correct copy of which is attached hereto as Exhibit 7.

- LIBOR Rates History as of June 30, 2012 as published on fedprimerate.com, a true and correct copy of which is attached hereto as Exhibit 8.

- Securitized Asset Backed Receivables LLC Trust 2007-BR4 15 SEC Filings from 6/12/07 to 3/28/08, a true and correct copy of which is attached  hereto as Exhibit 9 and can be found as a public record at secinfo.com.

- Securitized Asset Backed Receivables LLC Trust 2007-BR4 424B5 filed on 6/14/07, a true and correct copy of which is attached hereto as Exhibit 10 and can be found as a public record at secinfo.com.

- Securitized Asset Backed Receivables LLC Trust 2007-BR4 FWP (Free Writing Prospectus) – Securitized Asset Backed Receivables LL Trust 2007-BR4 on 6/14/07, a true and correct copy of which is attached hereto as Exhibit 11 and can be found as a public record at secinfo.com.

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*       *SACV12-323-CJC (RNBx)*

- Request for Courtesy Notice of Electronic Filing (NEF) by Attorney Les Zieve on behalf of the Ocwen Loan Servicing, LLC the sub-servicer of plaintiff's loan filed on July 28, 2011 in the Matter of Galope, Case No. 11-bk-18339-MT Chapter 13, which was a few weeks before the debtor moved to vacate the dismissal and over a month before the Court order initiating the automatic stay in this case was filed. This is being offered to show that defendants received notice from the Court of the stay before defendants transferred the property out of the bankruptcy estate and onto their books on September 1, 2011, a true and correct copy of which is attached hereto as Exhibit 12 and can be found as a public record at pacer.gov.

- Court Order vacating the dismissal and reinstituting the automatic stay on August 30, 2011 in the Matter of Galope, Case No. 11-bk-18339-MT Chapter 13, two days before the sale according to the TDUS defendants filed in support of their motion, a true and correct copy of which is attached hereto as Exhibit 13 and can be found as a public record at pacer.gov.

- Uncorrected Transcript of Oral Evidence to be published as HC 481-I, House of Commons Oral Evidence taken before the Treasury Committee, Evidence from Bob Diamond, taken on Wednesday, July 4, 2012 which can be found at www.parliament.uk

- Deutsche Bank IR Release dated May 5, 2004 which can be found at www.db.com

- BBC New Business article dated July 31, 2012 captioned Libor scandal:  Deutsche Bank admits some staff involved which can be found on the internet at www.bbc.uk/new/business

- AFP press release dated July 31, 2012 titled Deutcshe Bank says staff took part in Libor scam

- HITC Business article titled German's biggest bank, Deutsche Bank, prepared the ground for regulatory action in the Libor rigging scandal by admitting that a 'limited number' of its staff had been involved dated July 31, 2012.

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

- California Senate Bill 900 Approved by Governor July 11, 2012 and filed with the Secretary of State on July 11, 2012.


I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct.  Executed on August 13, 2012 at Huntington Beach, California.

/s/ Lenore Albert

LENORE L. ALBERT, ESQ.

27

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

1

## PROOF OF SERVICE

2

3  STATE OF CALIFORNIA, COUNTY OF ORANGE:
    I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in
4  Orange County, California; my business address is 7755 Center Avenue Suite #1100,Huntington Beach,
    CA  92647.
5  On August 13, 2012, I served a copy of the following document(s) described as:

6  **PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO**
7  **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE**
    **ALBERT; DECLARATION OF WILLIAM MATZ; AND DECLARATION OF HELEN**
8  **GALOPE**

9  On the interested parties in this action as follows:

10  See attached Mail List

11
    **[x] BY CM/ECF –** I caused such document(s) to be transmitted to the office(s) of the addressee(s)
12  listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).
    **[ ] BY EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed
13  above by electronic mail at the e-mail address(es) set forth herein.
    **[ ] BY FAX** – I caused such document(s) to be transmitted facsimile from the offices located in
14  Westminster, California this business day to the aforementioned recipients.
          I declare under penalty of perjury under the laws of the State of California and the United States
15  of America that the foregoing is true and correct.

16

17  Dated: August 13, 2012

18                                                                          s/ Lenore Albert
                                                                            Lenore Albert

19

20

21

22

23

24

25

26

27

28

**28**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

1                                    Mailing List

2    For Defendant Western Progressive, LLC and
3    Defendant Deutsche Bank National Trust Company:

4    Eric D. Hauser, Esq.
5    Steven S. Son, Esq.
     HOUSER & ALLISON
6    3760 Kilroy Airport Way, Suite 260
     Long Beach, CA 90806
7    Telephone: (949) 679-1111
8    Fax: (949) 679-1112
     Email: sson@houser-law.com

9

10   Ford Defendant BARCLAYS CAPITAL REAL ESTATE INC. d/b/a HOMEQ
11   SERVICING:
     Scott H. Jacobs (SBN 81980)
12   shjacobs@reedsmith.com
     Brandon W. Corbridge (SBN 244934)
13   bcorbridge@reedsmith.com
     REED SMITH LLP
14   355 South Grand Avenue, Suite 2900
     Los Angeles, CA  90071-1514
15   Telephone:  213.457.8000
     Facsimile:    213.457.8080

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        **29**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LENORE ALBERT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*