Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Plaintiff, HELEN GALOPE,
*on behalf of herself and all others similarly situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

HELEN GALOPE, an individual, on behalf of herself and all others similarly situated,

                              Plaintiffs,

vs.

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, et al,
                              Defendants.

CASE NO. SACV 12 00323-CJC (RNBx)

Assigned to the Hon: Cormac J. Carney

**DECLARATION OF WILLIAM MATZ AND HELEN GALOPE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

DATE: To be taken under submission
TIME: n/a
DEPT: 9B

**1**

**DECLARATION OF WILLIAM MATZ AND HELEN GALOPE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACVI2-323-CJC (RNBx)*

### DECLARATION OF WILLIAM MATZ, ESQ.

1.      I, William P. Matz, have been a licensed attorney in good standing, in California since 1981.

2.      I have been a licensed California Real Estate Broker since 1982.

3.      In addition to my law practice, I have had an active home loan origination business for the last 20 years.

4.      Prior to making this declaration, I have spoken with the Plaintiff, Helen Galope, and her attorney, Lenore Albert. I have reviewed Plaintiff's promissory note dated December 16, 2006, the June 8, 2012 Second Amended Complaint, and June 27, 2012 Order of the Commodity Futures Trading Commission [CFTC] regarding Barclay's PLC, et al. and base my opinion on a review of those documents.

5.      The note is in favor of New Century Mortgage Corporation, a well-known subprime lender based in Irvine, California. The note uses the most typical subprime loan program, a "2/28", in which the note rate and payment the borrower sees is only fixed for two years, and the impact is further disguised by requiring interest only payments during the first five years.

6.      The loan becomes a six-month adjustable after the initial two years, with a rate based on the six-month London Interbank Offered Rate (6 Mo. LIBOR). The loan documents never show the borrower the full potential impact of the loan structure. If borrowers ever recognize and comment about the potential for increased payments, the standard industry response was, "Don't worry; we'll refinance you."

7.      Subprime loans were originally designed as bridge loans that would allow borrowers who were temporarily disqualified from prime loans to borrow while the credit, income, property condition, or other impediment was remedied.

8.      Thereafter, it was expected that the borrowers would be able to refinance into prime loans. However, during the mortgage boom of the mid-2000s, many loan officers and brokers made careers out of refinancing borrowers into increasing 2/28 loans, even when qualified for prime loans. This was an example of "equity stripping."

9.       It is my understanding that the Plaintiff's purpose in this refinance was to obtain a 30-year fixed loan. Accordingly, giving Plaintiff a 2/28, without a thorough explanation of the reason for the change and the nature of the new 2/28 program may well have constituted a "bait and switch" type of deception.

10.      While the abuses of the subprime lending system have been widely publicized and recognized, the release of the CFTC order shows that the system was even more deliberately deceptive than understood. The CFTC finds that Barclay's Bank and several others deliberated the LIBOR rates that are the basis of mortgage rates for borrowers with Plaintiff's type of loan. (Virtually all subprime adjustable loans used LIBOR.) This could explain, in whole or in part, why interest rate spreads between LIBOR and Treasuries of comparable maturities were so large, e.g. over 80 basis points (8/10%) for one-year on June 29, 2012.

11.      The manipulation of LIBOR rates by many banks, whether individually or in concert raises two key concerns with respect to LIBOR borrowers.

12.      First is the extent to which such manipulation may have raised borrowers' costs, something that will not be known fully without much more investigation.

13.      But the second concern is of immediate impact. The mere fact that banks funding the LIBOR loans were manipulating the rates contradicts the implicit – if not explicit- representation to LIBOR borrowers that their future rates would be based on an independently-determined index.

14.      The fact that banks had the potential to manipulate mortgage rates in their favor would -- in my opinion- cause any borrower, including plaintiff Helen Galope, informed of the actual manipulation going on, to refuse to accept a LIBOR-based loan.

I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct. Executed on July 1, 2012 at Windsor, California.

/s/ *William P. Matz*
WILLIAM P. MATZ, B.S., J.D., LL.M.

**DECLARATION OF WILLIAM MATZ; AND HELEN GALOPE IN OPPOSITION TO MSJ**
*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

9.      It is my understanding that the Plaintiff's purpose in this refinance was to obtain a 30-year fixed loan. Accordingly, giving Plaintiff a 2/28, without a thorough explanation of the reason for the change and the nature of the new 2/28 program may well have constituted a "bait and switch" type of deception.

10.     While the abuses of the subprime lending system have been widely publicized and recognized, the release of the CFTC order shows that the system was even more deliberately deceptive than understood. The CFTC finds that Barclay's Bank and several others deliberated the LIBOR rates that are the basis of mortgage rates for borrowers with Plaintiff's type of loan. (Virtually all subprime adjustable loans used LIBOR.) This could explain, in whole or in part, why interest rate spreads between LIBOR and Treasuries of comparable maturities were so large, e.g. over 80 basis points (8/10%) for one-year on June 29, 2012.

11.     The manipulation of LIBOR rates by many banks, whether individually or in concert raises two key concerns with respect to LIBOR borrowers.

12.     First is the extent to which such manipulation may have raised borrowers' costs, something that will not be known fully without much more investigation.

13.     But the second concern is of immediate impact. The mere fact that banks funding the LIBOR loans were manipulating the rates contradicts the implicit – if not explicit- representation to LIBOR borrowers that their future rates would be based on an independently-determined index.

14.     The fact that banks had the potential to manipulate mortgage rates in their favor would – in my opinion- cause any borrower, including plaintiff Helen Galope, informed of the actual manipulation going on, to refuse to accept a LIBOR-based loan.

I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct. Executed on July 1, 2012 at Windsor, California.

/s/ _William P. Matz_

WILLIAM P. MATZ, B.S., J.D., LLM.

**DECLARATION OF WILLIAM MATZ; AND HELEN GALOPE IN OPPOSITION TO MSJ**
*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*         *SACV12-323-CJC (RNBx)*

## DECLARATION OF HELEN GALOPE IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

1.  I, Helen Galope, am the plaintiff in this action.

2.  I bought my home located at 19117 Delano Street, Tarzana, CA 91335 on September 15, 2004.

3.  I refinanced my loan in December 2006 for $522,000.00. I do not give a precise date as I challenge the date on my signature line and believe the defendants changed the date on my original loan documents.

4.  It has always bothered me that my loan documents and the Deed of Trust state my property is in Los Angeles, California with a zip code of 91335.

5.  I was told I would be able to obtain a fixed rate loan then they presented me with the LIBOR loan I received.

6.  I sent out a Qualified Written Request to Ocwen who was servicing my loan and on February 28, 2011 they sent me a copy of my Note with an Allonge to Deutsche Bank as trustee under Pooling and Servicing Agreement dated as of May 1, 2007 Securitized Asset-Backed Receivables LLC Trust 2007-BR4 Mortgage Pass-Through Certificates, Series 2007-BR4, a true and correct copy of which is attached hereto as **Exhibit A**.

7.  If I had known that Barclay's was manipulating the LIBOR rate which my loan payments were based on, I would have never taken this loan.

8.  On April 14, 2008 at 7:43 I received a fax from Taheera Franklin of Barclays d/b/a HomEq Servicing with a fax number of 916-339-6914 to my fax.

9.  I printed out the fax on regular 8 1/2" by 11" paper.

10.  Taheera Franklin told me to sign the document and fax it back to her right away.

11.  So I signed the document and faxed it back to her.

12.  I still have a copy of my blue inked signature. A true and correct copy of the document I received with my blue inked signature that I returned to Taheera Franklin is attached hereto as **Exhibit B**.

13.  I was making my payments as obligated.

14.  When I realized the document did not tell me what the bank expected me to pay after 2013 I called HomEq and was directed to speak with Taheera Franklin.

