Scott H. Jacobs (SBN 81980)
shjacobs@reedsmith.com
Brandon W. Corbridge (SBN 244934)
bcorbridge@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:   213.457.8000
Facsimile:    213.457.8080

Attorneys for Defendants
BARCLAYS BANK PLC and
BARCLAYS CAPITAL REAL
ESTATE INC. d/b/a HOMEQ
SERVICING

[*Additional counsel listed in the signature block*]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| HELEN GALOPE, an individual, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2007 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-BR4; WESTERN PROGRESSIVE, LLC; BARCLAYS BANK PLC; BARCLAYS CAPITAL REAL ESTATE INC. d/b/a HOMEQ SERVICING; OCWEN LOAN SERVICING, LLC; and DOES 4 through 10, inclusive,<br><br>Defendants. | Case No. 12-CV-00323 CJC (RNB)<br>Hon. Cormac J. Carney<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED COMPLAINT BY DEFENDANTS BARCLAYS CAPITAL REAL ESTATE INC. D/B/A HOMEQ SERVICING AND BARCLAYS BANK PLC; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:              October 15, 2012<br>Time:              1:30 p.m.<br>Courtroom:      9B<br><br>Action Filed:    March 1, 2012<br>Trial Date:       June 13, 2013 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

### TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 15, 2012 at 1:30 p.m. or as soon thereafter in Courtroom 9B of this Court, located at 411 West Fourth Street, Santa Ana, CA 92701, Defendants BARCLAYS BANK PLC and BARCLAYS CAPITAL REAL ESTATE INC. d/b/a HOMEQ SERVICING (collectively, "Barclays") will and hereby do move the Court for an order dismissing with prejudice Plaintiff Helen Galope's ("Plaintiff") third amended complaint (the "Complaint") as to Barclays (Claims I, II, IV, V, VI, VIII and IX).

Barclays moves the Court to dismiss Counts I and IX pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiff lacks standing under Article III of the Constitution and thus the Court does not have subject matter jurisdiction over those claims.  Barclays moves the Court to dismiss Claims I, II, IV, V, VI, VIII and IX pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff lacks standing to assert such claims under Article III of the United States Constitution and has otherwise failed to allege facts sufficient to state a claim upon which relief can be granted.  Specifically, the allegations of the Complaint, the exhibit attached thereto, and documents referenced in the Complaint demonstrate that, despite Plaintiff's claims of harm, the interest rate on Plaintiff's loan was never affected by the LIBOR rate and Plaintiff obtained more favorable terms under her loan modification than her prior loan terms.

On September 5, 2012, counsel for Barclays left a message with the answering service for Plaintiff's counsel, advising counsel of Barclays' motion and requesting that Plaintiff's counsel meet and confer as required by Local Rule 7-3.  On September 7, 2012, counsel for Barclays left another message for Plaintiff's counsel and thereafter sent an email to Plaintiff's counsel advising counsel of the basis for Barclays' motion as required by Local Rule 7-3.

1        This Motion is based on this Notice of Motion, the accompanying

2   Memorandum of Points and Authorities in support thereof, all other pleadings, papers

3   and the evidence submitted by the parties in this action, and such other evidence and

4   argument as the Court may permit.

5   DATED:  September 12, 2012           REED SMITH LLP

6

7                               By       /s/ *Scott H. Jacobs*

8                                 Scott H. Jacobs
                              Brandon W. Corbridge

9

10                    BOIES, SCHILLER & FLEXNER LLP

11                    Jonathan D. Schiller *(*of counsel; *pro hac
vice* application to be submitted*)*
jschiller@bsfllp.com

12                    James Meadows *(*of counsel; *pro hac
vice* application to be submitted*)*

13                    575 Lexington Ave., 7th Floor
New York, NY 10022

14                    Telephone:  212.446.2300
Facsimile:  212.446.2350

15

16                    David L. Zifkin (SBN 232845)
dzifkin@bsfllp.com

17                    225 Santa Monica Blvd., 11th Floor
Santa Monica, CA 90401

18                    Telephone:  310.395.5800
Facsimile:  310.578.7898

19                    SULLIVAN & CROMWELL LLP

20                    David H. Braff (of counsel; *pro hac vice*
application to be submitted)

21                    braffd@sullcrom.com

22                    Yvonne S. Quinn (of counsel; *pro hac
vice*   application to be submitted)
quinny@sullcrom.com

23                    Jeffrey T. Scott (of counsel; *pro hac vice*

24                    application to be submitted
scottj@sullcrom.com)

25                    125 Broad Street
New York, NY  10004

26                    Telephone:  212.558.4000
Facsimile:  212.558.3588

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Adam S. Paris (SBN 190963)
parisa@sullcrom.com
1888 Century Park East
Los Angeles, CA  90067
Telephone:  310.712.6600
Facsimile:  301.712.8800


Attorneys for Defendants
Barclays Bank PLC and
Barclays Capital Real Estate Inc. d/b/a
HomEq Servicing

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# Table of Contents

**Page**

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................... 2

III. LEGAL ARGUMENT .......................................................................................... 5

    A. Legal Standard For Motion To Dismiss.................................................... 5

        1. Motion To Dismiss For Lack Of Subject Matter Jurisdiction ................... 5

        2. Motion To Dismiss For Failure To State A Claim ................................ 5

    B. Plaintiff Lacks Article III Standing To Assert Her Sherman Act Claim (Count One) Because Documents Referenced In The Complaint Establish That The First Interest Rate Change Never Occurred ....................................................... 6

