Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Plaintiff, HELEN GALOPE
*On behalf of herself and all others similarly situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN GALOPE, an individual, *on behalf of herself and all others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, et al, <br> Defendants. | CASE NO. SACV 12 00323-CJC (RNBx) <br><br> Assigned to the Hon: Cormac J. Carney <br><br> **PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** <br><br> [Request for Judicial Notice] <br> DATE: October 15, 2012 <br> TIME: 1:30PM <br> DEPT: 9B |

i

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.      Facts ..........................................................................................................1

II.     Law ...........................................................................................................4

III.    Legal Argument .........................................................................................5

      a.  Plaintiff Meets the "Foreseeable" test for Standing under Clayton §4 .........................................................................................5

      b.  Galope Also Has Standing to Sue for Barclay's Participation in Market Manipulation of the LIBOR rate index which was an Unlawful, Unfair and Fraudulent Business Practice .............................10

      c.  Plaintiff Has Standing to Bring the UCL Claims...................................15

      d.  The Market Manipulation of the LIBOR rate and Deceptive Manner the Contract Was Present Were Misleading Advertisements ......................................................................................16

      e.  Standing...............................................................................................16

      f.  Plaintiff has Standing to Sue for Breach of Good Faith & Fair Dealing ................................................................................................18

IV.     Conclusion................................................................................................18

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

TABLE OF AUTHORITIES

**<u>Cases:</u>**

Allied Grape Growers v Bronco Wine Co, 203 CalApp3d 432 (1988) ................13

Atl Richfield Co v USA Petroleum Co, 495 US 328 (1990)...............................7, 9

Balderas v Countrywide Bank cv-10-55064 (9th Cir 2011)....................................5

Blue Shield v McCready, 477 US 465, 107 Sct 2540 (1982)..................................6

Carma Developers, Inc v Marathon Develop. Cal., Inc., 2 Cal4th 342 (1992) .......17

Casey v. U.S. Bank Nat. Assn., 127 Cal. App. 4th 1138 ........................................4

Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th

163 (1999) ....................................................................................................5. 17

Chasnik v Bank of America, No. cv-11-01324 DMG (CD Cal 7/20/11) ................5

Chern v Bank of America, 15 Cal3d 866 (1976) .................................................16

Eastman Kodak v Image Technical Servs, Inc, 504 US 451 (1992).......................7

Gerlinger v Amazon.com, Inc. 526 F3d 1253 (9th Cir 2008) ................................6

Hewlett v. Squaw Valley Ski Corp., 54 Cal. App. 4th 499 (1997)...................5, 18

In re Gilead Securities Litig., 536 F3d 1049 (9th Cir 2008) ..................................5

In re Text Messaging Antitrust Litig, 630 F3d 622 (7th Cir 2010) .........................8

Joslin v HAS Ins Brok. 184 CalApp3d 369 (1986) ...............................................5

Kwikset Corp. v Sup. Court, 51 Cal 4th 310 (2011) Id. at 323 ..............................15

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,

507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993).............................4

Microsoft Corp. v A-Tech Corp., 855 F.Supp. 308, 313 (CD Cal 1994) ..............13

Mohamed v. Jeppesen Dataplan, Inc., 579 F.3d 943, 949 (9th Cir. 2009). .............4

PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*        *SACV12-323-CJC (RNBx)*

Northern Pacific Ry v U.S., 356 US 1 (1958) .......................................................9

Oltz v St Peters Cmty Hosp, 861 F2d 1440 (9th Cir 1988).......................................7

People v Toomey, 157 CalApp3d 1 (1985) ..........................................................12

Reese v. Wal-Mart Stores, Inc., 73 Cal. App. 4th 1225 (1999)...........................5, 17

Resort Car Rental System, Inc v FTC, 518   F.2d   962, 964 (9th Cir. 1975)..........16

Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal. 4th 553 (1998).........5, 17

Studio Unions v Loews, Inc. 193 F3d 51 (9th Cir 1951) ........................................6

Summit Tech., Inc. v. High-Line Med. Instruments Co., 933 F. Supp. 918

(C.D. Cal. 1966)  ........................................................................................5, 17

Theme Promotions, Inc. v News America Marketing FSI, 546 F3d 991 (9th

Cir 2008)..........................................................................................................6

U.S. v Container Corp of Am, 393 US 333 (1969)..................................................8

