# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **HELEN GALOPE,**<br><br>      **Plaintiff,**<br><br>  vs.<br><br>**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF MANY 1, 2007 SECURITIZED ASSET BACK RECEIVABLES, LLC., TRUST 2007-BR4; WESTERN PROGRESSIVE, LLC., and DOES 1 through 10, inclusive,**<br><br>      **Defendants.** | Case No.: SACV 12-00323-CJC(RNBx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

## I. INTRODUCTION

      Plaintiff Helen Galope, on behalf of herself and other similarly situated plaintiffs, brings this action against Defendants Deutsche Bank National Trust Company as trustee

under pooling and servicing agreement dated May 1, 2007 ("DBNTC"), Western Progressive, LLC., Barclays Bank, PLC., Barclays Capital Real Estate Inc., d/b/a HomEq Servicing ("HomEq"), Ocwen Loan Servicing, LLC., and Does 4 through 10, inclusive. Ms. Galope alleges violations of the Sherman Antitrust Act, California's Business and Professions Code section 17200 ("UCL"), California's False Advertising Law ("FAL"), as well as causes of action for aiding and abetting a violation of the UCL, wrongful foreclosure, breach of the covenant of good faith and fair dealing, and fraud. Defendants Barclays Bank PLC and Barclays Capital Real Estate Inc., d/b/a HomEq Servicing (collectively, "Barclays") now move to dismiss Ms. Galope's Third Amended Complaint ("TAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the reasons stated below, the Court GRANTS Defendants' motion to dismiss.[2]

## II. BACKGROUND

On December 16, 2006, Ms. Galope took out a $522,000 loan from New Century Mortgage Corporation, with Barclays as the designated loan servicer. (TAC ¶¶ 15, 18; Exh. A [Loan Modification Agreement].) The loan was secured by a deed of trust recorded against Ms. Galope's property, located at 19117 Delano St., Tarzana CA 91335 (the "Subject Property"). (*Id.* ¶¶ 4, 15.) The terms of this adjustable rate mortgage included an interest rate of 8.775% that could increase beginning in January of 2009, based on a calculation involving the London Interbank Offered Rate ("LIBOR"). (*Id.* Exh. A.) Ms. Galope's loan was then placed in a mortgage backed securitized trust,

---

[1] On September 26, 2012, the Court granted summary judgment in favor of Defendants Ocwen Loan Servicing, LLC, Deutsche Bank National Trust Company, and Western Progressive, LLC. (*See* Dkt. No. 108.)

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for October 15, 2012 at 1:30 p.m. is hereby vacated and off calendar.

administered by DBNTC. (TAC ¶¶ 16–17.) In April of 2007, HomEq began to service the loan, and by 2008 Ms. Galope was delinquent in her loan obligations. (TAC ¶¶ 18, 53.) On April 7, 2008, Ms. Galope obtained a loan modification agreement from HomEq, with a fixed interest rate of 5.5% through April 1, 2013. (TAC ¶¶ 54–57.) On April 17, 2008, Ms. Galope executed the Loan Modification Agreement. (*Id*. Exh. A.)

Ms. Galope's TAC makes a number of allegations concerning her loan modification and the foreclosure proceedings initiated against the Subject Property. In particular, Ms. Galope alleges that Defendants conspired to manipulate the LIBOR, and that, as result, she suffered injury. Ms. Galope's TAC also depends on her allegations concerning fraud in the manner in which she agreed to her loan modification with HomEq. Ms. Galope alleges that after discussing the terms of a potential loan modification with HomEq, she was faxed a document titled "Modification Agreement." (TAC ¶¶ 62–63.) Believing that the document memorialized the terms previously represented to her by HomEq, Ms. Galope signed the document and returned it. (*Id*. ¶ 66.) Subsequently, Ms. Galope discovered that the version of the loan modification agreement she had signed contained missing terms. (*Id*. ¶¶ 71–73.) Specifically, Ms. Galope alleges that because HomEq failed to inform her that "the fax transmission actually contained 2 legal size papers sandwiched between 2 letter size pages," her version contained missing terms in two sections of the loan modification agreement. (*Id*. ¶¶ 75–76.) As a result, Ms. Galope alleges that she was "lulled" into believing that she received more favorable terms so that she would continue to pay the modified interest rate without seeking other sources of financing. (*Id*. ¶ 79.)