15.  I spoke to Taheera Franklin and told Taheera Franklin I wanted to know the terms of my loan and that I did not have them in my document.

DECLARATION OF WILLIAM MATZ; AND HELEN GALOPE IN OPPOSITION TO MSJ
*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

16.     She did not give me any specific numbers but said it can go up or down depending on the Market.

17.     This caused me great distress because I did not know what my payment obligations would be.

18.     I spoke to Taheera Franklin on multiple occasions.

19.     She did not mail a copy of the document she faxed to me.

20.     She did not inform me the modification contained two pages that were legal document size.

21.     I was not informed that there was a signature line for the bank to sign.

22.     I was not sent a completed document with the bank's signature.

23.     I did not see anything warning me that two of the pages were legal page size.

24.     It did not even cross my mind that the fax they sent me was supposed to be printed out on legal size paper.

25.     Even if I had received the document, it still does not tell me what the payment was supposed to be in 2013.

26.     I paid defendants $35,354.17 in interest on my loan in 2007 as memorialized in an Account statement I received from HomEq Servicing dated March 25, 2008, a true and correct copy of which is attached hereto as **Exhibit C**.

27.     I paid defendants $27,388.14 in interest on my loan in 2008 as memorialized in an Account statement I received from HomEq Servicing dated December 31, 2008, a true and correct copy of which is attached hereto as **Exhibit D**.

28.     I even continued to pay defendants $7,396.83 in interest on my loan in 2009 while trying to get an answer from HomEq Servicing as to what the payment terms of my modification were a true and correct copy of which is attached hereto as **Exhibit E**.

29.     Not getting the payment terms on my modified loan from defendants while I continued to pay on my loan from May 2008 through 2009 was unreasonable.

30.     I just did not want to get ripped off again, but it appeared to me that is what my creditor was doing to me so I sought bankruptcy protection.

31.     The defendants asked the bankruptcy court to find my filings to be in bad faith and the bankruptcy court declined to do so.

32.     My adversary proceeding was dismissed without prejudice and I was informed that it did not prevent me from filing an action against the defendants later.

**DECLARATION OF WILLIAM MATZ; AND HELEN GALOPE IN OPPOSITION TO MSJ**
*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

33.     I have spent over one hundred thousand dollars paying for my home since I purchased it in 2004.

34.     I informed the defendants that they took my home in September 2011 in violation of the stay after I learned about it.

35.     I also demanded that they rescind the sale, but they refused to do so.

36.     A plan was created under Chapter 13 that I made payments to my creditors, including the defendants.

37.     The only reason my bankruptcy case under Chapter 13 was dismissed in December was on the grounds that my bankruptcy attorney, Jacob Chang, did not pay the Trustee fees to the trustee and then he refused to move to vacate the dismissal without a new full retainer to him of $4,500.00 which I could not afford.

38.     So I tried to get it corrected on my own, but I did not file a motion to vacate, I filed a petition and there was a check box of Ch7 and of Ch13 on the petition and the clerk instead of rejecting the papers posted it as a Ch7 case.

39.     The judge informed me that even if the case was dismissed, I could still move for taking my home at auction in violation of the stay.

40.     Also, in that case, the defendants asked that my filing be considered bad faith and the court refused to do so.

41.     I was deprived of title to my home for almost nine months. I also expended time and money attempting to get my title back and to find out what the terms of payment were to my modification.

42.     I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct.  Executed on July 2, 2012 at Tarzana, California.

/s/ Helen Galope
Helen Galope

33.     I have spent over one hundred thousand dollars paying for my home since I purchased it in 2004.

34.     I informed the defendants that they took my home in September 2011 in violation of the stay after I learned about it.

35.     I also demanded that they rescind the sale, but they refused to do so.

36.     A plan was created under Chapter 13 that I made payments to my creditors, including the defendants.

37.     The only reason my bankruptcy case under Chapter 13 was dismissed in December was on the grounds that my bankruptcy attorney, Jacob Chang, did not pay the Trustee fees to the trustee and then he refused to move to vacate the dismissal without a new full retainer to him of $4,500.00 which I could not afford.

38.     So I tried to get it corrected on my own, but I did not file a motion to vacate, I filed a petition and there was a check box of Ch7 and of Ch13 on the petition and the clerk instead of rejecting the papers posted it as a Ch7 case.

39.     The judge informed me that even if the case was dismissed, I could still move for taking my home at auction in violation of the stay.

40.     Also, in that case, the defendants asked that my filing be considered bad faith and the court refused to do so.

41.     I was deprived of title to my home for almost nine months. I also expended time and money attempting to get my title back and to find out what the terms of payment were to my modification.

42.     I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct.  Executed on July 2, 2012 at Tarzana, California.

/s/ Helen Galope
Helen Galope

**DECLARATION OF WILLIAM MATZ; AND HELEN GALOPE IN OPPOSITION TO MSJ**
*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

EXHIBIT A



**O C W E N**

February 28, 2011

Helen Galope
19117 Delano Street
Tarzana CA 91335

RE:     OLS Loan No.:     ████657

Dear Ms. Galope:

On behalf of Ocwen Loan Servicing, LLC (Ocwen), the Office of the Consumer Ombudsman would like to thank you for your recent correspondence regarding the above referenced loan.  The Consumer Ombudsman's office was created to provide a resource to assist with unresolved concerns and issues.

Enclosed are copies of the signed Adjustable Rate Note, Deed of Trust, Loan Application, HUD-1 Settlement Statement and Truth in Lending Disclosure Statement, indicating that the loan originated on December 16, 2006 by New Century Mortgage Corporation with the loan due for the February 1, 2007 payment.  As Ocwen was not involved in the origination of the loan and since the loan originated on December 16, 2006 over three (3) years ago, under TILA Ocwen is not required to respond to concerns pertaining to origination.  However, clearly you obtained a cash-out refinance loan and agreed to the terms and conditions thereof, including receiving $31,047.52 at origination.

Enclosed is an Ocwen Payment Reconciliation History reflecting that the servicing of the loan transferred to Ocwen on September 1, 2010 with the loan past due for the April 1, 2009 payment.

Enclosed is a copy of the Notice of Transfer of Servicing Rights dated August 11, 2010 which was sent to you by Ocwen when the servicing rights of the loan were transferred to Ocwen on September 1, 2010 with the loan past due for the April 1, 2009 payment.  The Ocwen Payment Reconciliation History reflects all credits and disbursements made to the loan by Ocwen, and the resulting loan status.

Ocwen is the servicer of the loan, and not necessarily the owner of the loan.  Although the ownership of the loan may change, the ownership has no bearing on the servicing of the loan.  The original lender (creditor) was New Century Mortgage Corporation and Ocwen is obligated to service the loan according to the terms and conditions of the original loan documents executed by you.  As the servicer of the loan, all issues regarding the loan should be forwarded to Ocwen for an appropriate response

Foreclosure proceedings can be initiated if the loan is delinquent by three (3) or more payments.  On February 1, 2011 the loan was past due for the April 1, 2009 payment, twenty three (23) payments delinquent.  Therefore, foreclosure proceedings were initiated on the loan on February 1, 2011.

As a result of the payment delinquency and initiation of foreclosure, fees were incurred by Ocwen that were then assessed to the loan for repayment.  Had the loan not become delinquent, these fees would not have been incurred.  All fees and costs associated with these actions were assessed in accordance with the terms and conditions of the original Adjustable Rate Note and Deed of Trust.  A review of Section (7) (E) of the signed Note states: *"If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees."*  The Ocwen Payment Reconciliation History indicates the outstanding fees or expenses.