    C. Plaintiff Lacks Article III Standing To Assert Fraud (Claim IX) And Otherwise Fails To State A Claim For Fraud .................................................... 9

    D. Plaintiff Lacks Statutory Standing To Assert Her UCL Claims (Claims II and IV) And FAL Claim (Claim V) Because Her Loan Has Never Been Tied To LIBOR ................................................................................................................ 10

    E. Plaintiff's Aiding And Abetting Violation of § 17200 Claim (Claim VI) Fails Because She Has Not Asserted A Viable UCL Claim.......................................... 12

    F. Even If Plaintiff Had Statutory Standing, Her FAL Claim Fails To State A Claim And, In Any Event, Is Time-Barred......................................................... 12

        1. The Complaint Does Not Allege An FAL Violation Under Both Rule 8(a) Or Rule 9(b)............................................................................... 12

        2. The FAL Claim Is Barred By The Statute Of Limitations....................... 13

    G. Plaintiff Does Not Have Article III Standing To Bring, And Otherwise Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing (Claim VIII) .................................................................................. 14

        1. Plaintiff Does Not Have Article III Standing To Bring Her Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim ............... 14

        2. Plaintiff Has Failed To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Under California Law........... 15

IV. CONCLUSION................................................................................................... 16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright,*
   468 U.S. 737 (1984) ................................................................................................... 7

*Amarel v. Connell,*
   102 F.3d 1494 (9th Cir. 1996) ................................................................................ 7

*Archer v. United Rentals, Inc.,*
   195 Cal. App. 4th 807 (2011) ................................................................................ 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................... 6

*Blue Shield of Virginia v. McCready,*
   457 U.S. 465 (1982) ................................................................................................... 7

*Bower v. AT&T Mobility, LLC,*
   196 Cal. App. 4th 1545 (2011) ............................................................................. 11

*Casey v. U.S. Bank Nat'l Ass'n,*
   127 Cal.App.4th 1138 (2005) ............................................................................... 13

*DaimlerChrysler v. Cuno,*
   547 U.S. 332 (2006) ................................................................................................... 6

*Daniels-Hall v. National Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) ............................................................................. 6, 8

*Das v. WMC Mortg. Corp.,*
   831 F. Supp. 1147 (N.D. Cal. 2011) ................................................................. 15

*Engalla v. Permanente Med. Group, Inc.,*
   15 Cal. 4th 951 (1997) ........................................................................................... 10

*Foley v. Interactive Data Corp.,*
   47 Cal. 3d 654 (    ) ................................................................................................. 17

*Gerlinger v. Amazon.com Inc.,*
   526 F.3d 1253 (9th Cir. 2008) ........................................................................ 7, 10

*Guz v. Bechtel Nat'l, Inc.,*
   24 Cal. 4th 317 (2000) ........................................................................................... 17

*Howard Jarvis Taxpayers Ass'n v. City of La Habra,*
   25 Cal. 4th 809 (2001) ........................................................................................... 15

*Kasky,*
   27 Cal.4th 961 ........................................................................................................... 14

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ............................................................................. 14

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ....................................................................................... 5

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) .................................................................................. 11

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .......................................................................... 2

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................. 7, 10

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) .......................................................................... 3

*McClain v. Octagon Plaza, LLC*,
  159 Cal. App. 4th 784 (2008) ...................................................................... 17

*Northern Pacific Ry. v. U.S.*,
  356 U.S. 1 (1958) ........................................................................................... 7

*Pasadena Live, LLC v. City of Pasadena*,
  114 Cal. App. 4th 1089 (2004) .................................................................... 17

*StreamCast Networks, Inc. v. Skype Technologies, S.A.*,
  2006 WL 5441237 (C.D. Cal. Sept. 14, 2006) ............................................ 15

*Theme Promotions Inc. v. News America Marketing FSI*,
  546 F.3d 991 (9th Cir. 2008) .......................................................................... 8

*U.S. v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) .......................................................................... 2

*U.S. v. Socony-Vacuum Oil Co. Inc.*,
  310 U.S. 150 (1940) ....................................................................................... 7

*Vaughn v. Bay Environ. Manag., Inc.*,
  567 F.3d 1021 (9th Cir. 2008) ........................................................................ 6

*Wagner v. Benson*,
  101 Cal. App. 3d 27 (1980) .......................................................................... 16

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ........................................................................ 5

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ........................................................................ 5

*Wokowitz v. Redland Ins. Co.*,
  112 Cal. App. 4th 154 (2003) ...................................................................... 17

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ........................................................................ 6

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## STATUTES

Cal. Bus. & Prof. Code § 17200 et seq. ...................................................................... 10, 12

Cal. Bus. & Prof. Code § 17204 ...................................................................................... 10

Cal. Bus. & Prof. Code § 17500 et seq. ......................................................................... 10

Code Civ. Proc. § 338(a) ................................................................................................. 13

## RULES

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 5, 6

## OTHER AUTHORITIES

CA BAJI 10.38 ................................................................................................................. 15

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Barclays Bank PLC and Barclays Capital Real Estate Inc. d/b/a HomeQ Servicing (collectively, "Barclays") respectfully submit this memorandum of points and authorities in support of their motion to dismiss with prejudice Plaintiff Helen Galope's ("Plaintiff") Third Amended Complaint as to Barclays.