U.S. v Socony-Vacuum Oil Co. Inc., 310 US 150 (1940) ...........................8, 9, 10

Walker v. Countrywide Home Loans, Inc., 98 Cal. App. 4th 1158 (2002) .......5, 17

Washington Mutual Bank  v Superior Court, 75 Cal App4th 773(1999) ..............13

Wilner v. Sunset Life Ins. Co., 78 Cal. App. 4th 952 (2000)  ...........................5, 17

Motors, Inc. v Times-Mirror Co., 102 CalApp3d, 735, 741-742 (1980)...............17

Southwest Marine, Inc. v Triple A Machine Shop, Inc., 720 F.Supp. 805 808

(ND Cal 1989) ................................................................................................17

**Statutes:**

Cal. Bus. & Prof. Code § 17200...................................................................passim

Cal. Bus. & Prof. Code §17500 ...................................................................passim

Cal. Civ. Code §51.......................................................................................passim

Cal Civ Code §1623.....................................................................................passim

Cal Civil Code §1668...................................................................................passim

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Cal. Civ. Code § 2954.4...............................................................passim

Cal. Penal Code § 308.................................................................passim

Cal. Pub. Res. Code § 4511..........................................................passim


**Federal Statutes:**

Commodity Exchange Act Sections 6(c), 6(d) and 9(a)(2) ....................................11

7 USC §9 ..............................................................................11, 13

7 USC§13 ........................................................................11, 12, 13

15 USC §1 .............................................................................passim

15 USC §2 .............................................................................passim

15 USC §4 .............................................................................passim

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     Facts

"Plaintiff Helen Galope ("Plaintiff") filed the operative putative class action complaint on July 20, 2012 alleging violations of the Sherman Antitrust Act, violations of California Business & Professions Code §§ 17200 and 17500, wrongful foreclosure, breach of good faith and fair dealing, and fraud." (Dkt. No. 95)

The court is already very familiar with the facts in this case. Ms. Galope refinanced her home in December 2005 and was provided an Interest Only Adjustable Rider Loan based on LIBOR.

The interest only period was initially fixed at approximately 8.775%.

In 2008 she tried to modify her loan and that modification stirred up a hornets nest. She eventually sought legal advice from Mr. Laverty and stopped making her loan payments because she did not know what the terms of her loan would be after April 2013.  She could not locate those terms because her loan documents were faxed to her and there was no warning that the two pages containing those terms were placed on legal size paper. As such, the terms were cut off when the fax printed out on letter size paper. Because, the signature line was within the margins, Ms. Galope did not immediately realize the document failed to contain these terms. Ms. Galope demanded the missing terms and HomEq refused to provide them to her.  Defendant HomEq was servicing her loan and then at some point transferred servicing rights to defendant Ocwen.  After Ms. Galope refused to continue paying on an uncertain and incomplete loan package, Defendants initiated nonjudicial foreclosure. Plaintiff sought bankruptcy protection and when that did not resolve the problem, she filed this action.

Defendants Western Progressive, LLC, Deutsche Bank National Trust Company and Ocwen Loan Servicing, LLC have filed a motion for summary judgment which is

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

under submission with the court.

Defendants Barclays Bank plc and Barclays Capital Real Estate, Inc. have now appeared and responded to the third amended complaint by way of a motion to dismiss.

The moving defendants contend that plaintiff lacks standing to proceed against them under antitrust laws.

On June 27, 2012 the CFTC imposed the largest civil penalty ever against Barclays (d/b/a HomeEq) for unlawfully manipulating the LIBOR market rate during the time Galope was given her loan based on LIBOR and modification thereon. Barclays was fined $454 million dollars for its conduct of market manipulation.

Defendants contend that because Ms. Galope's LIBOR Loan contained an Interest Only portion at 8.5%, she is not a proper representative for this class.

However, Ms. Galope's particular loan structure and what may or may not have occurred to loan refinance offers and property values if LIBOR was not manipulated is not the correct measure for standing on a price fixing case because that is too speculative. The proper measure for standing is whether or not Ms. Galope was a customer/consumer of a LIBOR loan, or at the very least had her loan structured in a pool where the servicer was the same entity manipulating the LIBOR rate which affected the mortgage backed securitized trust that Ms. Galope's loan was earmarked for and transferred into.

Injury to Ms. Galope was foreseeable, clearly within the target area and passes the direct injury test.