## III. ANALYSIS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for

failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled in part on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

///

///

///

**A. Section 1 of the Sherman Antitrust Act\\**

Ms. Galope lacks standing to bring a claim under section 1 of the Sherman Antitrust Act[3] because she has not suffered an actual injury as a result of the alleged LIBOR manipulation. (Defs.' Mot., at 6–9.) Under Article III, federal courts may only hear a "case or controversy." U.S. Const. art. III, § 2, cl. 1. To satisfy this standard, the plaintiff must show an injury-in-fact that is fairly traceable to the defendant's unlawful conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1998); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 995 (N.D. Cal. 2007) (quoting *Lujan*, 504 U.S. at 560) (quotes omitted).

Ms. Galope's cause of action for violation of section 1 of the Sherman Antitrust Act is based on allegations that Defendants conspired to fix, raise, and stabilize the LIBOR rate from 2006 through 2009, as well as the rate at which Defendants would sell mortgages incorporating the LIBOR. (TAC ¶¶ 127–128.). As a result of this alleged conduct, Ms. Galope contends that she "has been injured in her business or property in that she has been forced to pay interest on her long term investment of 30 years for the purchase of her home based on the LIBOR rate fixed by defendants and their co-conspirators which was substantially higher than what she would have paid in the absence of the violations." (TAC ¶ 131.) Ms. Galope also alleges that "she has lost/or is losing her property due to the effect of" the LIBOR manipulation on the value of the Subject Property. (TAC ¶ 132.) But these allegations are belied by the terms of Ms. Galope's original loan, which specified that her interest rate was to remain at 8.775%

---

[3] Section 1 of the Sherman Antitrust Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C.A. § 1.

until January of 2009, after which the interest rate could increase based on a calculation involving the LIBOR. However, in April of 2008, Ms. Galope entered into the Loan Modification Agreement with HomEq for a fixed interest rate of 5.5% through April 1, 2013, after which the interest rate on her original loan could be adjusted based on the LIBOR. In short, Ms. Galope could not have suffered harm based on manipulation of the LIBOR because her interest rate was never affected by the LIBOR. Having suffered no injury because of alleged LIBOR manipulation, Ms. Galope lacks the standing essential to bring her first cause of action under Section 1 of the Sherman Antitrust Act.

**B. California's UCL**

Ms. Galope also lacks the standing necessary to pursue her claims under California's UCL. To pursue a claim under California's UCL, a plaintiff must allege sufficient facts to demonstrate that she "has suffered injury in fact and has lost money or property as a result of" an allegedly unfair business practice. Cal. Bus. & Prof. Code § 17204; *see also Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 812 (2011). Ms. Galope premises her alleged violation of California's UCL on two separate allegations. First, Ms. Galope alleges that she "has been injured in her property in this [sic] she has been forced to pay interest based on the LIBOR rate fixed by defendants and the co-conspirators substantially higher than those she would have paid in the absence of the violations." (TAC ¶ 138(f).) Second, Ms. Galope alleges that the missing fax page in the Loan Modification Agreement deprived her of notice of the change her monthly payments will undergo in April of 2013. (*Id*. ¶ 165.)

Just as with her claim under the Sherman Antitrust Act, Ms. Galope's first allegation for violation of the UCL is undermined by the simple fact that her interest rate, both in her original loan and the Loan Modification Agreement, have not been affected by the LIBOR. In so far as her original loan is concerned, Ms. Galope entered into the

Loan Modification Agreement well before the interest rate in her original loan could ever be adjusted based on a calculation involving the LIBOR. Similarly, the Loan Modification Agreement Ms. Galope entered into in April of 2008 does not provide for an adjustment of the interest rate based on the LIBOR until April of 2013. The LIBOR simply has not affected Ms. Galope's loan obligations.

Ms. Galope's allegations concerning a missing fax page in her loan modification agreement also fail to create the necessary standing. As the TAC makes clear, the Loan Modification Agreement lowered Ms. Galope's interest rate from 8.775% to 5.500%, and reduced her monthly mortgage payments from $3,817.13 to $3,027.02. (*See* TAC 62–64, Exh. A.) The reduced interest rate and lower monthly payments provided for in the Loan Modification Agreement contradict Ms. Galope's allegations that she suffered any injury resulting from the alleged missing fax page scheme.[4] Without the standing necessary to pursue her claims under California's UCL, Ms. Galope's second and fourth causes of action must be dismissed.