The additional information you requested is not required to be provided and is not included.  Should you have a particular dispute specifically related to one of the items not included, you may send us a written statement of the reasons you believe the information related to the loan servicing in relation to the item is incorrect.  The remainder of

Page 2
OLS Loan No.: 706214657
February 28, 2011

your requests do not pertain to servicing and do not identify any dispute regarding servicing. Ocwen is the servicer and under RESPA a Qualified Written Request (QWR) must pertain to servicing as defined by RESPA. Therefore, your other requests do not qualify as a QWR and no response is required, nor is a response possible to many of the requests as Ocwen did not underwrite, originate or close the Loan.

Your letter also references allegations that the originating lender violated the federal Truth in Lending Act ("TILA") and requests rescission of the loan. Your letter does not provide a specific basis for rescission under TILA. Since the Loan closed on December 16, 2006, rescission would not be possible on the Loan even if TILA's rescission provisions did apply. As such, there is no basis upon which you may rescind the Loan under TILA and therefore Ocwen and the Holder deny your rescission request.

Please note that Ocwen services loans in accordance with all applicable federal and state laws. Section 2605(e) of the Real Estate Settlement Procedures Act requires that Ocwen respond to "qualified written requests," as defined by that section, regarding "information relating to the servicing of such loan", 12 U.S.C. § 2605(e)(1)(A). Ocwen will not respond to questions that do not relate to the servicing of this particular loan.

This office cannot make payment arrangements or a possible settlement of the loan. In an effort to assist you, our office forwarded your concerns to Ocwen's Home Retention Department for further review. This Office has been advised that a Home Retention Consultant will contact you in order to address your concerns. Please note any modification or settlement, if offered, is based on many items, including Ocwen's servicing guidelines, the status of the loan, and your financial status. Please note that any settlement the loan may have income tax implications to you. As much as Ocwen would like to assist every customer, unfortunately Ocwen may not be able to offer a settlement with terms that you request. Not all loans qualify for a settlement. You should continue to make your payments as required. If you have not spoken with a Home Retention Consultant by the time this letter is received and have any further questions or concerns regarding this matter and want to discuss possible alternatives available to bring the loan to a contractually current status she may contact Ocwen's Home Retention Department at (877) 596-8580.

As of the date of this letter the loan is still past due for the April 1, 2009 payment, twenty three (23) contractual payments delinquent and in foreclosure. Due to the continued delinquency of the loan and initiation of foreclosure, fees and costs are being incurred by Ocwen, which will then be assessed to the loan. Such fees and costs will continue to be incurred until the loan is brought current or alternative arrangements are completed.

The Office of the Consumer Ombudsman is your advocate in ensuring that Ocwen's servicing remains fair, reasonable, and proper. Should you have any further concerns relating to this response, you may contact us at the address or phone number at the bottom of this letter. For other questions or servicing requests, please call Ocwen at (877) 596-8580 or visit their website at www.ocwen.com.

Sincerely,


Smita Kokane
Consumer Account Analyst
Office of the Consumer Ombudsman
Ocwen Loan Servicing, LLC

Enclosures



P.O. Box 785061, Orlando, FL 32878-5061
Telephone: (800) 390-4656    Fax: (866) 771-5152

NMLS # 1852

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

12/27/2006  10:03    8184755395          LITESPEED MTG                    PAGE  02/03

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____      Co-Borrower _____

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): | | Agency Case Number | Lender Case Number |
| | ☐ FHA  ☐ USDA/Rural Housing Service | | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate  ☐ Other (explain): |
| $ 522,000 | 8.775 % | 360/360 | | ☐ GPM  ☑ ARM (type): 2/28 I.O. |

**Subject Property Address (street, city, state, & ZIP)**   19117 Delano Street, Reseda, CA 91335   County: Los Angeles       No. of Units: 1

**Legal Description of Subject Property (attach description if necessary)**       Year Built

**Purpose of Loan**  ☐ Purchase  ☐ Construction    ☐ Other (explain):          Property will be:  ☑ Primary Residence  ☐ Secondary Residence  ☐ Investment
☑ Refinance  ☐ Construction-Permanent

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made  ☐ to be made |
| 2004 | $ | 452,160 | Cash-Out/Debt Consolidation | Cost $ | |

**Title will be held in what Name(s)**   LYDIA DIZON, A SINGLE WOMAN   HELEN GALOPE, A SINGLE WOMAN

**Manner in which Title will be held**  Tenants in common

**Estate will be held in:**  ☑ Fee Simple  ☐ Leasehold (show expiration date)

**Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)**

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
| HELEN A. GALOPE | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
| ████ | ███97 | ████ | 14 | | | | |

| ☐ Married  ☑ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower)  no.  ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower)  no.  ages |

| Present Address (street, city, state, ZIP)  ☑ Own  ☐ Rent  2  No. Yrs. | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
| 19117 DELANO STREET  Reseda, CA 91335 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |

Fannie Mae Form 1003  07/05
CALYX Form Loanapp1.frm 09/05

Page 1 of 5

Borrower _____
Co-Borrower _____

Freddie Mac Form 65  07/05

# HomEq Servicing

*Ocwen Loan Servicing, LLC*
*HELPING HOMEOWNERS IS WHAT WE DO!™*
*WWW.OCWEN.COM*



When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Call the Customer Relations number on this statement if you have questions about electronic check collection or do not want your payments collected electronically.

**Taxes and Insurance:**
If you are currently responsible for payment of your real estate taxes and/or homeowners insurance, you will continue to be responsible for payment of these items after your account transfers to Ocwen. To ensure our records accurately reflect your insurance carrier and taxing authority, you may receive a letter of verification from us shortly after the transfer.

**Year-end Interest Statement (IRS Form 1098):**
Statements for servicing activity during 2010 will be provided in January, 2011.

Except in limited circumstances, the law requires that your present servicer send you this notice at least fifteen (15) days before the effective date of the transfer. Your new servicer must also send you this notice no later than fifteen (15) days after this effective date. In this case, all necessary information is combined in this one notice.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605).

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice in a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:

| If to HomEq: | If to Ocwen: |
| --- | --- |
| HomEq Servicing, CA3345 | Ocwen Loan Servicing, LLC |
| P O Box 13718 | P O Box 785055 |
| Sacramento, CA 95853 | Orlando, FL 32878 |

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60-business-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and cost for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated. Please retain this information with your financing agreement documentation. We look forward to working with you and providing you with the highest quality customer service.

## IMPORTANT DISCLOSURES

**Disclaimer Regarding Mandatory Arbitration Provisions:** If your account documents require you to submit disputes regarding your account to arbitration for resolution, such requirement is waived and will not be enforced against you. Such waiver, however, does not affect any rights you may have to require arbitration of disputes regarding your account.

**Credit Reporting:** You are hereby notified that we may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may also be reflected on your credit report.

**California:** The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Ocwen is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If this account is subject to a pending bankruptcy proceeding or if you have received a bankruptcy discharge for this account, this communication is for informational purposes only and is not an attempt to collect a debt.

# HomEq Servicing

*Ocwen Loan Servicing, LLC*
*HELPING HOMEOWNERS IS WHAT WE DO!™*
**WWW.OCWEN.COM**



Dear Customer,

Ocwen Loan Servicing, LLC ("Ocwen") will now be handling the servicing of your mortgage. Please allow me to personally welcome you to Ocwen. It is natural that you may have a few questions about this change and what it will mean, so I would like to answer a few questions that you may have. Please rest assured that we value your business and look forward to assisting you in the future.

**Important Information - Welcome to Ocwen!**

**Frequently Asked Questions:**

**What if I made a payment to my prior servicer, but it has not posted yet?**
Your previous servicer will forward your payment to us; however, it may take a few weeks for us to receive and apply the payments. This will not negatively impact your account or credit. To check on the status of your account, you may go to www.Ocwen.com and log in with your Ocwen loan number provided in your welcome letter.

**How can I get information about my account?**
You can access Ocwen's website and automated telephone system which will provide you with information regarding your account 24-hours a day. These systems have been designed to provide you with the most frequently requested services or information. This may include, but is not limited to, options to obtain payment histories, a payoff or reinstatement quote, status of your credit reporting, payment options, status of tax and insurance payments, financial hardship options and frequently asked questions (FAQ).

**Website:** www.Ocwen.com
**Telephone Number:** 1-800-74-OCWEN

**If my account is not current and I have no payment arrangements pending with my prior servicer, how can I make payment arrangements or get assistance due to financial difficulties?**
We offer a number of specialized programs that can be designed to fit your situation. Log in to our website at www.Ocwen.com, click on Mortgage Customers and then go to the Financial Difficulties section where you will see an option to apply for mortgage assistance. By using your loan number to log in, you can obtain information and download an application package.

**If I cannot resolve my issue online, what number do I call and what are your hours?**
Our number is 1-800-74-OCWEN.

Our hours are Monday - Friday 9:00 a.m. to 9:00 p.m. and Saturday 9:00 am to 6:30 p.m. ET

If your account is greater than 30 days past due we have extended hours to assist you in resolving this situation. We are open to serve you from 3:00 p.m. Sunday until 7:00 p.m. Friday and then Saturday 9:00 a.m. - 4:00 p.m. ET

**If my account is current, where do I send my payments now?**
Our payment processing address is:
Ocwen Loan Servicing, LLC
PO Box 6440
Carol Stream, IL 60197-6440
Attention: Cashiering Department

**My account just transferred from another servicer to Ocwen. I am currently on a trial modification plan and still have payments remaining before it becomes a final/permanent modification, what do I do?**
You should continue making your monthly trial payment as required in the trial modification plan. Your prior servicer will be providing Ocwen the status of your modification. Please allow us 30 days to review and process your information. It is not necessary to call for a status prior to 30 days as the agent will not have any additional information to provide to you.

**My account just transferred from another servicer to Ocwen. I have made all my trial payments (at least 3 payments), when can I expect my final/permanent modification?**
Your prior servicer will be providing Ocwen the status of your trial modification. You should continue making your trial payment amount each month. Our goal is to review your loan as soon as possible and provide your final modification agreement to you. Please allow up to 30 days from the date of the account transfer for Ocwen to obtain and process your application documentation.

**My account just transferred from another servicer to Ocwen. I just submitted my modification application to the prior servicer, should I send this to Ocwen again?**
Your prior servicer will be providing Ocwen with the status of your modification application and copies of your documentation. It is not necessary to re-send the documents to Ocwen at this time. Please allow up to 30 days from the date of the account transfer for Ocwen to process your application documentation and determine your eligibility. It is not necessary to call prior to 30 days as the agent will not have any additional information to provide to you.

**I received a notice from my prior servicer that I was denied for the Making Home Affordable Program. I am still having financial difficulty, what can I do?**
We may still be able to help you. We offer a number of specialized programs that can be designed to fit your situation. Please go to www.Ocwen.com for more information and to download an application for assistance. You can log in using your Ocwen loan number.

**I received a notice from my prior servicer that they were missing documents for my HAMP modification but I have not sent them yet; do I send these documents to Ocwen now?**
Yes, please send the documents to Ocwen via e-mail to modification@ocwen.com or fax to 407-737-6174. Your prior servicer will be providing Ocwen with the status of your modification (trial plan or initial application), copies of your initial application and information identifying the missing documentation. Please allow up to 30 days from the date you send the documentation for Ocwen to process your documentation.

**My account just transferred from another servicer to Ocwen. I received approval from my prior servicer for a Short Sale or Deed in Lieu; will this approval be honored by Ocwen?**



Ocwen is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If this account is subject to a pending bankruptcy proceeding or if you have received a bankruptcy discharge for this account, this communication is for informational purposes only and is not an attempt to collect a debt.

**HomEq Servicing**   *Ocwen Loan Servicing, LLC*
*HELPING HOMEOWNERS IS WHAT WE DO!™*
<u>WWW.OCWEN.COM</u>



Yes, it will be honored as long as you meet the original requirements or contingencies for approval provided by your prior servicer. Your prior servicer will be providing these approval requirements to Ocwen

My account just transferred from another servicer to Ocwen. I received approval from my prior servicer for a Short Sale or Deed in Lieu, but the approval is going to expire shortly (or just expired) and my closing is after this day, what do I do?
You should send your original approval documents and an updated net sheet or HUD1 with the new projected closing date to 407-737-5071. Please note if there is a Foreclosure Sale scheduled on your account we will not postpone the foreclosure sale.

I have a Short Sale or Deed in Lieu application pending with my prior servicer, do I have to resend all this documentation to Ocwen now and re-apply?
Your prior servicer will be providing Ocwen with the status of your pending resolution. If you have a pending foreclosure sale date or closing scheduled in the next 60 days, to expedite processing please resend the documentation by fax to 407-737-5071 If you do not have a foreclosure sale or scheduled closing in the next 60 days, your prior servicer will be providing Ocwen the status of your pending resolution and Ocwen will be contacting your with a final approval or denial. Please allow Ocwen up to 30 days to process your Short Sale or Deed in Lieu application

Hopefully this answers some of your questions. Thank you once again for your business. We are excited about the opportunity to work with you.

Sincerely,

Ronald M. Faris
President

Ocwen is a debt collector attempting to collect a debt and any information obtained will be used for that purpose If this account is subject to a pending bankruptcy proceeding or if you have received a bankruptcy discharge for this account, this communication is for informational purposes only and is not an attempt to collect a debt

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Applicants: **HELEN A. GALOPE**

Property Address: 19117 Delano Street
Reseda, CA 91335

Application No: **LYDIA DIZON**

Prepared By: **LITESPEED MORTGAGE CORPORATION**
8300 TAMPA AVENUE, SUITE M
NORTHRIDGE, CA 91335
818-280-2525

Date Prepared: 12/06/2006

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| 9.125 % | $  1,020,501.99 | $  522,000.00 | $  1,542,501.99 |

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit
PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 24 | 3,969.38 | | | | | | | |
| 335 | 4,307.27 | | | | | | | |
| 1 | 4,301.42 | | | | | | | |

☐ DEMAND FEATURE: This obligation has a demand feature.
☐ VARIABLE RATE FEATURE: This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature |
|---|---|---|
| Credit Life | | I want credit life insurance.                    Signature: |
| Credit Disability | | I want credit disability insurance.            Signature: |
| Credit Life and Disability | | I want credit life and disability insurance.  Signature: |

INSURANCE: The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☐ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase  ☐ property  ☐ flood insurance from creditor you will pay $ _____ for a one year term.
SECURITY: You are giving a security interest in:
☐ The goods or property being purchased  ☐ Real property you already own.
FILING FEES: $
LATE CHARGE: If a payment is more than _____ days late, you will be charged _____ % of the payment
PREPAYMENT: If you pay off early, you
☐ may  ☐ will not  have to pay a penalty.
☐ may  ☐ will not  be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
☐ may  ☐ may, subject to conditions  ☐ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
☐ * means an estimate  ☐ all dates and numerical disclosures except the late payment disclosures are estimates.

* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

_____  12/8/06      _____
HELEN A. GALOPE       (Applicant)   (Date)                    (Applicant)        (Date)

_____                 _____
(Applicant)   (Date)                    (Applicant)        (Date)

_____
(Lender)   (Date)

Calyx Form - tilhp (02/96)

# HomEq Servicing

4837 Watt Ave
North Highlands, CA 95660

Ocwen Loan Servicing, LLC
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM



August 11, 2010

GALOPE HELEN
19117 DELANO ST
TARZANA CA 91335-6705

**NOTICE OF SERVICE TRANSFER [RESPA]**

RE: HomEq Account Number ████████869
Ocwen Account Number: ████████657

Dear GALOPE HELEN:

Effective 8/31/2010 HomEq Servicing will transfer the servicing of your account to Ocwen Loan Servicing, LLC (Ocwen). The transfer of the servicing of your account does not affect any term or condition of your financing agreement, other than terms directly related to the servicing of your account. Your account number will change and the new account number is shown. Key information regarding the servicing of your account is provided below

Should you have any questions relating to the transfer of servicing or need information regarding your account prior to 9/01/2010 please call HomEq Customer Service at 1-877-867-7378, Monday through Friday, from 5:00 a.m. to 5:30 p.m. PT

**New Servicing Contact Information:**
As of 9/01/2010, Ocwen's Customer Service Department will assist you with questions regarding the transfer of servicing or any other questions relating to your account. You may reach Ocwen's Customer Service Associates by calling 1-800-74-OCWEN, between the hours of 9:00 a.m. and 9:00 p.m. ET Monday through Thursday; and 9:00 a.m to 6:30 p.m. ET on Friday. You can obtain a variety of information using Ocwen's Account Information System or you can speak directly to a Customer Service Associate. Please be sure to have your account number available when you call

As of 9/01/2010, all written inquiries should be sent to Ocwen at the following address. Please be sure to indicate your account number on all correspondence to ensure a prompt response to your inquiry to Ocwen Loan Servicing, LLC
Attn: Customer Service Department, P.O. Box 785057 Orlando, FL 32878

Additionally, it is important to contact your insurance agency to ensure that (i) Ocwen receives proof of hazard insurance (with flood and/or windstorm coverage, as applicable) on your property and (ii) Ocwen is named as the beneficiary in the Mortgagee Clause of your policy. If your mortgage payment includes escrow for taxes or insurance, please take the necessary steps to have all future bills forwarded to:

Insurance
Ocwen Loan Servicing, LLC
ISAOA
P O Box 6723
Springfield, OH 45501-6723

Property Taxes
Ocwen Loan Servicing, LLC
Attn: Tax Department
P O Box 961260
Ft Worth, TX 76161-0260
Phone: (888) 656-3572

You may also forward evidence of insurance or insurance bills via fax or email to Ocwen:
Toll-Free Fax: (888) 882-1816     Email: updateinsuranceinfo@ocwen.com

**Making Your Payments:**
The date that HomEq will stop accepting payments from you will be 8/31/2010. The date Ocwen will start accepting payments from you is 9/01/2010. Please make all checks payable to Ocwen and send all payments due on or after 9/01/2010, to the following address:

Regular Payment Address:
Ocwen Loan Servicing, LLC
PO Box 6440
Carol Stream, IL 60197-6440

Overnight Address:
Ocwen Loan Servicing, LLC
Attn: Cashiering
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

If you are currently utilizing an online or other electronic bill paying service, you will need to notify your service provider of the change of service to ensure that there is no delay in crediting of your mortgage payments

If you are presently enrolled in the HomEq monthly Automatic Payment Plan ("APP"), your APP will be transferred to Ocwen. Please be advised that there may be a processing delay on payments scheduled between September 1 and September 7, 2010, but your payment will be credited as of the date it was originally scheduled

HomEq will stop scheduling non-recurring payments at 3 p.m. PT on August 31, 2010. Non-recurring electronic payments scheduled through HomEq for processing on or after September 1, 2010 will be canceled. Payments may be re-scheduled with Ocwen on or after September 1, 2010.

**Optional Insurance:**
If your monthly payment currently includes premium amounts for optional insurance products such as accidental death insurance, please continue to include those amounts to ensure coverage remains in force

--------------------------------------------------------------------

Ocwen Loan Servicing, LLC
Payment Coupon                                            GALOPE HELEN

Send payments to:                                        708214657
Ocwen Loan Servicing, LLC
P O Box 6440
Carol Stream, IL 60197-6440

Note: If your loan is current, any excess funds will first be applied to outstanding amounts due and then to additional principal

Amount Due:     $_____        Total Enclosed:  $_____

Ocwen is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If this account is subject to a pending bankruptcy proceeding or if you have received a bankruptcy discharge for this account, this communication is for informational purposes only and is not an attempt to collect a debt.

MIN: 100488291811468171

# ADJUSTABLE RATE NOTE

### (LIBOR Six Month Index (as Published in *The Wall Street Journal*) – Rate Caps)
### 2 YEAR RATE LOCK, 5 YEAR INTEREST ONLY PERIOD

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT.**

| December 16, 2006 | LOS ANGELES | California |
|---|---|---|
| (Date) | (City) | (State) |

19117 DELANO STREET TARZANA AREA, LOS ANGELES, CA 91335

(Property Address)

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 532,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is New Century Mortgage Corporation.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.775%. The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay interest by making a payment every month. Beginning on the Amortization Start Date, I will pay principal each month in addition to interest.

I will make my monthly payment on the first day of each month beginning on February 1, 2007.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on 01/01/2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612 or at a different place if required by the Note Holder.


CERTIFIED TO BE A TRUE, CORRECT &
COMPLETE COPY OF THE ORIGINAL.

NCMC
Fixed/ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

1011468137

**(B) Amount of My Monthly Payments**

Each of my *initial* monthly payments will be in the amount of U.S. $3,817.13 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Withholding**

If I am a non-resident alien, I understand that all payments due hereunder shall be paid without reduction for any taxes, deductions or withholding of any nature. If such tax, deduction or withholding is required by any law to be made from any payment to the Note Holder, I shall continue to pay this Note in accordance with the terms hereof, such that the Note Holder will receive such amount as it would have received had no such tax, deduction or withholding been required.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of January, 2009 and on the same day of every 6th month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date."

**(B) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a margin. The "Index" is the average of interbank offered rates for six-month dollar deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* "Money Rates" Table. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

On each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding Six And Fifteen Hundredth(s) percentage points (6.150%) to the Current Index. The Note Holder will then round this figure to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

**(i) Interest-Only Period.** The "Interest-Only Period" is the period from the date of this Note through January 1, 2012, called the "Amortization Start Date." During the Interest-Only Period, my monthly payments will only pay the interest I owe. During the Interest-Only Period, the Note Holder will calculate the amount of my monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the then applicable interest rate. The result of this calculation will be the amount of my monthly payment until changed.

CERTIFIED A CORRECT & COMPLETE COPY OF ORIGINAL

BY: _____

**(II) Amortization Period.**   Beginning on the Amortization Date my monthly payments will include principal. Starting on the Amortization Start Date and continuing until the Maturity Date, on each Interest Rate Change Date the Note Holder will calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date at the new interest rate, assuming, for purposes of each calculation, that the interest rate did not change again. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.775 % or less than 8.775 %.  Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month.  My interest rate will never be greater than 15.775 % or less than 8.775%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment at least 25 days before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied.  If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.  However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then:  (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me.  If a refund reduces principal, the reduction will be treated as a partial prepayment.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Michigan)
RB-440 (051005)

Page 2 of 5

1011468137

CERTIFIED TO BE A TRUE, CORRECT &
COMPLETE COPY OF THE ORIGINAL.
BY:

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% or $5.00, whichever is greater of my overdue monthly payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amount owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor, and further waive all rights of any kind under any applicable laws. "Presentment" means the right to

Borrower Name: GALOPE, HELEN
Property Address: 19117 DELANO ST, TARZANA CA 91335-0000
Loan#: ▮▮▮▮▮969   Service#: 3327AS1   Cust#: 1



## ALLONGE TO NOTE

PAY TO THE ORDER OF:

Assignee: **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2007 SECURITIZED ASSET-BACKED RECEIVABLES LLC TRUST 2007-BR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-BR4**

(without recourse)

By:

Assignor: SUTTON FUNDING, LLC

By: _____

Noriko Colston, Assistant Secretary

# EXHIBIT B

IN RE. HELEN A GALOPE          CASE NO: 1.10-bk-10107-MT



# Fax

| **To:** | Helen Galope | **From:** | HomEq |
|---|---|---|---|
| **Fax:** | 775-655-5621 | **Pages:** | 5 including cover |
| **Phone:** | 888-270-6663 | **Date:** | 4/14/08 |
| **Re:** | mod contract | **Fax:** | 866-554-5352 |

**Urgent     For Review     Please Comment     Please Reply**

**For Modification Approval, the following need to be complete:**
☐ **Contract**
  - **Initial Section 3**
  - **Sign Section 6**
☐ **Attachment "A"**
  - **Sign & Date**
☐ **Payment for $3027.02 made via certified funds. Options are:**
  - **Cashier's Check or Money Order**
  - **Western Union**
        **State Code- CA     City Code- HomEq**
        **Company Name- HomEq Servicing Corporation**
  - **Money Gram**
        **Receive Code- 2392**
☐ **Mail via overnight to the address on the next page, and call HomEq with the tracking number**

EXHIBIT 9

# HomEq Servicing

HomEq Servicing CA3507
4837 Watt Avenue Suite 100
North Highlands, Ca 95660

04/07/2008

HELEN GALOPE

19117 DELANO ST TARZANA ARE
LOS ANGELES, CA 91335

Re: Loan Number: 0000326300969
Property: 19117 DELANO ST TARZANA AR
LOS ANGELES , CA 91335

Dear Borrower(s):

In response to your request for assistance, the terms of your loan will be adjusted to assist you during this time of financial difficulty.

The attached Agreement has been prepared for your initials and signature(s). Please read the agreement carefully. You may want to review it with a financial advisor before signing. The Agreement includes the following changes being made to your loan:

Unpaid principal balance
Total principal and interest monthly payment
Escrow monthly payment amount
Next Payment Due Date
Interest rate
Remaining term

In accordance with the Agreement, your new monthly payment will be due 05/01/2008, in the amount of **$3,027.02**. This payment includ **$2,465.61** for the new principal and interest payment and **$561.41** for the estimated impound/escrow payment.

**To make the Agreement effective, the following must be received within ten (10) days of the date of this letter:**
The Agreement, signed and initialed
Attachment A, signed and
A copy of your most recent property tax bill(s)
A copy of your current homeowner's (and wind, if applicable) insurance policy (declaration's page only)
A copy of your current flood insurance policy (declarations page only)

**Please return the Agreement and cashier's check to:**

HomEq Servicing CA3507
4837 Watt Avenue Suite 100
North Highlands, CA 95660

If you have any questions regarding the Agreement, please contact me at (800) 795-5125.

Sincerely,

HomEq Servicing

HomEq Servicing Modification Agreement Cover Letter

Prepared by and return to:                              Account Number: ████████969
HomEq Servicing
Attn: Mod Imaging-CA3507
4837 Watt Avenue
North Highlands, CA 95660

### Modification Agreement

This Modification Agreement ("Agreement") is made and entered into as of this 7th day of April, 2008 by and between HomEq Servicing ("HomEq") and HELEN GALOPE ("Borrower")

Whereas, HomEq is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated as of 12/27/2006, executed by Borrower or Borrower's predecessor-in-interest in the original principal amount of $522,000.00.

WHEREAS, the Note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest and is secured by either a deed of trust or mortgage ("Security Instrument") dated as of 12/27/2006. The Security Instrument encumbers certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument).

WHEREAS, due to adverse economic circumstances, Borrower has requested that HomEq adjust the terms of the Note to permit Borrower to meet Borrower's Loan obligations in a full and in a timely manner.

WHEREAS, the requested adjustment will benefit all parties to the Loan and any junior lien holder by providing the Borrower an opportunity to meet the Loan obligations in a manner intended to help the Borrower avoid default on the Loan and the necessity of foreclosure on the Property.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  **NOTE MODIFICATIONS:**
    (a)   **Outstanding Debt:** Borrower agrees that the unpaid principal balance due on the Note of $522,000.00 shall be adjusted to $537,951.62 ("New Balance"), to reflect the amount of unpaid interest, late charges, fees and costs, advances for unpaid property taxes and/or insurance premiums (if applicable), less any amounts forgiven, as reflected on Attachment 'A'.

Borrower agrees to pay the New Balance to HomEq and has no defenses, claims or offsets with respect thereto. Interest will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

    (b)   **New Monthly Payments: Payment Adjustments:** Effective with Borrower's monthly payment due 05/01/2008, Borrower's monthly Loan payment will be $2,465.61. This payment amount does not include additional amounts which may also be due for the payment of taxes and insurance premiums. The taxes and insurance payment amount will be due monthly, together with Borrower's scheduled Loan payment. Borrower agrees that a full payment hereunder and with respect to the Loan shall only be deemed to have been made when funds remitted include the required scheduled Loan payment and monthly portion of taxes and insurance premiums. The date on which the New Monthly Payment change is next scheduled to occur is hereby changed to 05/01/2013 .

    (c)   **New Interest Rate:** Effective on 04/01/2008, Borrower's rate of interest will be 5.500%. The date on which the interest rate change is next scheduled to occur is hereby changed to 04/01/2013 .

    (d)   **Interest Only Period:** The period in which Borrower's monthly principal and interest payment will consist of interest only is extended until 04/01/2013 (the "Interest Only Period"). Upon expiration of the Interest Only Period, Borrower's monthly principal and interest payment will be increased to an

**3.     RELEASE:**

Borrower releases HomEq, its subsidiaries, affiliates, agents, officers and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the origination and/or servicing of the Loan, and/or events which resulted in Borrower entering into this Agreement.  Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation (if applicable), California Civil Code Sec. 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Borrower's Initial _____

Borrower's Initial _____

**4.  .   NO OTHER CHANGES:**

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations and conditions in the Note and the Security Instrument remain unmodified and in full force and effect without any defense, counterclaim, right or claim of set-off.  None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein, nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument, whether such rights or remedies arise herein or by operation of law.

**5.     ENTIRE AGREEMENT:**

This Agreement constitutes the entire Agreement between the parties regarding the subject matter hereof. Except as otherwise provided herein, this Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether written or oral, of the parties hereto, relating to the Note and Security Instrument.

**6.     VOLUNTARY EXECUTION:**

Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing below Borrower acknowledges and agrees that Borrower has voluntarily signed this Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Modification Agreement as of the date first above written.

BORROWER

Signature: _____

Name: _____ HELEN A. GAUPE

BORROWER

Signature: _____

**ATTACHMENT 'A'**

**Loan #** 0000326300969

| AMOUNTS PAST DUE - CAPITALIZED | | LOAN INFORMATION | |
|---|---|---|---|
| Delinquent Interest | $7,634.26 | Borrower Name: | |
| Late Charges | $381.72 | | GALOPE, HELEN |
| NSF Fees | $0.00 | | |
| Negative Escrow Balance | $7,935.64 | | |
| Corporate Advances | $0.00 | Prop Address: | |
| | | | 19117 DELANO ST TARZANA |
| Mortgage Insurance Premium | $0.00 | | AR |
| Modification Fee | $0.00 | | LOS ANGELES, CA 91335 |
| Other Fees | $0.00 | | |
| Other _____ | $0.00 | | |
| | $15,951.62 | Note Date: | 12/27/2006 |
| | | Orig Amt: | $522,000.00 |
| | | MTG/Deed Date: | 12/27/2006 |

**BORROWER CREDITS (-)**

| | |
|---|---|
| Contribution Amt | $0.00 |
| Suspense Bal | $0.00 |
| Other Credit | $0.00 |
| | $0.00 |

**AMOUNTS PAST DUE - FORGIVEN**

| | |
|---|---|
| Unpaid Principal | $0.00 |
| Delinquent Interest | $0.00 |
| Late Charges | $0.00 |
| Foreclosure Fees & Costs | $0.00 |
| Bankruptcy Fees & Costs | $0.00 |
| Negative Escrow Balance | $0.00 |
| Other Corporate Advances | $0.00 |
| Other Fees | $0.00 |
| | $0.00 |

**NET PRINCIPAL CAPITALIZATION (DECREASE)**     $15,951.62

**MODIFICATION TERMS:**

| MODIFIED TERMS: | NEW TERMS: | EXISTING TERMS: |
|---|---|---|
| Principal Balance | $537,951.62 | $522,000.00 |
| | | |
| P&I Payment | $2,465.61 | $3,817.13 |
| Escrow Payment | $561.41 | $0.00 |
| Total Payment | $3,027.02 | $3,817.13 |
| | | |
| Due Date | 05/01/2008 | 03/01/2008 |
| Interest Rate | 5.500% | 8.775% |
| Rate Type | Interest Only | I/O ARM |
| Remaining Term | 345 | 347 |
| | | |
| Maturity Date | 01/01/2037 | 01/01/2037 |
| Interest Only Expiration Date | 05/01/2013 | 02/01/2012 |
| Other _____ | N/A | N/A |

| REPAYMENT PLAN | |
|---|---|
| Begin Date | N/A |
| End Date | N/A |
| P&I Payment | N/A |
| Escrow Payment | N/A |
| Total Payment | N/A |

_____

Borrower Acknowledgment

Date: 04/17/08

_____

Borrower Acknowledgment

Date: _____

EXHIBIT C

**HomEq Servicing**
P.O. BOX 13716
SACRAMENTO, CA 95853-3716



# ACCOUNT STATEMENT

Statement Date:        03/25/08
Account Number:        ███████69

*QUESTIONS ABOUT YOUR ACCOUNT*
Visit us on the web at www.homeq.com, or call Customer Service at
1-877-867-7378 Monday through Friday, 5:00 A.M. - 5:30 P.M.,
Pacific Time. Please have your account number available.
*For your convenience, our automated attendant is available 24 hours
a day, seven days a week.*



HELEN GALOPE
19117 DELANO ST TARZANA ARE
LOS ANGELES CA 91335-6705

Property Address:    19117 DELANO ST TARZANA AR
                     LOS ANGELES CA 91335

## AMOUNT DUE EXPLANATION

| | |
|---|---|
| Principal and Interest Due | $3,817.13 |
| Monthly Payment Amount-Due by 04/01/08 | $3,817.13 |
| Amount(s) Past Due - As of 03/25/08 | $3,817.13 |
| Late Charge Balance | $381.72 |
| Returned Check Fees | $0.00 |
| Other Fees | $0.00 |
| Amount Due -By 04/01/08* | $8,015.98 |

*Amount Due may not include all fees or advances

**PLEASE NOTE:**
If the payment due on 04/01/08 is not received by 04/16/08, a
late charge in the amount of $190.86 may be assessed to
your account.

### ACCOUNT INFORMATION

| | |
|---|---|
| Principal Balance - As of 03/25/08 | $522,000.00 |
| Escrow Balance - As of 03/25/08 | $55.51- |

*The Principal Balance does not represent the payoff amount
of your account and is not to be used for payoff purposes.*

### ESCROW DISBURSEMENTS

| | |
|---|---|
| Taxes Paid Year-To-Date | $.00 |
| Insurance Paid Year-To-Date | $55.51 |

### INTEREST & TAX INFORMATION

| | |
|---|---|
| Interest Paid Year-To-Date | $7,634.26 |
| Interest Paid in 2007 | $34,354.17 |
| Taxes Paid in 2007 | $.00 |

*In order to assist you with tax planning, we are providing
information on your Account interest and taxes paid in
the prior year.*

### ACCOUNT STATUS

HomEq has not yet received your payment.  A
late charge may have already been assessed to
your account.  Failure to fulfill the terms of your
agreement may result in collection activity.  If you
have already sent your payment, please accept
our thanks.  If not, please refer to the back of this
billing statement for payment options.

### PROTECT YOUR CREDIT

You are hereby notified that we may report
information about your account to credit reporting
agencies.  Late payments, missed payments, or
other defaults on your account may be reflected
on your credit report.  To dispute information
reported to a credit reporting agency, please
send a written dispute and any related
documentation to the credit reporting agency.

### *PAYMENT ACTIVITY*

| | |
|---|---|
| Principal-Scheduled | $.00 |
| Interest | $.00 |
| Late Charge(s)/Fees/Advances | $.00 |
| Total | $.00 |

A00534

## IMPORTANT MESSAGES

### 2007 TAX INFORMATION MAILED DURING JANUARY 2008

All 2007 tax information for your loan(s) serviced by HomEq Servicing was mailed in January 2008. Your tax information may have
accompanied your Account Statement or arrived separately. If you have not received your tax information, please visit us on the
web at www.homeq.com, or call our Customer Service Department.

### Automatic Payment Program

Enjoy the convenience of having your monthly payment automatically withdrawn from your banking account each month, FREE of
charge. To enroll in HomEq's Automatic Payment Program (APP), simply call our toll free number 1-877-867-7378. Please have
your bank account number and billing statement available.

*Detach here and send this COUPON with your payment.  Retain top portion for your records.  Please do not send correspondence with your payment.*

## HomEq Servicing
## PAYMENT COUPON

HELEN GALOPE

| Amount Due By | Account Number | Amount Due |
|---|---|---|
| 04/01/08 | ███████69 | $8,015.98 |

Total Amount Enclosed  $

[ ]  Check here if you are making address &
     phone number corrections on the reverse side.

**Make Check Payable To:**

HOMEQ SERVICING
P.O. BOX 79230
CITY OF INDUSTRY CA  91716-9230



30000019086  ███████████  0000381713

EXHIBIT D

# HomEq Servicing
P.O. BOX 13716
SACRAMENTO, CA 95853-3716

## ACCOUNT STATEMENT

Statement Date: 12/31/08
Account Number: ____69

### WE'RE HERE FOR YOU
Visit us on the web at www.homeq.com or call Customer Service at 1-877-867-7378 Monday through Friday, 5:00 A.M. - 5:30 P.M., Pacific Time. For your convenience, our automated attendant is available 24 hours a day, seven days a week.

HELEN GALOPE
19117 DELANO ST TARZANA ARE
LOS ANGELES CA 91335-6705

### *ESTAMOS AQUI PARA SERVIRLO
Para asistencia con preguntas, favor de llamar a nuestro Departamento de Servicio al Cliente al 1-877-867-7378, Lunes a Viernes, 5:00 A.M. - 5:30 P.M., Tiempo Pacifico. Nuestro systema automatizado esta disponible las 24 horas del dia, siete dias a la semana para su conveniencia.

Property Address: 19117 DELANO ST TARZANA AR
LOS ANGELES CA 91335

## AMOUNT DUE EXPLANATION

| | |
|---|---|
| Principal and Interest Due | $2,465.61 |
| Escrow | $561.41 |
| **Minimum Monthly Amount-Due By 01/01/09** | **$3,027.02** |
| Amount(s) Past Due-As of 12/31/08 | $0.00 |
| Late Charge Balance | $246.56 |
| Returned Payment Fees | $0.00 |
| Other Fees | $0.00 |
| **Amount Due*-By 01/01/09** | **$3,273.58** |

*Amount Due may not include all fees or advances.

### PLEASE NOTE:
If the Minimum Monthly Payment due on 01/01/09 is not received by 01/16/09, a late charge in the amount of $123.28 may be assessed to your account.

## *PAYMENT ACTIVITY

| | |
|---|---|
| Last Payment Received | 12/31/08 |
| Principal-Scheduled | $.00 |
| Interest | $2,465.61 |
| Escrow | $561.41 |
| Late Charge(s)/Fees/Advances | $7.50 |
| Total | $3,034.52 |

### ACCOUNT INFORMATION

| | |
|---|---|
| Principal Balance - As of 12/31/08 | $537,951.82 |
| Escrow Balance - As of 12/31/08 | $2,893.49 |

The Principal Balance does not represent the payoff amount of your account and is not to be used for payoff purposes.

| | |
|---|---|
| Taxes Paid Year-To-Date | $9,075.75 |
| Insurance Paid Year-To-Date | $629.51 |
| Interest Paid Year-To-Date | $27,359.14 |

### PROTECT YOUR CREDIT
You are hereby notified that we may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected on your credit report. To dispute information reported to a credit reporting agency, please send a written dispute and any related documentation to the credit reporting agency.

A00534

## IMPORTANT MESSAGES

### IMPORTANT MESSAGE REGARDING YOUR TAX INFORMATION
During the month of January 2009, you will receive 2008 tax information for your loan(s) serviced by HomEq Servicing. Your tax information may either accompany your Account Statement or be sent to you separately. All of your tax information will be mailed by HomEq Servicing by January 31, 2009. If you have not received your tax information by February 13, 2009, please contact our Customer Service Department.

### Automatic Payment Program
Enjoy the convenience of having your monthly payment automatically withdrawn from your banking account each month, FREE of charge. To enroll in HomEq's Automatic Payment Program (APP), simply call our toll free number 1-877-867-7378. Please have your bank account number and billing statement available.

*Detach here and send this COUPON with your payment. Retain top portion for your records. Please do not send correspondence with your payment.*

# HomEq Servicing
## PAYMENT COUPON
HELEN GALOPE

| Amount Due By | Account Number | Amount Due |
|---|---|---|
| 01/01/09 | _____69 | $3,273.58 |
| | Total Amount Enclosed $ | |

[ ] Check here if you are making Address & Phone number corrections on the reverse side.

Make Check Payable To:

HOMEQ SERVICING
P.O. BOX 79230
CITY OF INDUSTRY CA 91716-9230

0000001 2328    0000302702

# EXHIBIT E

**HomEq Servicing**
P.O. BOX 13716
SACRAMENTO, CA 95853-3716

## ACCOUNT STATEMENT

Statement Date: 05/22/09
Account Number: 969

### WE'RE HERE FOR YOU
Visit us on the web at www.homeq.com or call Customer Service at 1-877-867-7378 Monday through Friday, 5:00 A.M. - 5:30 P.M., Pacific Time. For your convenience, our automated attendant is available 24 hours a day, seven days a week.



HELEN GALOPE
19117 DELANO ST TARZANA ARE
LOS ANGELES CA 91335-6705

### *ESTAMOS AQUI PARA SERVIRLO
Para asistencia con preguntas, favor de llamar a nuestro Departamento de Servicio al Cliente al 1-877-867-7378, Lunes a Viernes, 5:00 A.M. - 5:30 P.M., Tiempo Pacifico. Nuestro sistema automaticado esta disponible las 24 horas del dia, siete dias a la semana para su conveniencia.

Property Address:  19117 DELANO ST TARZANA AR
LOS ANGELES CA 91335

### AMOUNT DUE EXPLANATION

| | |
|---|---|
| Principal and Interest Due | $2,465.61 |
| Escrow | $561.41 |
| **Minimum Monthly Amount-Due By 06/01/09** | **$3,027.02** |

| | |
|---|---|
| **Amount(s) Past Due-As of 05/22/09** | **$6,054.04** |
| Late Charge Balance | $246.56 |
| Returned Payment Fees | $0.00 |
| Other Fees | $0.00 |
| **Amount Due*-By 06/01/09** | **$9,327.62** |

*Amount Due may not include all fees or advances.

### PLEASE NOTE:
If the Minimum Monthly Payment due on 06/01/09 is not received by 06/16/09, a late charge in the amount of $123.28 may be assessed to your account.

### *PAYMENT ACTIVITY

| | |
|---|---|
| Principal-Scheduled | $.00 |
| Interest | $.00 |
| Late Charge(s)/Fees/Advances | $.00 |
| Total | $.00 |

### ACCOUNT INFORMATION

| | |
|---|---|
| Principal Balance - As of 05/22/09 | $537,951.62 |
| Escrow Balance - As of 05/22/09 | $1,697.88 |

The Principal Balance does not represent the payoff amount of your account and is not to be used for payoff purposes.

| | |
|---|---|
| Taxes Paid Year-To-Date | $2,879.84 |
| Insurance Paid Year-To-Date | $.00 |
| Interest Paid Year-To-Date | $7,396.83 |

Interest Paid Year-To-Date amount may include amounts not reportable to the Internal Revenue Service (IRS), including deferred interest, negative amortization and/or capitalized interest.

### ACCOUNT STATUS

Your account is currently past due. The delinquency may be reported to the credit bureaus. To protect your credit rating, please contact our office immediately by calling 1-800-795-5125. Please refer to the back of this billing statement for payment options.

### PROTECT YOUR CREDIT

You are hereby notified that we may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected on your credit report. To dispute information reported to a credit reporting agency, please send a written dispute and any related documentation to the credit reporting agency.

A00534

### IMPORTANT MESSAGES

**\*Payment Activity Since Last Statement**
A payment has not been applied to your account since your last Account Statement was mailed. As a result, activity is not reflected in the Payment Activity section. For payment updates, our automated attendant is available 24 hours a day, seven days a week at 877-867-7378. Or, visit us on the web at www.homeq.com and follow the instructions provided to access your Account History.

### Automatic Payment Program
Enjoy the convenience of having your monthly payment automatically withdrawn from your banking account each month, FREE of charge. To enroll in HomEq's Automatic Payment Program (APP), simply call our toll free number 1-877-867-7378. Please have your bank account number and billing statement available.

*Detach here and send this COUPON with your payment. Retain top portion for your records. Please do not send correspondence with your payment.*

## HomEq Servicing
## PAYMENT COUPON

HELEN GALOPE

| Amount Due By | Account Number | Amount Due |
|---|---|---|
| 06/01/09 | 9 | $9,327.62 |

Total Amount Enclosed



[ ] Check here if you are making Address & Phone number corrections on the reverse side.

**Make Check Payable To:**

HOMEQ SERVICING
P.O. BOX 79230
CITY OF INDUSTRY CA 91716-9230

0000001232B    0000302702

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE:
 I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100,Huntington Beach, CA  92647.
On August 13, 2012, I served a copy of the following document(s) described as:

**DECLARATION OF WILLIAM MATZ AND HELEN GALOPE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

On the interested parties in this action as follows:

See attached Mail List

**[x] BY CM/ECF –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).
**[ ] BY EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth herein.
**[ ] BY FAX –** I caused such document(s) to be transmitted facsimile from the offices located in Westminster, California this business day to the aforementioned recipients.
        I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: August 13, 2012

                                                        s/ Lenore Albert
                                                        Lenore Albert

**1**

**DECLARATION OF WILLIAM MATZ AND HELEN GALOPE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

Mailing List

For Defendant Western Progressive, LLC and
Defendant Deutsche Bank National Trust Company:

Eric D. Hauser, Esq.
Steven S. Son, Esq.
HOUSER & ALLISON
3760 Kilroy Airport Way, Suite 260
Long Beach, CA 90806
Telephone: (949) 679-1111
Fax: (949) 679-1112
Email: sson@houser-law.com

Ford Defendant BARCLAYS CAPITAL REAL ESTATE INC. d/b/a HOMEQ
SERVICING:
Scott H. Jacobs (SBN 81980)
shjacobs@reedsmith.com
Brandon W. Corbridge (SBN 244934)
bcorbridge@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  213.457.8000
Facsimile:   213.457.8080

**2**

**DECLARATION OF WILLIAM MATZ AND HELEN GALOPE IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*