## I.   INTRODUCTION

The claims against Barclays must be dismissed because Plaintiff has not pled an injury in fact and thus lacks standing.  Plaintiff offers only two conclusory allegations of injury that are contradicted by loan documents incorporated by reference into the Complaint, and therefore may not be accepted as true.

First, Plaintiff alleges that she was injured by Barclays' attempted manipulation of LIBOR because her mortgage payments were **tied to** LIBOR.  That is demonstrably false.  It is undisputed that Plaintiff obtained a mortgage and entered into the original Note in December 2006.  The Note (referenced in the Complaint and later submitted to the Court by Plaintiff) had an initial fixed interest rate of 8.775% for the first two years, until January 2009.[1]  Beginning in January 2009, a mechanism for adjusting the interest rate periodically based on LIBOR would be used.  However, the Modification Agreement (attached as Exhibit A to the Complaint) establishes that in April 2008—at least eleven months **before** the LIBOR-based adjustment mechanism could have been triggered under the terms of Plaintiff's Note, Plaintiff sought and obtained a loan modification that fixed her annual interest rate at 5.500% for five years through April 1, 2013.  Accordingly, the loan documents conclusively establish that the LIBOR-based adjustment mechanism has **never** been triggered for this mortgage and will be triggered no sooner than April 1, 2013, if ever.

---

[1] Plaintiff incorrectly alleges that the initial interest fixed rate was 8.5%; the actual fixed rate for this period was 8.775%.  *Compare* Adjustable Rate Note, (Declaration of Helen Galope in Support of Opposition to Motion for Summary Judgment ("Galope Decl."), Ex. A., Dkt. No. 44-2 at p. 20 and Complaint ¶¶ 42, 45.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Second, Plaintiff apparently attempts to plead injury by alleging that Barclays engaged in a purported scheme to conceal material terms of the Modification Agreement by faxing to her a combination of legal- and letter-sized pages when her fax machine was loaded only with letter-sized pages.  This allegation is insufficient because it wholly fails to plead that Plaintiff suffered any actual injury as a result of the purported scheme.  The Complaint, and documents referenced therein, makes clear that the Modification Agreement benefited Plaintiff significantly because it reduced her obligation to pay interest at a rate of 8.775% under her Note to 5.500% and reduced her monthly mortgage payments by roughly $800 (from $3,817.13 to $3,027.02) through April 2013.[2]

Because the Complaint (including documents incorporated therein by reference) conclusively establishes that Plaintiff has suffered no harm as a result of the conduct alleged against Barclays, each cause of action asserted against Barclays should be dismissed with prejudice.[3]

## II.    STATEMENT OF FACTS

The pertinent facts set forth below are taken from the allegations of the Complaint, the documents incorporated therein by reference, the documents attached as exhibits to the Complaint, and loan documents referenced in the Complaint (*e.g.*, the Note) and authenticated by Plaintiff in declarations she has filed in this action.[4]

---

[2] Apparently recognizing that her state law claims are fundamentally flawed, Plaintiff also has tried to salvage her case by claiming that the interest for her mortgage was affected by conduct described in settlements that Barclays made with U.K. and U.S. agencies on June 27, 2012.  But this allegation is plainly false—and the U.K. and U.S. settlements are inapposite—because Plaintiff's loan was never tied to LIBOR.

[3] Barclays Bank PLC and Barclays Capital Real Estate Inc. d/b/a HomEq Servicing are not named as defendants with respect to Plaintiff's third and seventh causes of action and, accordingly, do not address those claims in this motion to dismiss.

[4] On a Rule 12(b)(6) motion, the Court may rely on "materials that are submitted with and attached to the Complaint" as well as "unattached evidence on which the complaint 'necessarily relies.'" *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  A plaintiff "necessarily relies" on a document "if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

On or about December 16, 2006, Plaintiff borrowed $522,000.00 from New Century Mortgage Corporation and executed an Adjustable Rate Note (the "Note"). Compl. ¶15; Galope Decl., Ex. A (Note) at p. 20 [Dkt. No. 44-2]. Defendant Barclays was designated as the loan servicer. Compl. ¶ 18.

Pursuant to Section 2 of the Note, Plaintiff agreed to "pay interest at a yearly rate of 8.775%," which would be subject to "change in accordance with Section 4 of [the] Note." Galope Decl., Ex. A (Note) at 20. Section 4(a) of the Note provides: "Change Dates [¶] The interest rate I will pay may change on the first day of **January, 2009** and on the same day of every 6th month thereafter. Each date on which my interest rate could change is called an 'Interest Change Date.'" *Id.* at 21 (emphasis added). Section 4 further provides that, "[b]eginning on the first Interest Change Date," Plaintiff's new interest rate would be calculated by adding 6.150% to "the average of Interbank offered rates for six-month dollar deposits in the London market ("LIBOR") as published in *The Wall Street Journal . . . .*" *Id.* Plaintiff thus agreed in writing that (a) the interest rate on the Note would be fixed at 8.775% for the first two years (from December 2006 through December 2008), and (b) on January 1, 2009, the rate was to adjust based on the LIBOR. *See id.*; *see also* Compl. ¶¶43-45; Declaration of William Matz, Esq. in Support of Plaintiff's Opposition to Motion for Summary Judgment ("Matz Decl.") ¶¶5 & 6, Dckt. No. 44-2 at 2 (stating, Plaintiff's "loan becomes a six-month adjustable after the initial two years, with a rate based on the six-month London Interbank Offered Rate").

In 2008, Plaintiff was hospitalized and fell behind on her mortgage payments. Compl. ¶ 53. To cure her default, Plaintiff obtained a loan modification agreement (the "Modification Agreement") on April 7, 2008—**before** January 1, 2009 (i.e., the

---

445, 448 (9th Cir. 2006)). Accordingly, the Court may consider loan documents that Plaintiff submitted in opposition to Defendant Deutsche Bank's motion for summary judgment. Plaintiff expressly vouched for their authenticity. Galope Decl., Dkt. No. 44-2 ¶¶ 6, 12. They are the core documents underlying the loan at the heart of this action and Plaintiff has referred to these documents and their contents throughout the Complaint. *See, e.g.*, Compl. ¶¶ 15, 20, 30, 32, 42.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

first Interest Change Date) when the interest rate under her Note was first set to adjust to a rate linked to LIBOR.  Compl. ¶ 54, Ex. A (Modification Agreement).  Plaintiff executed the Modification Agreement on or about April 17, 2008.  *Id.*, Ex. A at 5 (signature block).  Under the Modification Agreement, Plaintiff agreed in writing that her interest rate was fixed at 5.500%, "[e]ffective on 04/01/2008."  *Id.*, Ex. A § 1(c).  Section 1(c) of the Modification Agreement further provides:  "The date on which the interest rate change is next scheduled to occur is hereby changed to 04/01/2013."  *Id.*  Accordingly, the first Interest Rate Change date was modified from January 1, 2009 to April 1, 2013.  Plaintiff's interest rate thus was fixed at 5.500% for five years, and would not adjust to an interest rate linked to LIBOR until April 1, 2013.  By reducing the interest rate on Plaintiff's Note, the Modification Agreement also reduced Plaintiff's monthly payment by roughly $800 through April 1, 2013.  *Id.* § 1(b).

Plaintiff alleges that portions of the Modification Agreement she received via fax were missing because the fax transmission contained two legal size pages, but her fax machine printed those pages on letter size paper.  Compl. ¶¶ 75-76.  After executing the Modification Agreement, Plaintiff alleges she noticed that Section 1(d) of the Modification Agreement cut off at the bottom of page one and did not pick up again at page 2.  *Id.* ¶¶ 71-73.  Plaintiff alleges she contacted a representative of Barclays about the discrepancy she noticed in Section 1(d), but never demanded a complete copy of the document.  *Id.* ¶¶ 81-87.

Significantly, Section 1(c) of the Modification Agreement was set forth in full on the copy Plaintiff alleges she received and executed.  Section 1(b) expressly stated that the first Interest Rate Change date would be April 1, 2013.  Compl., Ex. A at § 1(c); *see also id.* at § 1(b) ("The date on which the New Monthly Payment change is next scheduled to occur is hereby changed to 05/01/2013.").  Thus, although Plaintiff claims she was "shocked and concerned that her modification payments may change on April 1, 2013" (Compl. ¶ 74), that fact was fully disclosed in the written Modification Agreement that she executed.  *Id.*, Ex. A.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Before** Plaintiff's monthly payments were set to change in April 2013, Plaintiff defaulted on her modified monthly mortgage payments. Compl. ¶¶ 87-88. Thereafter, on July 31, 2009, a Notice of Default was recorded on the subject property. *Id.* ¶ 88. On January 15, 2010, Plaintiff filed for bankruptcy protection. *Id.* ¶ 89.

### III. <u>LEGAL ARGUMENT</u>

**A. Legal Standard For Motion To Dismiss**

**1. Motion To Dismiss For Lack Of Subject Matter Jurisdiction**

Because standing under Article III of the Constitution pertains to a federal court's subject matter jurisdiction, it is properly raised in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "It is presumed that a cause lies outside [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A jurisdictional challenge under Rule 12(b)(1) "may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). The complaint's allegations are taken as true, "**unless** controverted by undisputed facts in the record." *Id.* (quotations and citation omitted). For example, a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Id.* Moreover, a court need not accept as true legal conclusions cast in the form of factual allegations. *Id.*

**2. Motion To Dismiss For Failure To State A Claim**

A motion to dismiss for lack of statutory standing is properly viewed as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Vaughn v. Bay Environ. Manag., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2008). Under Rule 12(b)(6), a motion to dismiss should be granted where the plaintiff has failed to allege sufficient facts to state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

12(b)(6) motion, courts accept the factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. However, courts need not accept as true conclusory allegations that lack an adequate basis in fact, self-contradictory allegations, unwarranted factual deductions, unreasonable inferences, or legal characterizations cast in the form of factual allegations. *Id.* at 678-79; *see also Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Even before *Iqbal*, courts routinely held they were "not required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004).

**B.  Plaintiff Lacks Article III Standing To Assert Her Sherman Act Claim (Count One) Because Documents Referenced In The Complaint Establish That The First Interest Rate Change Never Occurred**

A plaintiff invoking federal jurisdiction bears the burden of establishing Article III "standing for each claim he seeks to press" and "for each form of relief that is sought." *DaimlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (party invoking federal court's jurisdiction "bears the burden of establishing these elements" of standing). The "standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984).

To properly plead Article III standing to assert a particular claim, a plaintiff must sufficiently allege (1) a "concrete and particularized injury," (2) a "causal connection" showing that the injury is "fairly traceable to the challenged conduct," and (3) a likelihood that a favorable decision will redress the injury. *Lujan*, 504 U.S. at 560-61. In the antitrust context, a plaintiff must show that she "has suffered an injury which bears a causal connection to the alleged antitrust violation." *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008) (quoting *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996)). Specifically, where a private plaintiff cannot

show that she "personally paid a higher price . . . as a result of the agreement," she lacks standing to bring a claim under Section 1 of the Sherman Act.[5]  *Id.* at 1256.

Plaintiff's first cause of action for violation of the Sherman Antitrust Act § 1 is premised on the allegation that "plaintiff has been injured in her business or property in that she has been forced to pay interest on her long term investment of 30 years . . . based on the LIBOR rate fixed by defendants . . . which was substantially higher than what she would have paid in the absence of the [Sherman Act] violations."  Compl. ¶ 131.  Contrary to Plaintiff's conclusory (and thus deficient) allegation, the Note and Modification Agreement referenced in the Complaint, as well as certain of Plaintiff's other allegations, conclusively establish that the interest rate for her loan has **never** been based on LIBOR.[6]

*First*, Section 4(a) of the Note shows that the initial 8.775% rate was fixed for two years, until January 2009.  Galope Decl., Ex. A (Note).[7]  *Second*, long before the rate could become adjustable under the Note, in April 2008, Plaintiff entered into a

---

[5] Plaintiff cites two Supreme Court antitrust cases in her Complaint in support of her Sherman Act § 1 claim.  Compl. ¶¶ 36-37, 129 (citing *Northern Pacific Ry. v. U.S.*, 356 U.S. 1 (1958); *U.S. v. Socony-Vacuum Oil Co. Inc.*, 310 U.S. 150 (1940)).  Neither *Northern Pacific* nor *Socony-Vacuum* address or otherwise shed light on the standing requirements for a private citizen to maintain a civil claim under the Sherman Act.  *Cf. Blue Shield of Virginia v. McCready*, 457 U.S. 465, 472-80 (1982) ("Congress did not intend to provide a private remedy for all injuries that might conceivably be traced to an antitrust violation.").  All private plaintiffs asserting antitrust claims must adequately allege standing to bring those claims, which must include antitrust injury.  *See Theme Promotions Inc. v. News America Marketing FSI*, 546 F.3d 991, 1003 (9th Cir. 2008) ("Several factors are relevant in considering whether a plaintiff has established antitrust standing.  The most important is whether the plaintiff has established an antitrust injury.").

[6] Plaintiff also alleges in conclusory fashion that Barclays' alleged manipulation of LIBOR "reduc[ed] the value of plaintiff's property."  Compl. ¶ 132.  Plaintiff fails to provide even a single factual allegation that could serve as a basis for this statement, which is otherwise implausible on its face.  Therefore, the assertion should not be accepted as true as purported support for Plaintiff's claim of injury.  *See Daniels-Hall*, 629 F.3d at 998.

[7] Barclays notes that (but need not rely on) the evidence Plaintiff submitted in opposition to Defendant Deutsche Bank's motion for summary judgment only reinforces this indisputable fact.  Plaintiff's purported expert confirmed that the interest rate on Plaintiff's December 16, 2006 Note is "fixed for two years" and does not become adjustable until "after the initial two years."  Declaration of William Matz, Esq. ¶¶ 5 & 6 [Dkt. No. 44-2 at 2].

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Modification Agreement that (a) fixed the interest rate on her loan at 5.500%

2    "[e]ffective on 04/01/ 2008" (Compl., Ex. A, § 1(c)); and (b) established that "[t]he

3    date on which the interest change is next scheduled to occur [was also] changed to

4    04/01/2013." *Id.* Thus, the Note and Modification Agreement—both of which are

5    referenced in the Complaint—establish that (a) the interest rate would not be based on

6    LIBOR until the first Interest Rate Change date, and (b) the first Interest Rate Change

7    Date was April 1, 2013. As such, the interest rate for Plaintiff's loan has **never** been

8    based on LIBOR. In the face of these loan documents, any conclusory allegations to

9    the contrary cannot be accepted as true by the Court.

10        The Complaint also apparently attempts to suggest that the fixed 8.755%

11   interest rate under the Note and the fixed 5.5% interest rate under the Modification

12   Agreement were tied to LIBOR. *See e.g.*, Compl. ¶¶ 21, 40, 42, 59. However, these

13   are nothing more than conclusory allegations that the Note and Modification

14   Agreement controvert. In fact, the Note and the Modification Agreement identify the

15   particular circumstances under which the interest rate would be tied to LIBOR. Those

16   circumstances have not arisen because the first Interest Rate Change Date is not

17   scheduled to occur, if ever, until April 1, 2013. The Complaint indeed concedes that

18   nothing in the Note or the Modification Agreement suggests that the fixed interest

19   rates of 8.755% or the modified fixed interest rate of 5.500% were tied to LIBOR.

20   Compl. ¶ 43 (the Note "just plainly stated that the interest only period would be 8.5

21   [sic] percent interest rate over the next several years"); *id.*, Ex. A § 1(c). In sum, these

22   fixed rates were not tied to LIBOR and Plaintiff's conclusory allegations do not

23   plausibly suggest otherwise.[8]

24   _____

25   [8] Plaintiff attempts to distract the Court from this defect in her pleading by citing an
     email from a Barclays trader to another Barclays employee tasked with making
26   Barclays' U.S. Dollar LIBOR submissions, quoted in the Non-Prosecution Agreement
     between Barclays Bank plc and the United States Department of Justice Criminal
27   Division, Fraud Section. Compl. ¶ 40. This email is wholly irrelevant. It relates to
     Barclays' U.S. Dollar Three Month LIBOR submission for December 18, 2006.
28   However, Plaintiff's fixed rate was set on a *different* day, December 15, 2006.
     Compl. ¶ 15. Moreover, the loan documents show that, at the time the adjustment

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Because Plaintiff has failed to plead sufficiently that she has "suffered an injury which bears a causal connection to the alleged antitrust violation," (*Gerlinger*, 526 F.3d at 1255), Plaintiff lacks Article III standing to assert the Sherman Act § 1 claim and the Court does not have subject matter jurisdiction over it.[9]

## C. Plaintiff Lacks Article III Standing To Assert Fraud (Claim IX) And Otherwise Fails To State A Claim For Fraud

Plaintiff's fraud claim fails because: *first*, she does not have Article III standing to bring her fraud claim; and *second*, she has failed to state a claim of fraud under California law.  To survive a motion to dismiss on either ground, a complaint must sufficiently allege a "causal connection" showing that the injury is "fairly traceable" to the alleged fraud or, put differently, a "resulting damage" from the fraud.  *Lujan*, 504 U.S. at 560-61; *Engalla v. Permanente Med. Group*, Inc., 15 Cal. 4th 951, 974 (1997) (the elements of fraud in California are: (a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage).

Like her Sherman Act claim, Plaintiff's fraud claim depends on her allegation that "plaintiff has been financially injured in that she has made over $60,000.00 in interest payments based on manipulate [sic] market LIBOR" as opposed to an interest rate that is not tied to LIBOR.  Compl. ¶ 224.  But, as just described, Plaintiff's loan

---

mechanism first could have been triggered (it never was), it would have been tied to the U.S. Dollar Six Month LIBOR, not three month LIBOR.  Compl. ¶ 30.  Furthermore, this submission sought to move Barclays' LIBOR submission *downward*.  Therefore, even if it is assumed that the submission actually became effective, the request would have benefited Plaintiff because it would have caused her fixed rate to be lower.

[9] In addition to her failure to plead an antitrust injury sufficient for standing to maintain this claim, Plaintiff has also failed to properly allege that attempting to manipulate LIBOR is in fact a violation of the Sherman Act.  However, should the Court believe it needs to decide the issue of whether the alleged LIBOR manipulation constitutes a violation of the Sherman Act on a Rule 12(b)(6) motion, Barclays respectfully requests that the Court hold the issue in abeyance until the same issue currently pending in the United States District Court for the Southern District of New York under the caption, *In re LIBOR-Based Financial Instruments Antitrust Litigation*, MDL No. 2262 has been decided.  The opening brief in MDL No. 2262 is attached hereto as Exhibit A.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

has **never** been tied to LIBOR and thus Plaintiffs was not injured as a result of any alleged manipulation of LIBOR.  *See*, *supra* Section II.B.

### D.   Plaintiff Lacks Statutory Standing To Assert Her UCL Claims (Claims II and IV) And FAL Claim (Claim V) Because Her Loan Has Never Been Tied To LIBOR

Plaintiff has failed to establish that she has statutory standing to assert her claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., for the same reason she does not have standing to bring her Sherman Act and fraud claims—Plaintiff's loan has never been tied to LIBOR.

To have statutory standing to pursue a claim under the UCL, a private plaintiff must allege sufficient facts to demonstrate that she "has suffered injury in fact and has lost money or property as a result of" the alleged unfair business practice.  Cal. Bus. & Prof. Code § 17204.  In other words, a private plaintiff "must establish that he or she has personally suffered" a loss of money or property.  *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 812 (2011) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011)).  The same standing requirement applies to a cause of action under the FAL.  *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1555 (2011) ("Like Section 17200, Section 17500 requires an individual suing under the statute to have suffered injury in fact and to have lost money or property as a result of such unfair competition) (citations and quotations omitted).  Plaintiff cannot establish standing under either statute.

Like Plaintiff's deficient Sherman Act and fraud claims, Plaintiff's principal alleged injury under the UCL and FAL is that "plaintiff has been injured in her property in this [*sic*] she has been forced to pay interest based on the LIBOR rate fixed by defendants and their co-conspirators substantially higher than those she would have paid in the absence of a violations."  Compl. ¶ 138(f) (UCL claim); *see also id.* ¶¶

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

181, 182 (FAL claim).[10]  But this alleged injury cannot be accepted as true because it is contradicted by documents referenced in the Complaint.  As explained above, the Note and the Modification Agreement conclusively establish that the foregoing allegations are false and that Plaintiff's interest rate has **never** been based on LIBOR because the first Interest Rate Change Date **never** occurred.  *See*, *supra* II.B.

Plaintiff's secondary allegations that she was harmed by the purported "missing fax page scheme" are false because—as the Complaint and documents referenced therein make clear—Plaintiff **benefitted** from the Modification Agreement.  It is undisputed that the Modification Agreement reduced her interest rate from 8.775% to 5.500% and reduced her monthly mortgage payment by roughly $800 (from $3,817.13 to $3,027.02) through April 2013.  Compl. ¶¶ 62-64, Ex. A.  Plaintiff likewise concedes that the Modification Agreement cured her then existing default under her original Note.  *See id.* ¶ 54 ("To cure the default, plaintiff obtained a loan modification on April 7, 2008").

Finally, insofar as Plaintiff attempts to allege that the purported "missing fax page scheme" deprived her of notice of the change in her monthly payments in April 2013, the allegation fails to establish injury in fact for two reasons.  *See* Compl. ¶ 165.  First, the documents referenced in her Complaint show that she in fact received notice.  The Modification Agreement she received clearly discloses that "[t]he date on which the New Monthly Payment change is next scheduled to occur is hereby changed to 05/1/2013."  Compl., Ex. A § 1(b).  Second, even if Plaintiff sufficiently alleged non-disclosure (she has not), she did not suffer any economic harm as required under the UCL and FAL.  It is undisputed that Plaintiff defaulted on her modified mortgage and declared bankruptcy in January 2010—more than three years before the first New Monthly Payment change date under the Modification Agreement.

---

[10] Plaintiff's other ground for claiming a violation of the FAL based on the alleged "missing fax page scheme" is addressed in Section III-E, *infra*.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

In sum, Plaintiff lacks statutory standing to bring her UCL and FAL claims because she has not alleged an economic injury as a result of the alleged unfair business practices and unfair advertising.

**E.    Plaintiff's Aiding And Abetting Violation of § 17200 Claim (Claim VI) Fails Because She Has Not Asserted A Viable UCL Claim**

"Aiding and abetting" is not a cause of action in itself but, rather, is a derivative theory of liability dependent upon the existence of another tort and specific facts establishing the defendant's agreement and substantial assistance in the commission of a tort by another. *See Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1144 (2005) (liability under a theory of aiding and abetting requires proof that the defendant (1) knows the conduct of another is a breach of duty and (2) gives substantial assistance to the other in committing the breach).

Plaintiff's aiding and abetting of § 17200 (i.e., the UCL) claim is predicated on the same "'missing fax page scheme" as her fourth cause of action for violation of the UCL. *Compare* Compl. ¶¶ 187-188 *with id.* ¶ 161. In other words, Plaintiff alleges that her fourth cause of action is the principal claim upon which the aiding and abetting claim is dependent. Since, Plaintiff lacks standing to assert the underlying UCL claim (*see*, *supra* Section II.D.), Plaintiff's derivative aiding and abetting of § 17200 claim fails.

**F.    Even If Plaintiff Had Statutory Standing, Her FAL Claim Fails To State A Claim And, In Any Event, Is Time-Barred**

**1.    The Complaint Does Not Allege An FAL Violation Under Both Rule 8(a) Or Rule 9(b)**

The FAL proscribes false advertising and the use of an untrue or misleading statement in selling real or personal property or personal services. FAL claims based on fraud, like the one brought by Plaintiff, are subject to the heightened pleading standard of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009). "The question of whether [a representation] constitutes advertising turns upon whether the content of the message constitutes commercial speech." *Id.* "The content

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of a message that constitutes commercial speech 'typically means that the speech consists of representations of fact about the business operations, products, or services of the speaker (or the individual or company that the speaker represents), made for the purpose of promoting sales of, or other commercial transactions in, the speaker's products or services.'" *Id.* (quoting *Kasky*, 27 Cal.4th at 961.)

Plaintiff's FAL claim is premised on the allegation that the practice "of faxing over loan documents where the loan terms are located on the bottom of two legal size documents that are sandwiched between two letter size documents" constitutes a violation of the FAL.  Compl. ¶¶ 161a, 175; *see also id.* ¶ 174 ("The letter and agreement attached as Exhibit A which stated that it was a modification of plaintiff's note was an advertisement as that term is defined by Bus & Prof Code § 17500").  Despite Plaintiff's bald assertion, this alleged practice simply is not an advertisement—that is, it is not commercial speech about the quality of any product or service offered by Barclays.  On the contrary, the allegation merely concerns the physical character of pages that were transmitted to Plaintiff via fax.  To the extent Plaintiff's FAL claim is based on this alleged practice, it fails to allege a false advertisement as required under the FAL.

Plaintiff also attempts to repackage her LIBOR allegations as purported acts of false advertising on a theory that the editorial decisions of the *Wall Street Journal* and other publications to print LIBOR were acts of commercial speech by Barclays.  Compl. ¶¶ 178-81.  As discussed above, once again, Plaintiff's failure to allege any cognizable injury resulting from Barclays' alleged conduct deprives her of standing to maintain this claim.  *See, supra*, II.B, II.D.  Moreover, Plaintiff has failed to provide any plausible—much less particularized—allegations linking Barclays to any statement printed by the *Wall Street Journal* or any other publication.

## 2.    The FAL Claim Is Barred By The Statute Of Limitations

Actions for false advertising under the FAL are subject to a three-year statute of limitations period.  Code Civ. Proc. § 338(a) (providing a default three year statute of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

limitations for actions created by statute); *see also StreamCast Networks, Inc. v. Skype Technologies, S.A.*, 2006 WL 5441237, *9 n.8 (C.D. Cal. Sept. 14, 2006) ("To the extent that [plaintiff] also purports to state a claim for false advertising under Cal. Bus. & Prof. Code § 17500, that claim is subject to a three-year statute of limitations and would likewise be barred."). A cause of action ordinarily accrues and the statute of limitations begins to run when a suit may be maintained, which typically occurs when the alleged misconduct occurred. *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 815 (2001).

Plaintiff alleges that the alleged false advertising of faxing legal-sized pages of the Modification Agreement occurred on April 10, 2008, (Compl. ¶ 63), and that she executed the agreement on April 17, 2008. Compl., Ex. A (Modification Agreement) at 5 (signature block).[11] As such, the FAL cause of action accrued by no later than April 17, 2008. *See Das v. WMC Mortg. Corp.*, 831 F. Supp. 1147, 1159 (N.D. Cal. 2011) (California statutory claim "accrued at the time that the loan documents were signed"). Plaintiff, however, did not initiate this action until March 1, 2012—more than three years after receiving the fax with the allegedly incomplete Modification Agreement and executing it. Insofar as her FAL claim is based on this faxed document, it is barred by the three-year statute of limitations.

### G. Plaintiff Does Not Have Article III Standing To Bring, And Otherwise Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing (Claim VIII)

Plaintiff's breach of the implied covenant of good faith and fair dealing claim fails because: *first*, she does not have Article III standing to bring it; and *second*, she has failed to state a claim under California law.

#### 1. Plaintiff Does Not Have Article III Standing To Bring Her Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim

Plaintiff's breach of the implied covenant of good faith and fair dealing claim is

---

[11] Moreover, she admits she noticed that certain pages of her copy appeared incomplete. Compl. ¶¶ 71-79.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

premised on the same two allegations as the UCL claim:  (1) "manipulat[ing] the LIBOR rate on both the original loan (Note) and the modification thereof," (Compl. ¶ 207); and (2) the alleged "'missing fax page scheme." *Id.* ¶ 209.  As established above, Plaintiff has not alleged any injury in fact that is fairly traceable to this alleged conduct:  (a) Plaintiff's loan has **never** been tied to LIBOR because the first Interest Rate Change Date has **not** occurred, (b) the Modification Agreement that Plaintiff received and executed disclosed the Interest Rate Change Date of April 1, 2013, which has yet to occur, and (c) Plaintiff admits that she filed for bankruptcy due to illness and not related to any action by Defendants. *See*, *supra* Sections II.B., II.D., II.F.

### 2.    Plaintiff Has Failed To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Under California Law

The implied covenant of good faith and fair dealing ensures that neither party will do anything to deprive the other party of the benefits of the contract. *Wagner v. Benson*, 101 Cal. App. 3d 27, 33 (1980).  It is limited to "assuring compliance with the express terms of the contract;" it does not impose additional obligations on the parties. *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093-94 (2004); *see also Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000).  The implied covenant must rest upon the existence of some specific contractual obligation, not general public policy interests that are not directly tied to the contract's purpose. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683-684, 690.  Further, because the implied covenant can only arise from "an existing contract . . . [it] does not require parties to negotiate in good faith prior to any agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008).  To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must make a plausible allegation of resulting damages. *See* CA BAJI 10.38; *Wokowitz v. Redland Ins. Co.*, 112 Cal. App. 4th 154, 162 (2003).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*First*, Plaintiff has failed to state a claim because she has not plausibly alleged any damages resulting from any alleged breach of the implied covenant of good faith and fair dealing.  *See*, *supra* Section II.G.1.; *see also*, *supra*, *id.* II.B., II.D., II.F.

*Second*, the documents referenced in the Complaint establish that the alleged breaches did not occur.  The allegation of manipulating the LIBOR rate on Plaintiff's loan fails to allege a breach because the Note and Modification Agreement conclusively establish that LIBOR has not affected Barclays' performance of any obligation under either agreement.  Plaintiff's interest rate was never tied to LIBOR. *See* Galope Decl., Ex. A (Note) at 20-21; Compl., Ex. A (Modification Agreement) §1(c).  The alleged "'missing fax page scheme" also fails because the alleged conduct occurred **before** Plaintiff entered into the Modification Agreement.  *McClain*, 159 Cal. App. 4th at 799 (breach of implied covenant can only arise from "an existing contract").

## IV.   CONCLUSION

For the foregoing reasons, each cause of action asserted against Barclays in the Complaint should be dismissed with prejudice.

DATED:  September 12, 2012          REED SMITH LLP


By  _____/s/ *Scott H. Jacobs*_____
　　　Scott H. Jacobs
　　　Brandon W. Corbridge
　　　Attorneys for Defendant
　　　Barclays Bank PLC and
　　　Barclays Capital Real Estate Inc.
　　　d/b/a HomEq Servicing

BOIES, SCHILLER & FLEXNER LLP
Jonathan D. Schiller *(of counsel; pro hac vice* application to be submitted*)*
jschiller@bsfllp.com
James Meadows *(of counsel; pro hac vice* application to be submitted*)*
575 Lexington Ave., 7th Floor
New York, NY 10022
Telephone:  212.446.2300
Facsimile:  212.446.2350

David L. Zifkin (SBN 232845)
dzifkin@bsfllp.com
225 Santa Monica Blvd., 11th Floor
Santa Monica, CA 90401
Telephone:  310.395.5800
Facsimile:   310.578.7898


SULLIVAN & CROMWELL LLP

David H. Braff (of counsel; *pro hac vice*
application to be submitted)
braffd@sullcrom.com
Yvonne S. Quinn (of counsel; *pro hac
vice*   application to be submitted)
quinny@sullcrom.com
Jeffrey T. Scott (of counsel; *pro hac vice*
application to be submitted
scottj@sullcrom.com)
125 Broad Street
New York, NY  10004
Telephone:  212.558.4000
Facsimile:  212.558.3588


Adam S. Paris (SBN 190963)
parisa@sullcrom.com
1888 Century Park East
Los Angeles, CA  90067
Telephone:  310.712.6600
Facsimile:  301.712.8800

REED SMITH LLP
A limited liability partnership formed in the State of Delaware