Ms. Galope alleged she did not know that Barclays was manipulating the LIBOR rate when she entered into her home loan and signed the note which was based on LIBOR. She further alleged that if she had known her servicer could manipulate the market rate of the loan she was offered, she would not have chosen that refinance package. She signed her note when the economy was still thriving; she had equity in her

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

home; and she could have refinanced elsewhere.

It is foreseeable that no average customer would borrow money based on a rate that would or could be manipulated and fixed.  Defendants' LIBOR manipulation caused Plaintiffs to pay more, receive less, or both on LIBOR-based financial loans than they would have in the absence of Defendants' collusion.

Control over the market is not in itself a violation.  However, by controlling and cornering the market, market makers like Barclays and Deutsche Bank can illegally maintain artificial price structures in the loans and loan pools they are manipulating. Market domination is thus a starting point for price fixing.  Multiple market makers, like the sixteen (16) banks used for LIBOR, created a potential for collusion and price fixing. Plaintiff adequately pleaded the Barclays Defendants and Deutsche Bank were some of the largest financial institutions in the world and had substantial control over the market. Price fixing violates the antitrust laws and results in damage to the customers who are injured as a result of the collusion in pricing.

On June 27, 2012 it was announced that Barclays Bank plc and Barclays Capital Real Estate Inc. reached a deal with several regulators for manipulating or attempting to manipulate the LIBOR rate (e.g. price fixing) and fraud from 2005 through 2009.

Various Swap traders were involved. (TAC ¶44) (See, RJN MSJ Appendix A to the Non-Prosecution Agreement, dated June 26, 2012 between the United States Department of Justice Criminal Division, Fraud Section, and Barclay's Bank PLC)

In August, Deutsche Bank AG announced that some of its staff was also involved in the LIBOR rate manipulation scandal.

Procedurally, Barclays requested the MDL panel to transfer this case to the in re LIBOR Litigation cases in the Southern District of New York.  The MDL panel transferred the case. Then they reversed that decision after the New York court clerk

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACVI2-323-CJC (RNBx)*

informed the panel that the MDL litigation had 4 classes of plaintiffs. However, there was no class for borrowers.  As such, the moving papers that defendant has attached to their points and authorities as an exhibit are inapposite.

## II.    Law

First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc*., 579 F.3d 943, 949 (9th Cir. 2009). "[n]on-conclusory factual allegations in the complaint must be treated as true, even if the allegations seem incredible." Id. "If that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Id. (quoting Iqbal, 129 S.Ct. at 1949). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. "In reviewing the [motion] "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." *Casey v. U.S. Bank Nat. Assn.,* (2005) 127 Cal. App. 4th 1138.

In other words, the plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Id*. In conducting the above analysis, a court must accept all factual allegations as true even if doubtful in fact. *Twombly*, 550

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*              *SACV12-323-CJC (RNBx)*

U.S. at 555. Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. *Chasnik v Bank of America Home Loans Servicing, LP*, No. CV 11-01324 DMG (JCGx) (CD Cal 7/20/11).

"Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374.)

"[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1057 (9th Cir. 2008)." *Balderas v Countrywide Bank, N.A.,* 10-55064 (9th Cir. 2011) at pg. 21516.  "A complaint containing allegations that, if proven, present a winning case is not subject to dismissal under 12(b)(6), no matter how unlikely such winning outcome may appear to the district court."  *Balderas v Countrywide Bank, N.A.,* 10-55064 (9th Cir. 2011) at pg. 21517.

### III.   Legal Argument

**A. Plaintiff Meets the "Foreseeable" Test for Standing under Clayton §4.**

Defendants contend plaintiff lacks standing. Defendant summarily speculate that defendants' collusive effort of fixing and manipulating the LIBOR rate had no impact on property values or the initial rate given to the plaintiff on her LIBOR Interest Only Adjustable Rate Mortgage loan.

There are two direct injury groups in antitrust price fixing litigation which virtually always pass the standing test: (1) consumers/customers, and (2) the violators competitors.

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Ms. Galope falls squarely in the first category because she was defendants'
customer.

The "target area" test was first discussed by the Ninth Circuit in *Studio Unions v
Loews, Inc.* 193 F2d 51, 54-55 (9th Cir 1951), cert denied, 342 US 919, 72 SCt 367
(1952).  The "target area" test only requires the plaintiff to show that he is within that
area of the economy which is endangered by a breakdown of competitive conditions in a
particular industry. The test gives a strong preference to customers/consumers who are
injured like Ms. Galope.

In 1982, the United States Supreme Court (without addressing Studio Unions),
broadened the test to one of "foreseeability" in the case of *Blue Shield v McCready*, 477
US 465, 107 SCt 2540 (1982).

The Ninth Circuit follows this broader approach.

Defendants rely on *Gerlinger v Amazon.com, Inc*. 526 F3d 1253, 1255 (9th Cir
2008), and *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1004
(9th Cir. 2008).

In *Gerlinger v Amazon.com* the plaintiff bought books from amazon.com. He sued
alleging that he was injured from *Amazon.com's* marketing agreement with Borders
wherein Borders would sell their books on Amazon's site and Amazon would pay
Borders a commission for each book sale. The plaintiff was not able to allege that he
bought a book from Amazon.com at an increased price due to this agreement between
Amazon.com and Borders Books. As such, the Ninth Circuit correctly concluded that
plaintiff had no standing.  However, this does not support dismissal of the facts alleged
in this case. Unlike Gerlinger, here plaintiff was locked into a 30 year investment.
Plaintiff clearly alleged that plaintiff did not receive any benefit when Barclays
artificially fixed the LIBOR rate lower even though her loan was an Adjustable

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Mortgage based on LIBOR.  The collusion distorted the transactions so Plaintiffs paid
more or received less than they would have in a market free from Defendants' collusion.
This is equally true for instruments sold to Plaintiffs by third parties or Defendants'
affiliates or subsidiaries: the prices and rates of return were affected by Defendants'
unlawful behavior.

      Furthermore, her investment was long term.  She borrowed $x secured by her real
property by purchasing a 30 year Interest Only Adjustable Rate Mortgage LIBOR Note
in December 2005.  The Supreme Court has recognized parties who are locked into a
transaction may be especially vulnerable to the impacts of anticompetitive behavior as
they have no opportunity (or only a costly opportunity) to change the transaction's terms.
*See Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 477 (1992) .

      In order to state a Section 1 claim under the rule of reason, plaintiffs must plead
four separate elements. First, plaintiffs must plead facts which, if true, will prove "(1) a
contract, combination or conspiracy among two or more persons or distinct business
entities; (2) by which the persons or entities intended to harm or restrain trade or
commerce among the several States, or with foreign nations; (3) which actually injures
competition." *Id.* at 1047; *see also Oltz v. St. Peter's Cmty. Hosp.,* 861 F2d 1440, 1445
(9th Cir. 1988) (same). In addition to these elements, plaintiffs must also plead (4) that
they were harmed by the defendant's anti-competitive contract, combination, or
conspiracy, and that this harm flowed from an "anti-competitive aspect of the practice
under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.,* 495 US 328, 334, 110 S.Ct.
1884, 109 L.Ed.2d 333 (1990). This fourth element is generally referred to as "antitrust
injury" or "antitrust standing." *See, e.g., id. 675 F3d 1198*

     *In sketching an outline of injury, "*A horizontal agreement (either explicit or tacit)
to set prices may injure competition because the result of such an agreement, "if

**7**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*       *SACV12-323-CJC (RNBx)*

effective, is the elimination of one form of competition," namely price. *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 213-14, 60 S.Ct. 811, 84 L.Ed. 1129 (1940) (quoting *United States v. Trenton Potteries Co.,* 273 U.S. 392, 397, 47 S.Ct. 377, 71 L.Ed. 700 (1927))." *675 F3d 1198*

*That horizontal agreement was adequately in the Galope complaint. Galope alleged defendants Barclays, Deutsche Bank and other traders colluded to fix LIBOR from 2005 to 2009. Instances of admitted manipulation were memorialized in the Prosecution Agreement Barclays entered into on June 27, 2012.*

The LIBOR-setting process described in the Prosecution Agreement noted proof of collusion: all without regulatory oversight. This is an industry structure conducive to collusion, which makes an inference of collusion plausible. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010) (Posner, J.) ("[A]n industry structure that facilitates collusion constitutes supporting evidence of collusion.") ("*Text Messaging*").

The messages sent between in house and outside traders to Barclays in order to set the LIBOR rate periodically from 2005 to 2009 is proof of collusive behavior.  In *United States v. Container Corp. of Am.*, 393 U.S. 333 (1969), the Supreme Court held that such behavior, standing alone, was sufficient to establish an agreement to exchange price information, which itself meets the Sherman Act's agreement requirement.

Galope is alleging price fixing by Deutsche Bank, Barclays and others.  Galope's case is one of price fixing based on LIBOR manipulation which has already been admitted to by Barclays and by Deutsche Bank.  Such agreements are considered illegal, per se. *U.S. v Socono-Vacuum Oil Co. Inc.*, 310 US 150 (1940).

Agreements to fix prices in interstate commerce are unlawful *per se* under the Sherman Act, and no showing of so-called competitive abuses or evils which the

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

agreements were designed to eliminate or alleviate may be interposed as a defense. *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150, 210, 218 (1940).

Consequently, anticompetitive behavior standing has been alleged.

The second component of standing is antitrust standing. "Specifically, to plead this element, plaintiffs must allege facts that if taken as true would allow them to recover for "an injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1102 (9th Cir. 1999) (quoting *Atl. Richfield,* 495 U.S. at 334, 110 S.Ct. 1884) (internal quotation marks omitted)."

Here, plaintiff lost the opportunity to obtain financing of her home based on an independent market rate. Such agreements have been "conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use" because of "their pernicious effect on competition and lack of any redeeming virtue." *Northern Pacific Ry. v. U.S.*, 356 US 1, 5 (1958).

This is exactly the type of injury the antitrust laws were enacted to forestall.

It is undisputed that Galope borrowed money on the financing of her home from Barclays and she received an Interest Only LIBOR Adjustable Rate loan that extended out 30 years. Defendant's interpretation of the meaning behind the contract is a disputable fact, that is best left to the end of discovery in a later proceeding.

Agreements to fix prices in interstate commerce are unlawful *per se* under the Sherman Act, and no showing of so-called competitive abuses or evils which the agreements were designed to eliminate or alleviate may be interposed as a defense. *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150, 210, 218 (1940).

Both Ms. Galope and expert witness William Matz have supplied declarations that

**9**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Ms. Galope and those similarly situated would not borrow money from an entity that could fix the interest rate at which the borrower was required to pay in the future.

Defendants contend that there was no harm because Ms. Galope was paying 8.775% interest on her loan at the time the LIBOR manipulation was occurring through to 2009. Defendant's argument assumes that the 8.775% fixed interest only rate assigned to Ms. Galope's LIBOR Rate loan by Barclays was reasonable.  As explained by the US Supreme Court in *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150 (1940),  "[r]uinous competition, financial disaster, evils of price-cutting, and the like appear throughout our history as ostensible justifications for price-fixing. If the so-called competitive abuses were to be appraised here, the reasonableness of prices would necessarily become an issue in every price-fixing case. In that event, the Sherman Act would soon be emasculated; its philosophy would be supplanted by one which is wholly alien to a system of free competition; it would not be the charter of freedom which its framers intended." *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150, 222(1940).

While the issue is still very new and more discovery into this area is needed, the claim pleaded is plausible.

**B.** **Galope Also Has Standing to Sue for Barclay's Participation in Market Manipulation of the LIBOR rate index which was an Unlawful, Unfair and Fraudulent Business Practice**

Plaintiff incorporates the points and authorities above in this section.

On or about **June 27, 2012** Barclays PLC, Barclays Bank PLC and Barclays Capital Inc. settled with the Commodities Futures Trading Commission ("CFTC") and the US Dept. of Justice for manipulating the LIBOR rates from 2005 through 2009 for $453 million dollars. (RJN)

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Galope received an Interest Only Adjustable Rate Mortgage based on LIBOR on December 15, 2006. The interest rate was based on 6 month LIBOR that changed every 2 years. Galope was being charged 8.8775% as Interest Only. Barclay's was making loans based on an index that it and its co-conspirators knew they were manipulating. (RJN)

As such, Galope's loan and monthly obligations were not based on an independent index.  The depositor's administrator, Barclays, who was also the servicer and Swap trader of her loan was manipulating the price she had to pay on her monthly obligations by fixing the interest rate.

No one would knowingly enter into a loan in which they knew the lender could manipulate the rate.  The fact that the actual rate may have gone down or up is irrelevant; what matters is that the rate was not independently determined.

According to the SEC filings, there were 5,072 loans placed in this trust. LIBOR loans are identified 3,232 times in the Free Writing Prospectus "FWP." (RJN). Jay Patterson adds another approximate 500 loans to that calculation.

The CFTC found that Barclays manipulated the LIBOR and as a result violated Sections 6(c), 6(d) and 9(a)(2) of the Commodity Exchange Act, 7 USC §§ 9, 13b and 12(a)(2).

> 7 USC §9 prohibits manipulation of the market.
> Unlawful manipulation for purposes of this paragraph shall include, but not be limited to, delivering, or causing to be delivered for transmission through the mails or interstate commerce, by any means of communication whatsoever, a false or misleading or inaccurate report concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce, knowing, or acting in reckless disregard of the fact that such report is false, misleading or inaccurate. 7 USC §9(a)(1)

> 7 USC §13b makes such conduct a felony:

**11**
**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*            *SACV12-323-CJC (RNBx)*

It shall be a felony punishable by a fine of not more than $1,000,000 or imprisonment for not more than 10 years, or both, together with the costs of prosecution, for:
(a)…
**2)**Any person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or of any swap, or to corner or attempt to corner any such commodity or knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning crop or market information... 7 USC §13(a)(2).

Barclays repeatedly attempted to manipulate the market and made false, misleading or knowingly inaccurate submissions concerning LIBOR.

"From at least mid-2005 through the fall of 2007, and sporadically thereafter into 2009, Barclays, through the acts of its swaps traders and submitters, attempted to manipulate US Dollar LIBOR.." (RJN Ex 7 pg 7-8)

"The swap traders made the requests in person, via email, and through electronic "chats" over an instant messaging system." (RJN Ex 7 pg 8)

The swap traders, included internal swap traders and they requested that the LIBOR be placed higher or lower depending on their position.

Deutsche Bank has admitted that some of its staff was involved in this market manipulation. (RJN Ex 13-16) A defendant need not know that the conduct was unlawful, but the defendant who has knowledge of the conduct and assists by aiding and abetting can be held liable, such as individual corporate officers or majority stockholders. *People v Toomey*, 157 CalApp3d 1 (1985).

There were messages fixing the LIBOR rate during the time period Galope received her loan as demonstrated by the US DOJ's office. (RJN).

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*              *SACV12-323-CJC (RNBx)*

This is akin to the case of *Allied Grape Growers v Bronco Wine Co,* 203 CalApp3d 432 (1988) wherein defendant's practice of downgrading grapes which occurred over a one-month time period was a "practice" even though it was done with respect to a single contract, since the contract was with a cooperative having many members.

Here, Galope's initial interest rate based on the Fixed LIBOR rate only affected Galope's contract. However, there were thousands of other borrowers during this time period in her same MBS Trust that were also having their loans fixed by a manipulated LIBOR market rate. Due to the rates being fixed on a substantial group of borrower's loans in the trust, each borrower in that trust was affected. Even the non LIBOR borrowers were affected to the extent that Barclays could then call in the Swap in 2008-2009 time period.

Defendant urges the court to find that there was no damage as a result of the market manipulation.

In order to prove a UCL claim is unlawful, plaintiff must allege (1) the law that is being borrowed and (2) some level of specificity or particularity of the facts supporting the violation. *Microsoft Corp. v A-Tech Corp.*, 855 F.Supp. 308, 313 (CD Cal 1994). However, the absence of a private cause of action conferred in a federal law being 'borrowed' as a violation is not a barrier to state a UCL claim. *Washington Mutual Bank v Superior Court*, 75 Cal App4th 773, 783 (1999).

Here, we have violations of 7 USC §§ 9, 13b and 12(a)(2) by Barclays LIBOR rate manipulation in the market that directly affected Ms. Galope and those similarly situated because their loans were based on the LIBOR rate.

Barclays Bank PLC was the "administrator of the sponsor" for the MBS trust. (RJN Ex 10 pg s-7)

**13**
**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

Barclays Bank PLC was the owners of the wholly-owned subsidiary who was the depositor of the MBS trust. (RJN Ex 10 pg s-7)

Barclays Capital Real Estate Inc. d/b/a HomEq Servicing was the Servicer of the MBS trust (RJN Ex 10   pg   s-7).

Deutsche Bank National Trust Company was the trustee of the MBS Trust (RJN Ex 10 pg s-8)

Barclays Bank PLC was the "Swap and Cap Provider" for the MBS Trust (RJN Ex 10 pg s-8).

The manipulation of the LIBOR rates for the Swap traders profit on their positions as outlined in the text messages and emails by the US DOJ are admissions against interest to support plaintiff's claim of unlawful, unfair, and fraudulent conduct with regard to this trust in this lawsuit.

This MBS trust stopped reporting in 2008 during the time period that these manipulations were occurring showing a strong direct tie between the manipulation of plaintiff's monthly interest rate obligations and the profits made by the Swap agreement in place in the MBS trust. (RJN)

Ms. Galope would have walked away from this loan if she had known that the interest rates she would have been forced to pay were based on manipulation and not independent market factors. (Decl of Galope)

The modification agreement, initially was represented by the Defendants to be based on these same LIBOR figures. Then on June 25, 2012, a day before Barclays settled with the CFTC, USDOJ and others, Defendants came into this court asserting the modification agreement was based on a change in the monthly payment not the interest rate.

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Discovery needs to be conducted to determine all of the potential injury this market manipulation caused.

There is no explanation of how a monthly payment change could not be quantified past 2013 in compliance with Regulation Z if the interest rate remained constant. Since there is no explanation of what a borrower is supposed to expect over the remaining 14 to 15 years of the life of that LIBOR loan, even if the change was based on the payment, it still failed to comply with Regulation Z of the Truth In Lending Act.

Between the TILA violations of nondisclosure and the CEA violations of market manipulation, other consumers similarly situated to Ms. Galope may not become aware of the fraud until 2013 or later.

### C. **Plaintiff Has Standing to Bring the UCL Claims:**

Injury in fact to have standing to bring this claim was outlined in *Kwikset Corp. v Sup. Court,* 51 Cal 4th 310 (2011) where the California Supreme Court reaffirmed "economic injury from unfair competition may be shown: A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." Id. at 323.

Here, defendants were price fixing which is a violation of Antitrust law. Ms. Galope acquired less in her loan transaction with Deutsche Bank and Barclays as a result. She was their customer – the borrower on the Barclays loan that was based on the LIBOR rate. The entire market that created the rate for the interest only payments being paid by the borrowers like Galope was manipulated by these defendants.

Consequently, standing and injury in fact exist in this case.

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

**D. The Market Manipulation of the LIBOR rate and Deceptive Manner the Contract Was Presented Were Misleading Advertisements**

The rule is that advertising that can be interpreted in a misleading way should be construed against the advertiser. *Resort Car Rental System, Inc v FTC*, 518 F.2d 962, 964 (9th Cir. 1975).

Advertising includes a bank's misquote of interest rates over the telephone to a potential borrower. It does not have to be put in the public media. *Chern v Bank of America*, 15 Cal3d 866, 870 (1976).

The complaint alleges defendant misquoted the terms of the modified loan over the telephone to plaintiff. The phone conversations coupled with the attachment to the modification document that was faxed and appeared to have a page missing was misleading. This conduct was potentially deceptive to the borrowers who were the audience that these representations were aimed at. Statute of frauds is not required to be met on a §17500 claim.

It has also been discovered that Barclays manipulated the LIBOR rate and published it in the Wall Street Journal and was used on the borrower's loans to determine how much they owed.

Consequently, plaintiff can and did allege a claim for violation under section 17500 of the UCL.

**E. Standing**

Plaintiff incorporates the points and authorities above in this section.

The court previously found that the claims based on the modification being faxed over without warning that two of the loan modification pages were on legal size paper adequately pleaded a claim.

**16**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*      *SACV12-323-CJC (RNBx)*

Second, Barclays was the actual servicer doing business as HomEq and was brought into this case on that basis.

As the servicer dealing directly with Ms. Galope at the time, Ms. Galope has standing to sue HomEq directly.

Motions to dismiss are supposed to rarely defeat a <u>Cal. Bus. & Prof. Code §17200</u> claim on the grounds that the complaint is supposed to be construed to uphold the action whenever possible. *Motors, Inc. v Times-Mirror Co.*, 102 CalApp3d, 735, 741-742 (1980); *Southwest Marine, Inc. v Triple A Machine Shop, Inc.*, 720 F.Supp. 805 808 (ND Cal 1989).  California's unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Cal. Bus. & Prof. Code § 17200.) And under this law, a practice can be prohibited as unfair or deceptive even if not *unlawful*, and vice versa. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999).) For example, a plaintiff's allegations that a defendant used incomplete and misleading illustrations to sell universal life insurance policies may be actionable under the unfair competition law absent any claim that such conduct violated any regulation or statute. *Wilner v. Sunset Life Ins. Co.,* 78 Cal. App. 4th 952 (2000).  An *unlawful* business practice can be "anything that can properly be called a business practice and that at the same time is forbidden by law." (*Summit Tech., Inc. v. High-Line Med. Instruments Co.,* 933 F. Supp. 918 (C.D. Cal. 1966)  This prong of the unfair competition law allows a plaintiff to enforce a broad array of state and federal statutes, including consumer-protection statutes (*Walker v. Countrywide Home Loans, Inc.,* 98 Cal. App. 4th 1158 (2002) (Cal. Civ. Code § 2954.4); antidiscrimination statutes (*Reese v. Wal-Mart Stores, Inc.,* 73 Cal. App. 4th 1225 (1999), (Unruh Civil Rights Act, Cal. Civ. Code §§ 51-51.4)); criminal statutes (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal. 4th 553

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

(1998), (Cal. Penal Code § 308); and environmental statutes (*Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499 (1997), (Cal. Pub. Res. Code § 4511).)

Defendant has not explained how it should be treated any differently from Ocwen who later took over the servicing function from Barclays. So it should not be dismissed at this stage.

### F. Plaintiff has Standing to Sue for Breach of Good Faith & Fair Dealing

Defendants contend the terms in the LIBOR Note was not based on LIBOR so there is no implied breach of good faith and fair dealing. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 371-372 (1992).

Defendant misses the point. The breach was based on (1) the defendants failure to flag it was faxing over a modification on legal size paper sandwiched between two letter size pages and (2) market manipulation of the very market rate used in the loan Galope and those similarly situated entered into in this case.

The claim should not be dismissed.

## IV CONCLUSION

Wherefore plaintiff respectfully request that this court deny plaintiff's motion for summary judgment.

Dated: September 24, 2012

Respectfully Submitted,
LAW OFFICES OF LENORE ALBERT

/s/ Lenore Albert
LENORE L. ALBERT, ESQ.
Attorney for Plaintiff Helen Galope, *and all others similarly situated*

**18**

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACVI12-323-CJC (RNBx)*

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100,Huntington Beach, CA  92647.

On September 24, 2012, I served a copy of the following document(s) described as:

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

On the interested parties in this action as follows:

See attached Mail List

**[x] BY CM/ECF** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).

**[ ] BY EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth herein.

**[ ] BY FAX** – I caused such document(s) to be transmitted facsimile from the offices located in Westminster, California this business day to the aforementioned recipients.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: September 24, 2012

s/ Lenore Albert
Lenore Albert

PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*

Mailing List

<u>For Defendant Western Progressive, LLC and</u>
<u>Defendant Deutsche Bank National Trust Company:</u>

Eric D. Hauser, Esq.
Steven S. Son, Esq.
HOUSER & ALLISON
3760 Kilroy Airport Way, Suite 260
Long Beach, CA 90806
Telephone: (949) 679-1111
Fax: (949) 679-1112
Email: sson@houser-law.com


<u>Ford Defendant BARCLAYS BANK, PLC; BARCLAYS CAPITAL REAL ESTATE</u>
<u>INC. d/b/a HOMEQ SERVICING:</u>
Scott H. Jacobs (SBN 81980)
shjacobs@reedsmith.com
Brandon W. Corbridge (SBN 244934)
bcorbridge@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  213.457.8000
Facsimile:   213.457.8080

Boies, Schiller & Flexner LLP
James Meadows
jmeadows@bsfllp.com
Jonathan D. Schiller
jschiller@bsfllp.com
575 Lexington Avenue, 7th Floor
New York, NY 10022
Tel:   (212) 446-2300
Fax:  (212) 446-2350

David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew S. Fitzwater
Adam S. Paris
Sullivan & Cromwell LLP
125 Broad Street

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*                    *SACV12-323-CJC (RNBx)*

New York, NY 10004

**PLAINTIFFS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

*GALOPE v DEUTSCHE BANK NATIONAL TRUST COMPANY*          *SACV12-323-CJC (RNBx)*