### C. California's FAL

Ms. Galope's cause of action for violation of California's FAL is premised on two allegations. First, Ms. Galope contends that by transmitting to her a copy of the Loan Modification Agreement with a missing page, she was misled into believe she was receiving a loan modification on more favorable terms. (TAC ¶ 175.) Second, Ms. Galope contends that she made "monthly mortgage payments based on a manipulated and fixed market rate by" Barclays. (*Id*. ¶ 181.) "Generally, a cause of action accrues and

---

[4] Ms. Galope's allegation that she was deprived of notice of the future change in interest rate because of the missing fax page is directly contradicted by language in the Loan Modification Agreement that Ms. Galope admits to having received. (*Id*. ¶¶ 71–75.) Section 1(b) of the Loan Modification Agreement states that "[t]he date on which the New Monthly Payment change is next scheduled to occur is hereby changed to 05/1/2013." (*Id*. Exh. A.)

the statute of limitation begins to run when a suit may be maintained." *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 815 (2001). Actions for violation of California's FAL are subject to a three-year statute of limitations. Cal. Civ. Proc. § 338(a); *see also StreamCast Networks, Inc. v. Skype Technologies, S.A.*, No. CV 06-391, 2006 WL 5441237, at *9 n.8 (C.D. Cal. Sep. 14, 2006). Ms. Galope alleges that Barclay's false advertising occurred on April 10, 2008, when it faxed to her, without warning, legal-size pages of the Loan Modification Agreement. (TAC ¶ 63.) Ms. Galope goes on to allege that she executed the agreement on April 17, 2008. (*Id.* Exh. A.) Thus, Ms. Galope's cause of action for violation of the FAL accrued no later than April 17, 2008. *See Das v. WMC Morg. Corp.*, 831 F. Supp. 2d 1147, 1159 (N.D. Cal. 2011) (finding California statutory claims accrue at the time loan documents are signed.) Ms. Galope, however, did not file this action under March 1, 2012, over three years after her cause of action for violation of the FAL based on a missing fax page accrued.

Ms. Galope's second basis for her FAL cause of action—payment of a manipulated interest rate—fails to establish the necessary standing. Similar to the UCL, to bring a claim under the FAL, a plaintiff must establish that they have personally suffered a loss of money or property. *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1555 (2011) ("Like Section 17200, Section 17500 requires an individual suing under the statute to have suffered injury in fact and to have lost money or property as a result of such unfair competition.") (citations and quotations omitted). But neither Ms. Galope's original loan nor the Loan Modification Agreement require her to pay an interest rate affected by the LIBOR. As previously discussed, the interest rate in Ms. Galope's original loan was never affected by the LIBOR as she entered into the Loan Modification Agreement with Barclay's before any such adjustment could occur. Similarly, the interest rate established in Ms. Galope's Loan Modification Agreement will not be adjusted based on a calculation involving the LIBOR until April of 2013.

As Ms. Galope's FAL claim is time-barred, and because she lacks the necessary standing to assert such a claim, her fifth cause of action must be dismissed.

### D. Aiding and Abetting a Violation of California's UCL

Ms. Galope's sixth cause of action for aiding and abetting a violation of California's UCL fails because she has not alleged a viable UCL claim.  A cause of action for aiding and abetting the commission of an intentional tort is a derivative claim and requires the existence of another tort.  *See Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005).  Ms. Galope's aiding and abetting cause of action is premised on the same alleged conduct as her fourth cause of action for violation of the UCL.  (TAC ¶¶ 187–188.)  Ms. Galope sixth cause of action for aiding and abetting a violation of California's UCL fails as she lacks the standing necessary to assert her fourth cause of action for violation of the UCL.  Consequently, Ms. Galope's sixth cause of action must be dismissed.

### E. Breach of the Covenant of Good Faith and Fair Dealing

Ms. Galope's eighth cause of action for breach of the covenant of good faith and fair dealing also fails for lack of standing.  Ms. Galope's cause of action is premised on the same two allegations as her UCL claim:  manipulation of the LIBOR rate and an allegedly missing fax page.  Because Ms. Galope cannot establish an injury that is fairly traceable to this alleged conduct, she cannot establish the standing necessary to assert such a claim.  Therefore, Ms. Galope's eighth cause of action must be dismissed.

///

///

///

**F. Fraud**

Ms. Galope's ninth cause of action for fraud fails for lack of standing and an inability to state an essential element of a fraud claim. Ms. Galope's fraud claim is premised on her allegation that she "has been financially injured in that she has made over $60,000 in interest payments based on manipulate [sic] market LIBOR." (TAC ¶ 224.) But as previously discussed, neither Ms. Galope's original loan or her Loan Modification Agreement have yet required her to pay a monthly interest rate dependent on the LIBOR. Therefore, any alleged manipulation of the LIBOR cannot have harmed Ms. Galope. Moreover, to state a claim for fraud under California law, a plaintiff must adequately allege misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage. *See Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997). But because Ms. Galope's loan has never actually been tied to the LIBOR, she cannot have been injured as a result of any alleged manipulation, and therefore cannot allege the damage require to adequately state a claim for fraud. Without the requisite standing, and an inability to plead all the essential elements of a fraud claim, Ms. Galope's ninth cause of action must be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

DATED:   October 11, 2012

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE